James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

   - and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Proposed Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | Case No. 10-_____ (___) |
| Debtors. | Joint Administration Requested |

**DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE AND CLAIMS AGENT**

The Great Atlantic & Pacific Tea Company, Inc. ("***A&P***") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "***Debtors***")[1] file this application (this

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars

"*Application*") for entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Kurtzman Carson Consultants LLC ("*KCC*") as notice and claims agent in connection with the Debtors' chapter 11 cases. In support of this Application, the Debtors submit the Declaration of Albert H. Kass (the "*Kass Declaration*"), attached hereto as **Exhibit B** and incorporated by reference herein and the Declaration of Frederic F. Brace, Chief Administrative Officer and Chief Restructuring Officer of The Great Atlantic and Pacific Tea Company, Inc., in further support of First Day Pleadings (the "*Brace Declaration*"). In further support of this Application, the Debtors respectfully state as follows:

## Jurisdiction

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code, Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "*Bankruptcy Rules*") and Local Rule 5075-1 of the Local Bankruptcy Rules for Southern District of New York (the "*Local Rules*").

---

Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

## Relief Requested

4.     By this Application, the Debtors seek an order pursuant to section 156(c) of title 28 of the United States Code authorizing the employment and retention of KCC as their notice and claims agent in these cases in accordance with the terms and conditions set forth in that certain engagement letter dated as of December 8, 2010, by and between the Debtors and KCC (the "***Engagement Letter***"), a copy of which is annexed as <u>Exhibit 1</u> to **<u>Exhibit A</u>** attached hereto and incorporated by reference herein.

## Background

5.     On the date hereof, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have requested joint administration of their chapter 11 cases, and no official committees have been appointed.

6.     As set forth more fully in the Brace Declaration, the Debtors are one of the nation's leading food and drug retailers.  The Debtors operate 395 supermarkets, combination food and drug stores, liquor stores, and limited assortment food stores across eight Northeastern states and the District of Columbia.

7.     In the twelve months ended September 11, 2010, the Debtors reported revenues of $8.4 billion.  As of September 11, 2010, the Debtors reported total assets of $2.5 billion and liabilities of $3.2 billion.

8.     The Debtors currently employ approximately 41,000 employees.  Approximately 95 percent of the Debtors' employees are covered by collective bargaining agreements, and approximately 68 percent of the Debtors' employees are employed on a part-time basis.

K&E 18094676.11

## KCC's Qualifications

9.       The number of creditors and other parties in interest involved in these chapter 11 cases may impose heavy administrative and other burdens on the Court and the Office of the Clerk of the Court (the "***Clerk's Office***").  To relieve the Clerk's Office of these burdens, the Debtors seek an order appointing KCC as the notice and claims agent in these chapter 11 cases pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1.

10.       The Debtors' estates and their creditors will benefit from KCC's retention because KCC has developed efficient and cost-effective methods in this area of expertise.  KCC is fully equipped to handle the volume of mailing involved in properly sending the required notices to and processing the claims of creditors in these chapter 11 cases.  KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.  KCC has substantial experience in matters of this size and complexity, and has acted as the official notice and claims agent in many large bankruptcy cases pending in this and other districts.  *See, e.g.*, *In re Penton Bus. Media Holdings, Inc.,* No. 10-10689 (Bankr. S.D.N.Y. Feb. 10, 2010); *In re Vertis Holdings, Inc., et al.*, Case No. 10-16170 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re Am. Media, Inc., et al.*, Case No. 10-16140 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re Ambac Fin. Grp., Inc.*, Case No. 10-15973 (Bankr. S.D.N.Y. Nov. 8, 2010); *In re NR Liquidation III Co. Inc. f/k/a Neff Corp.*, Case No. 10-12610 (Bankr. S.D.N.Y. May 16, 2010);  *In re Uno Rest. Holdings Corp.,* Case No. 10-10209 (Bankr. S.D.N.Y. Jan. 20, 2010); *In re EnviroSolutions of N.Y., LLC, et al.,* Case No. 10-11236 (Bankr. S.D.N.Y. Mar. 10, 2010); *In re Japan Airlines Corp., et al.,* Case No. 10-10198 (Bankr. S.D.N.Y. Jan. 19, 2010); *In re Citadel Broadcasting, Corp.,* Case No. 09-17442 (Bankr. S.D.N.Y. Dec. 21, 2009); *In re The Readers Digest Ass'n, Inc.,* Case No. 09-23529 (Bankr. S.D.N.Y. Aug. 28, 2009); *In re Lear Corp.,* Case No. 09-14326 (Bankr.

S.D.N.Y. July 7, 2009); *In re Gen. Growth Props., Inc.,* Case No. 09-11977 (Bankr. S.D.N.Y. Apr. 16, 2009); *In re Tronox, Inc.*, Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); *In re Paper Int'l, Inc.,* No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Wellman, Inc.,* Case No. 08-10595 (Bankr. S.D.N.Y. Mar. 12, 2008); *In re DJK Residential, LLC,* No. 08-10375 (Bankr S.D.N.Y. Feb. 5, 2008); *In re Bally Total Fitness of Greater New York, Inc.,* Case No. 07-12395 (Bankr. S.D.N.Y. Dec. 9, 2007); *In re Calpine Corp.,* No. 05-60200 (Bankr. S.D.N.Y. Dec. 22, 2005); *see also In re Local Insight Media Holdings, Inc., et al.*, Case No. 10-13677 (Bankr. D. Del. Nov. 17, 2010); *In re Claim Jumper Rest., LLC, et al.*, Case No. 10-12819 (Bankr. D. Del. Sept. 10, 2010); *In re Caribbean Petroleum Corp., et al.*, Case No. 10-12553 (Bankr. D. Del. Aug. 12, 2010); *In re Visteon Corp., et al.*, Case No. 09-11786 (Bankr. D. Del. 2009); *In re HPG Int'l, Inc., et al.*, Case No. 09-10231 (Bankr. D. Del. 2009); *In re Triple Crown Media, Inc.*, Case No. 09-13181 (Bankr. D. Del. 2009); *In re Source Interlink Co., Inc.*, Case No. 09-11424 (Bankr. D. Del. 2009); *In re VeraSun Energy Corp.,* Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008); *In re Wash. Mutual, Inc.,* Case No. 08-12229 (Bankr. D. Del. Oct. 31, 2008); *In re Mervyn's Holdings, LLC,* Case No. 08-11586 (Bankr. D. Del. July 30, 2008). KCC will follow procedures that conform to applicable guidelines promulgated by the Clerk of the Court and the Judicial Conference, and as may be entered by the Court's order.

<u>Services to be Provided</u>

11.      At the request of the Debtors or the Clerk's Office, KCC may perform various notice and claims related services, including, without limitation, the following:

> (a)      Notify all potential creditors of the filing of the bankruptcy petitions and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Bankruptcy Rules as determined by Debtors' counsel;

K&E 18094676.11

(b)     Prepare and serve required notices in the chapter 11 cases, including:

　　i.      a notice of the commencement of the chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code;

　　ii.     notices of objections to claims (if necessary);

　　iii.    notices of any hearings on a disclosure statement and confirmation of a plan or plans of reorganization; and

　　iv.     such other miscellaneous notices as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases.

(c)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules and Statements"), listing the Debtors' known creditors and the amounts owed thereto;

(d)     Provide access to the public for examination of copies of the proofs of claim or proofs of interest filed in the chapter 11 cases without charge during regular business hours (if necessary);

(e)     Establish accounts with financial institutions in the name of and as agent for the Debtors solely for purposes as required to effect distributions under a plan of reorganization;

(f)     Furnish a notice of the last date for the filing of proofs of claims and a form for the filing of a proof of claim, after such notice and form are approved by the Court;

(g)     File with the Clerk's Office an affidavit or certificate of service which includes a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date mailed, within ten (10) days of service;

(h)     Docket all claims received by the Clerk's Office, maintain the official claims registers (collectively, the "Claims Registers") for each Debtor on behalf of the Clerk, and provide the Clerk with certified duplicate, unofficial Claims Registers on a monthly basis, unless otherwise directed;

K&E 18094676.11

(i)     Record all transfers of claims, pursuant to Bankruptcy Rule 3001(e) and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(j)     Specify in the applicable Claims Register, the following information for each claim docketed: (1) the claim number assigned, (2) the date received, (3) the name and address of the claimant and agent, if applicable, who filed the claim, and (4) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

(k)     Relocate by messenger all of the actual proofs of claim filed with the Court to KCC, not less than weekly;

(l)     Upon completion of the docketing process for all claims received to date by the Clerk's Office for each case, turn over to the Clerk copies of the claims register for the Clerk's review;

(m)    Make changes in the Claims Registers pursuant to any applicable order of the Court;

(n)     Maintain the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk;

(o)     Provide such other claims processing, noticing, and administrative services as may be requested from time to time by the Debtors;

(p)     File with the Court the final version of the claims register immediately before the close of the chapter 11 cases;

(q)     Thirty (30) days prior to the close of these cases, an order dismissing the Agent shall be submitted terminating the services of the Agent upon completion of its duties and responsibilities and upon the closing of these cases; and

(r)     At the close of the case, box and transport all original documents, in proper format, as provided by the Clerk's Office, to the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064.

12.    In addition to the foregoing, KCC will maintain and update the Debtors' master mailing list of creditors and perform such other administrative tasks pertaining to the

administration of these chapter 11 cases as may be requested by the Debtors or the Clerk's Office in accordance with the terms of the Engagement Letter.

## Professional Compensation

13.     The Debtors propose to retain and compensate KCC on the terms and conditions set forth in the Engagement Letter.  The Debtors believe that the rates negotiated with KCC are reasonable and appropriate for the services to be rendered during these chapter 11 cases.  Prior to retaining KCC, the Debtors solicited proposals from other firms that provide comparable services and believe that KCC's rate structure is more than reasonable in light of their experience and reputation for handling large chapter 11 cases.

14.     The Debtors also propose that the cost of KCC's services be paid from the Debtors' estates pursuant to section 156(c) of title 28 of the United States Code and section 503(b)(1)(A) of the Bankruptcy Code.  Moreover, the Debtors believe that the fees and expenses incurred by KCC are administrative in nature and should not be subject to the standard fee application procedures for professionals.   As such, the Debtors request authority to compensate KCC in accordance with the terms and conditions set forth in the Engagement Letter, upon KCC's submission to the Debtors, with copies to Davis Polk & Wardwell LLP as counsel to the administrative agent for the Debtors' proposed postpetition secured lenders, of invoices summarizing in reasonable detail the services rendered and expenses incurred in connection with services provided by KCC to the Debtors.  In case of a dispute regarding the invoice amount, the Debtors will give written notice to KCC within ten (10) days of the receipt of the invoice by the Debtors.  In such an event, the Debtors will remit to KCC only the undisputed portion of the invoice and, if applicable, will pay the remainder to KCC upon the resolution of the disputed portion, as mandated by this Court.  Notwithstanding the foregoing,

KCC may require prepayment from the Debtors under certain circumstances as set forth in the Engagement Letter. Prior to the Petition Date, the Debtors paid KCC a retainer of $75,000.

15. Additionally, under the terms of the Engagement Letter, the Debtors have agreed to indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors, and agents from and against any and all losses resulting from their performance under the Engagement Letter. Such indemnification shall exclude, however, losses resulting from KCC's bad faith, negligence, gross negligence, willful misconduct, or any action or inaction by KCC which constitutes a material breach of the Engagement Letter. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a notice and claims agent in these chapter 11 cases.

16. KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

### KCC's Disinterestedness

17. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

18. Although the Debtors do not propose to employ KCC under section 327 of the Bankruptcy Code, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the Kass Declaration, KCC has represented that it neither holds nor represents any interest adverse to the Debtors' estates in connection with any matter on which it would be

9

employed and that it is a "disinterested person," as referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code. KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such disclosure.

19.     In connection with its retention as notice and claims agent, KCC represents, among other things, that:

> (a)     KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;
>
> (b)     By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;
>
> (c)     In its capacity as the notice and claims agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and
>
> (d)     KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases.

## Basis for Relief

20.     Section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Court to use "facilities" or "services" other than the Clerk's Office for administration of bankruptcy cases. It states:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

21. In addition, Local Rule 5075-1(a) provides in pertinent part as follows:

> The Court may direct, subject to the supervision of the Clerk, the use of agents either on or off the Court's premises to file Court records, either by paper or electronic means, to issue notices, to maintain case dockets, to maintain Judges' calendars, and to maintain and disseminate other administrative information where the costs of such facilities or services are paid for by the estate.

LBR 5075-1.

22. The United States Bankruptcy Court for the Southern District of New York has promulgated a protocol "to ensure the use of competitive process in the selection of claims agents in instances where the Court has authorized such use under 28 U.S.C. § 156(c)" (the "*Claims Agents Protocol*"). S.D.N.Y. Protocol for the Employment of Claims Agents (Bankr. S.D.N.Y. Jan. 23, 2008). In compliance with the Claims Agents Protocol, the Debtors obtained and reviewed engagement proposals from three court-approved notice and claims agents, including KCC. First, the Debtors provided each court-approved notice and claims agent the basic facts about the Debtors' cases and asked each company to submit a written proposal based upon such facts. The Debtors then asked each company case-specific pricing questions. In the end, the Debtors chose KCC as their notice and claims agent based on their superior capability and favorable price terms.

23. In light of the Debtors' compliance with the Claims Agent Protocol, the Debtors respectfully submit that the Court should authorize the retention of KCC as the Debtors' notice and claims agent pursuant to 28 U.S.C. § 156(c) and Local Rule 5075-1 and relieve the Court and the Clerk's Office of the heavy administrative burdens anticipated during these chapter 11 cases.

## Motion Practice

24.     This Application includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated and a discussion of thereof.  Accordingly, the Debtors submit that this Application satisfies Local Rule 9013-1(a).

## Notice

25.     The Debtors have caused notice of this Application to be provided by electronic mail, facsimile, and/or by overnight mail to:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the entities listed on the Consolidated List of Creditors Holding the 40 Largest Unsecured Claims; (c) counsel to the agent for the Debtors' proposed postpetition secured lender; (d) counsel to the agent for the Debtors' prepetition secured lenders; (e) the indenture trustee for each of the Debtors' secured and unsecured outstanding bond issuances; (f) the Internal Revenue Service; and (g) the Securities and Exchange Commission. Due to the urgency of the circumstances surrounding this Motion and the nature of the relief requested herein, the Debtors respectfully submit that further notice of this Motion is neither required nor necessary.

## No Prior Request

26.     No prior application for the relief requested herein has been made to this or any other court.

*[Concluded on following page.]*

WHEREFORE, for the reasons set forth herein and in the Kass Declaration, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other and further relief as the Court deems appropriate.

New York, New York
Dated: December 12, 2010

_/s/ Paul M. Basta_
James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Proposed Counsel to the Debtors
and Debtors in Possession

K&E 18094676.11

# EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|                                             |     |                               |
| ------------------------------------------- | --- | ----------------------------- |
|                                             | )   |                               |
| In re:                                      | )   | Chapter 11                    |
|                                             | )   |                               |
| THE GREAT ATLANTIC & PACIFIC TEA            | )   | Case No. 10-_____ (___)   |
| COMPANY, INC., *et al.*                     | )   |                               |
|                                             | )   |                               |
| Debtors.                                    | )   | Joint Administration Requested |
|                                             | )   |                               |

## ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION
## OF KURTZMAN CARSON CONSULTANTS LLC AS
## NOTICE AND CLAIMS AGENT FOR DEBTORS

Upon the application (the "***Application***")[1] of The Great Atlantic & Pacific Tea Company,

Inc. ("***A&P***") and certain of its affiliates, as debtors and debtors in possession (collectively, the

"***Debtors***")[2] for entry of an order (this "***Order***") authorizing the employment of Kurtzman

---

[1]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

[2]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599).  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645

Carson Consultants LLC ("***KCC***") as the notice and claims agent for the Debtors pursuant to 28 U.S.C. § 156(c); all as more fully set forth in the Application; and upon consideration of the Kass Declaration and the Brace Declaration; and due and sufficient notice of the Application having been given; and the Court having found that based on the representations made in the Kass Declaration that KCC does not hold or represent an interest adverse to the Debtors' estates; and the Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Application is in the best interests of the Debtors' estates, their creditors and all other parties in interest; and the Debtors having provided appropriate notice of the Application and the opportunity for a hearing on the Application under the circumstances and no other or further notice need be provided; and the Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before the Court (the "***Hearing***"); and the Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court; after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent provided herein.

2.      The Debtors are authorized to employ and retain KCC as their notice and claims agent in accordance with the terms and conditions set forth in the Application and the Engagement Letter attached hereto as <u>Exhibit 1</u>; provided, however that the Debtors shall seek further authority from the Court prior to KCC's performance of balloting or tabulation services.

K&E 18094676.11

3.      KCC is authorized and shall perform the services set forth in the Application and the Engagement Letter.

4.      The Debtors are authorized to pay KCC's fees and expenses as set forth in the Engagement Letter in the ordinary course of business and KCC shall not be required to file fee applications with the Court.

5.      Without further order of the Court, KCC's fees and expenses shall be treated as an administrative expense of the Debtors' estates and shall be paid by the Debtors in accordance with the terms of the Engagement Letter upon receipt of each KCC invoice by the Debtors, unless KCC is advised, within ten (10) days of receipt of the invoice, that the Debtors object to the invoice, in which case the Debtors will schedule a hearing before the Court to consider the disputed invoice.  In the event of a disputed invoice, the Debtors shall remit to KCC only the undisputed portion of the invoice and, if applicable, shall pay the remainder to KCC upon the resolution of the disputed portion, as mandated by the Court.

6.      Copies of the invoices, upon submission, shall be promptly provided to Davis Polk & Wardwell LLP as counsel to the administrative agent for the Debtors' proposed postpetition secured lender.

7.      If these cases are converted to cases under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services until the claims filed in the chapter 11 cases have been completely processed; if claims agent representation is necessary in the converted chapter 7 cases, KCC will continue to be paid in accordance with 28 U.S.C. § 156(c) under the terms set out in the Engagement Letter, the Application, and this Order.

8.      To the extent the Debtors request additional services not covered under the Engagement Letter, KCC and the Debtors may enter into additional engagement letters, as is

necessary, and shall file and serve a notice of presentment of an order to the Court for approval of any such additional engagement letters. Additionally, KCC shall file a supplemental affidavit outlining the details of the proposed scope of services and the proposed compensation for these services.

9.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, including paragraph 8 of the Engagement Letter, KCC's ability to establish accounts with financial institutions in the name of and as agent for the Debtors shall be limited solely for purposes as required to effect distributions under a plan of reorganization.

10.     Notwithstanding anything in the Application or the Engagement Letter to the contrary, including paragraph 17 of the Engagement Letter, during the pendency of the chapter 11 cases, this Court retains exclusive jurisdiction over all matters arising out of and/or pertaining to KCC's engagement and any matters, claims, rights, or disputes arising from or related to the implementation of this Order until such jurisdiction is relinquished.

11.     The Debtors and KCC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

13.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

White Plains, New York
Date: _____, 2010

_____
United States Bankruptcy Judge

K&E 18094676.11

## EXHIBIT 1

## Engagement Letter



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 8th day of December, 2010, between The Great Atlantic & Pacific Tea Company, Inc. (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

**Terms and Conditions**

I. SERVICES

A. KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B. KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C. Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D. The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part. Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders. Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E. The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement. The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company. The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

II.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure. KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment. KCC reserves the right to reasonably increase its prices, charges and rates annually. If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.    The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.    In addition to all fees for services and expenses hereunder, the Company shall pay to KCC (i) any fees and expenses related to, arising out of, or as a result of any error or omission made by the Company or the Company Parties, as mutually determined by KCC and the Company, and (ii) all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.    Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate.

E.    KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice. However, where total fees and expenses are expected to exceed $10,000 in any single month, KCC may require advance payment from the Company due and payable upon demand and prior to the performance of services hereunder. If any amount is unpaid as of thirty (30) days from the receipt of the invoice, the Company further agrees to pay a late charge, calculated as one and one-half percent (1-1/2%) of the total amount unpaid every thirty (30) days. In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company. The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice. Late charges shall not accrue on any amounts in dispute. Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.    In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate. As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order"). The form and substance of the motion

2



## KCC AGREEMENT FOR SERVICES

and the Section 156(c) Order shall be reasonably acceptable to KCC. If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.

G. _____To the extent permitted by applicable law, KCC shall receive a retainer in the amount of $ _75,000_ (the "Retainer") that may be held by KCC as security for the Company's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. KCC shall be entitled to hold the Retainer until the termination of the Agreement. Following termination of the Agreement, KCC shall return to the Company any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

### III.    RIGHTS OF OWNERSHIP

A.    The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.    The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC. Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

### IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

### V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3

KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code, (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, or (iii) the accrual of invoices or unpaid services in excess of the retainer held by KCC where KCC reasonably believes it will not be paid.

B.    In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.    Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



# KCC AGREEMENT FOR SERVICES

VIII.  BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company. To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.

IX.  LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.  The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against any Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement. The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.  Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss. In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement. In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.  The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information. KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein. The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.  The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

Kurtzman Carson Consultants LLC  599 Lexington Avenue, 39th Floor, New York, New York 10022  PHONE 917-281-4800  FAX 917-281-4900  kccllc.com



# KCC AGREEMENT FOR SERVICES

**X.    FORCE MAJEURE**

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

**XI.    INDEPENDENT CONTRACTORS**

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

**XII.    NOTICES**

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC          The Great Atlantic & Pacific Tea Company, Inc.
2335 Alaska Ave.                                      2 Paragon Drive
El Segundo, CA 90245                            Montvale, NJ 07645
Attn: Drake D. Foster                               Attn: Christopher W. McGarry
Tel: (310) 823-9000                                 Tel: (201) 571-8161
Fax: (310) 823-9133                                Fax: (201) 571-8106
E-Mail: dfoster@kccllc.com                   E-Mail: mcgarryc@aptea.com

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

**XIII.    APPLICABLE LAW**

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

**XIV.    ENTIRE AGREEMENT/ MODIFICATIONS**

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this

6


KURTZMAN
CARSON
CONSULTANTS

# KCC AGREEMENT FOR SERVICES

Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.

## XV.    COUNTERPARTS; EFFECTIVENESS

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

## XVI.    ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

## XVII.    ARBITRATION

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in Los Angeles County, State of California.

## XVIII. ATTORNEYS' FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

7



KURTZMAN
CARSON
CONSULTANTS

## KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY: ~~ALBERT H KASS~~          DATE: 12/8/2010

TITLE: VP, Corporate Restructuring Services

Company

BY: ~~Christopher W. McGarry~~          DATE: 12/8/10

TITLE: ~~Senior Vice President, General Counsel and Corporate Secretary~~

SAM MARTIN
PRESIDENT & CEO

8

## EXHIBIT B

**Kass Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | ) Case No. 10-_____ (___) |
| | ) |
| Debtors. | ) Joint Administration Requested |
| | ) |

---

### DECLARATION OF ALBERT H. KASS IN SUPPORT OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS NOTICE AND CLAIMS AGENT

I, Albert H. Kass, being duly sworn, state the following under penalty of perjury:

1.      I am the Vice President of Corporate Restructuring Services of Kurtzman Carson Consultants LLC ("***KCC***"), whose offices are located at 2335 Alaska Avenue, El Segundo, California 90245.

2.      I submit this Declaration in support of the application (the "***Application***") of the above-captioned debtors and debtors in possession (collectively, the "***Debtors***") for authorization pursuant to section 156(c) of the Bankruptcy Code to employ and retain KCC as notice and claims agent in connection with these chapter 11 cases.[1]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), KCC will perform, at the request of the Office of the Clerk of the Court (the "***Clerk's Office***"), the noticing and claims related services specified in the Application.  In addition, at the Debtors'

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Application.

request, KCC will perform such other noticing, claims, technical and support services specified in the Application.

4.       KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases.  KCC has substantial experience in the matters of this size and complexity, and has acted as the official notice and claims agent in many large bankruptcy cases pending in this district and other districts nationwide.  *See*, *e.g.*, *In re Penton Bus. Media Holdings, Inc.,* Case No. 10-10689 (Bankr. S.D.N.Y. Feb. 10, 2010); ); *In re Vertis Holdings, Inc., et al.*, Case No. 10-16170 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re Amer. Media, Inc., et al.*, Case No. 10-16140 (Bankr. S.D.N.Y. Nov. 17, 2010); *In re Ambac Fin. Group, Inc.*, Case No. 10-15973 (Bankr. S.D.N.Y. Nov. 8, 2010); *In re NR Liquidation III Co. Inc. f/k/a Neff Corp.*, Case No. 10-12610 (Bankr. S.D.N.Y. May 16, 2010); *In re Uno Rest. Holdings Corp.,* Case No. 10-10209 (Bankr. S.D.N.Y. Jan. 20, 2010); *In re EnviroSolutions of N.Y., LLC, et al.*, Case No. 10-11236 (Bankr. S.D.N.Y. Mar. 10, 2010); *In re Japan Airlines Corp., et al.,* Case No. 10-10198 (Bankr. S.D.N.Y. Jan. 19, 2010); *In re Citadel Broad., Corp.,* Case No. 09-17442 (Bankr. S.D.N.Y. Dec. 21, 2009); *In re Readers Digest Ass'n, Inc.,* No. 09-23529 (Bankr. S.D.N.Y. Aug. 28, 2009); *In re Lear Corp.,* No. 09-14326 (Bankr. S.D.N.Y. July 7, 2009); *In re Gen. Growth Props., Inc.,* Case No. 09-11977  (Bankr. S.D.N.Y. Apr. 16, 2009); *In re Tronox, Inc.,* Case No. 09-10156 (Bankr. S.D.N.Y. Jan. 13, 2009); *In re Paper Int'l, Inc.,* Case No. 08-13917 (Bankr. S.D.N.Y. Oct. 10, 2008); *In re Wellman, Inc.,* No. 08-10595 (Bankr. S.D.N.Y. March 12, 2008); *In re DJK Residential, LLC,* Case No. 08-10375 (Bankr S.D.N.Y. Feb. 5, 2008); *In re Bally Total Fitness of Greater N.Y., Inc.,* Case No. 07-12395 (Bankr. S.D.N.Y. Dec. 9, 2007); *In re Calpine Corp.,* No. 05-60200 (Bankr. S.D.N.Y. Dec. 22, 2005); *see also*, *e.g.*, *In re Local Insight*

*Media Holdings, Inc., et al.*, Case No. 10-13677 (Bankr. D. Del. Nov. 17, 2010); *In re Claim Jumper Rest., LLC, et al.*, Case No. 10-12819 (Bankr. D. Del. Sept. 10, 2010); *In re Caribbean Petroleum Corp., et al.*, Case No. 10-12553 (Bankr. D. Del. August 12, 2010); *In re Visteon Corp., et al.*, Case No. 09-11786 (Bankr. D. Del. 2009); *In re HPG Int., Inc., et al.*, Case No. 09-10231 (Bankr. D. Del. 2009); *In re Triple Crown Media, Inc.*, Case No. 09-13181 (Bankr. D. Del. 2009); *In re Source Interlink Co., Inc.*, Case No. 09-11424 (Bankr. D. Del. 2009); *In re VeraSun Energy Corp.*, Case No. 08-12606 (Bankr. D. Del. Nov. 4, 2008); *In re Wash. Mutual, Inc.*, No. 08-12229 (Bankr. D. Del. Oct. 31, 2008); *In re Mervyn's Holdings, LLC*, No. 08-11586 (Bankr. D. Del. July 30, 2008).

5. KCC represents, among other things, the following:

(a) KCC is not a creditor of the Debtors;

(b) KCC will not consider itself employed by the United States government;

(c) KCC shall not seek any compensation from the United States government in its capacity as the notice and claims agent in these chapter 11 cases;

(d) By accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

(e) In its capacity as the notice agent and claims agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(f) KCC will not employ any past or present employees of the Debtors in connection with its work as the notice and claims agent in these chapter 11 cases;

(g) In its capacity as notice and claims agent in these chapter 11 cases, KCC will not intentionally misrepresent any fact to any person;

(h)     KCC shall be under the supervision and control of the Clerk's Office with respect to the receipt and recordation of claims and claim transfers; and

(i)     None of the services provided by KCC as notice and claims agent shall be at the expense of the Clerk's Office.

6.     To the best of my knowledge, neither KCC nor any of its personnel have any relationship with the Debtors that would impair KCC's ability to serve as notice and claims agent. The Debtors have many creditors, and accordingly, KCC may have rendered and may continue to render services to certain of these creditors. KCC has not and will not represent the separate interests of any such creditor in these cases. Additionally, KCC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors. For example, one or more of KCC's employees may have obligations outstanding with financial institutions that are creditors of the Debtors or may have used the Debtors' services.

7.     KCC is an indirect subsidiary of Computershare Limited. Computershare Limited is a financial services and technologies provider for the global securities industry. Within the Computershare corporate structure, KCC operates as a separate, segregated business unit. As such, any relationships that Computershare Limited and its affiliates maintain do not create an interest of KCC that would be materially adverse to the Debtors' estate or any class of creditors or equity security holders. Administar, a claims and noticing agent, is also an indirect subsidiary of Computershare Limited. On June 10, 2009, the marketing and operation of Administar's restructuring services were consolidated under KCC.

8.     KCC may also have relationships with other professionals to be retained by the Debtors. Certain former partners and associates of Kirkland & Ellis LLP ("***K&E***"), proposed counsel to the Debtors, are currently employed by KCC. Jonathan A. Carson, the Chief Marketing Officer of KCC, was employed as a K&E associate between 1999 and 2001.

K&E 18094676.11

Mr. Carson's work at K&E was unrelated to the Debtors and these chapter 11 cases. Further, Michael Frishberg, a former K&E partner and Benjamin Schrag, a former K&E associate, and Isidro Panizales, a former K&E legal assistant, presently work for KCC. Mr. Frishberg's, Mr. Schrag's and Mr. Panizales's work at K&E was unrelated to the Debtors and the chapter 11 cases. I was also a former K&E associate and my work at K&E was unrelated to the Debtors and the chapter 11 cases.

9.      To the best of my knowledge and except as disclosed herein, KCC neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed and that it is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code. KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

10.     The Engagement Letter, annexed as <u>Exhibit 1</u> to the proposed order attached to the Application as **<u>Exhibit A</u>**, sets forth the terms and conditions by which KCC will render services to the Debtors during their chapter 11 cases. The proposed terms and conditions of KCC's engagement as set forth in the Engagement Letter are consistent with, and typical of, other notice and claims agent engagements in chapter 11 cases approved in this and other districts.

11.     KCC requests that the Debtors pay their fees and expenses in accordance with the terms of the Engagement Letter. KCC will submit invoices summarizing, in reasonable detail, the services and expenses for which compensation is sought.

12.     KCC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

K&E 18094676.11

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 10, 2010

By: _____
Albert H. Kass
Vice President, Corporate Restructuring Services
Kurtzman Carson Consultants