**<u>EXHIBIT A</u>**

**Interim Order**

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | ) |
|  | ) |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.*, | ) Chapter 11 |
|  | ) |
|  | ) Case No. 10-____(___) |
| Debtors. | ) |
|  | ) Joint Administration Requested |
|  | ) |

## INTERIM ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364 AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion (the "**Motion**"), dated December 12, 2010, of The Great

Atlantic & Pacific Tea Company, Inc. (the "**Company**") and its affiliated debtors, each as

debtor and debtor-in-possession (collectively, the "**Debtors**"),[1] in the above-captioned

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corp. (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC, Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA, Inc. (1720); Bev, Ltd. (9046); Borman's, Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); MacDade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); S E G Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (New Jersey) (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599).  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1) authorization for the Company and the other borrowers under the Pre-Petition Credit Agreement (as defined below) (collectively, the "**Borrower**") to obtain, and be jointly and severally obligated in respect of, post-petition financing (the "**Financing**"), and for all of the other Debtors (the "**Guarantors**") to guaranty the Borrower's obligations in connection with the Financing, up to the aggregate principal amount of $800,000,000 (the actual available principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), from JPMorgan Chase Bank, N.A. ("**JPMCB**"), acting as Administrative Agent and Collateral Agent (in such capacities, the "**Agent**"), for itself and any future syndicate of financial institutions (together with JPMCB and including the fronting and issuing banks for the letters of credit, the "**DIP Lenders**") to be arranged by J.P. Morgan Securities LLC (the "**Lead Arranger**");

(2) authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3) until the refinancing thereof as hereinafter provided, the granting of adequate protection to the lenders (the "**Pre-Petition Secured**

**Lenders**") under or in connection with that certain Amended and Restated Credit Agreement, dated as of December 27, 2007 (as heretofore amended, supplemented or otherwise modified, the "**Pre-Petition Credit Agreement**"), among the Borrower, the lenders listed therein, the letter of credit issuing banks named therein, and Bank of America, N.A. ("**BofA**"), as administrative agent for the Pre-Petition Secured Lenders (the "**Pre-Petition Agent**"), and that certain Security Agreement, dated as of December 3, 2007, between the Borrower and BofA as collateral agent (as heretofore amended, supplemented or otherwise modified, the "**Security Agreement**" and, collectively with the Pre-Petition Credit Agreement, and the mortgages and all other documentation executed in connection therewith, (including, for the avoidance of doubt, any Hedging Agreements as defined in the Pre-Petition Credit Agreement), the "**Existing Agreements**"), whose liens and security interests are being primed by the Financing;

(4) the granting of adequate protection to the noteholders (the "**Pre-Petition Secured Noteholders**") under or in connection with that certain indenture dated as of August 4, 2009 between Wilmington Trust Company, as trustee (the "**Pre-Petition Trustee**"), and the Company (the "**Pre-Petition Note Indenture**"), whose liens and security interests shall be junior to the DIP Liens and the Adequate Protection Liens (each as defined below);

(5) authorization for the Debtors to use Cash Collateral (as defined below) and all other collateral in which the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders with respect to, inter alia, such use of their Cash Collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(6) authorization for the Debtors to immediately use proceeds of the Financing to refinance the Pre-Petition Debt (as defined below) in full including interest through the date of repayment at the non-default contract rate upon (a) the simultaneous release and termination of the Pre-Petition Secured Lenders' existing liens, claims and encumbrances and (b) the agreement of the Pre-Petition Secured Lenders to release and terminate any remaining liens, claims and encumbrances;

(7) approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom;

(8) the granting of superpriority claims to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Carve Out (as defined below);

(9) subject only to and effective upon entry of a final order granting such relief and such other relief as provided herein and in such final order (the "**Final Order**"), the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code;

(10) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") (a) to forthwith obtain the following financing: (i) approximately $200,000,000 under the revolving facility (the "**Revolving Facility**") to backstop the outstanding letters of credit under the Pre-Petition Credit Agreement and (ii) a term loan borrowing (the "**Term Loan Facility**") in the amount of $350,000,000 to, collectively, and with the proceeds made available under the Revolving Facility, (1) refinance the borrowings and other extensions of credit under the Pre-Petition Credit Agreement in full and (2) to provide operating cash for the Debtors, (b) authorizing the Debtors' use of Cash Collateral and other collateral, and (c) granting the adequate protection described herein; and

(11) that this Court schedule a final hearing (the "**Final Hearing**") to be held within 30 days of the entry of the Interim Order to consider entry of the Final Order.

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the forty largest unsecured

creditors of each of the Debtors, on the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Secured Noteholders and the United States Trustee for the Southern District of New York.

The Interim Hearing having been held by this Court on December 13, 2010.

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Interim Hearing was served by the Debtors on their forty largest (on a consolidated basis) unsecured creditors, the DIP Agent, the Pre-Petition Agent, the Pre-Petition Trustee and the Office of the United States Trustee for the Southern District of New York.  Under the circumstances, the relief requested therein and the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and no further notice of the relief sought at the Interim Hearing is necessary or required.

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraphs 16 and 21 below), the Debtors admit, stipulate and agree that:

(a)      (i) as of the filing of the Debtors' chapter 11 petitions (the "**Petition Date**"), the Borrowers and the Guarantors were  indebted and liable to the Pre-

Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $97,500,000 in respect of term loans made, not less than $37,000,000 in respect of revolving credit loans and not less than $196,153,000 in respect of letters of credit issued and outstanding, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), charges and other obligations incurred in connection therewith as provided in the Existing Agreements (collectively, the "**Pre-Petition Debt**"), (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (iii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(b)     the liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Existing Agreements (including, without limitation, all security agreements, pledge agreements, mortgages (other than with respect to certain mortgages not recorded prior to the Petition Date), deeds of trust and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection with the Existing Agreements, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Existing Agreements (the "**Pre-Petition Collateral**"); (ii) not subject to avoidance, recharacterization or

subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements to the extent such permitted liens are senior to or *pari passsu* with the liens of the Pre-Petition Agent on the Pre-Petition Collateral;

(c)     the liens and security interests granted to the Pre-Petition Secured Noteholders pursuant to and in connection with the Pre-Petition Note Indenture (including, without limitation, all security agreements, pledge agreements, mortgages (other than with respect to certain mortgages not recorded prior to the Petition Date), deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Pre-Petition Secured Noteholders), (i) are valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Existing Agreements, (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) shall be subject and subordinate only to (A) the DIP Liens and the Adequate Protection Liens (each as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Pre-Petition Note Indenture to the extent such permitted liens are senior to or *pari passu* with the liens of the Agent on the Collateral;

(d)     a portion of the Debtors' borrowings from the DIP Lenders under the DIP Credit Agreement (as defined below) and this Interim Order will be used to refinance the Pre-Petition Debt owing to the Pre-Petition Secured Lenders and to provide

back-to-back letters of credit in respect of the letters of credit currently outstanding under the Pre-Petition Credit Agreement, each in accordance with the terms and conditions set forth in this Interim Order; and, subject to the terms and conditions contained herein (including, without limitation, the priming liens granted hereunder and the Carve Out (as defined below)), any and all pre-petition or post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to the Pre-Petition Secured Lenders by this Court) that the Pre-Petition Secured Lenders have or may have in the Pre-Petition Collateral or any other assets and properties of the Debtors and their estates shall (i) unless otherwise ordered by the Court, continue to secure the unpaid portion of any Pre-Petition Debt (including, without limitation, any Pre-Petition Debt subsequently reinstated after the repayment thereof because such payment (or any portion thereof) is required to be returned or repaid to the Debtors or the DIP Lenders and the liens securing the Pre-Petition Debt shall have not been avoided) and (ii) be junior and subordinate in all respects to the DIP Lenders' liens on and security interests in the Collateral (including, without limitation, the DIP Liens (as defined below)) granted under this Interim Order and the DIP Documents (such junior liens and security interests of the Pre-Petition Secured Lenders are hereinafter referred to as the "**Contingent Adequate Protection Liens**"), and any such reinstated Pre-Petition Debt described in clause (i) of this sentence is hereinafter referred to as the "**Contingent Pre-Petition Debt**").

    4.    *Findings Regarding the Financing.*

    (a)    Good cause has been shown for the entry of this Interim Order.

(b)     The Debtors have an immediate need to obtain the Financing and use Cash Collateral  and all other collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures, to repay the Pre-Petition Debt, to provide back-to-back letters of credit in respect of the letters of credit currently outstanding under the Pre-Petition Credit Agreement and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code (i) without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Interim Order and in the DIP Documents and (ii) repaying the Pre-Petition Debt in full upon entry of the Interim Order, such repayment being a requirement by the Agent for the Financing.

(d)     The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent

with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing has been negotiated in good faith and at arm's length among the Debtors, the Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the credit agreement (the "**DIP Credit Agreement**") substantially in the form attached as Exhibit A to the Motion, and (ii) any Obligations (as defined in the DIP Credit Agreement), including credit extended in respect of overdrafts and related liabilities and other depository, treasury, and cash management services and other clearing services provided by JPMCB, any DIP Lender or any of their respective affiliates and any hedging obligations of the Debtors permitted under the DIP Credit Agreement in each case owing to JPMCB, any DIP Lender or any of their respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the "**DIP Obligations**"), shall be deemed to have been extended by the Agent and the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation

of the Financing and the use of Cash Collateral in accordance with this Order and the DIP

Documents is therefore in the best interest of the Debtors' estates.

5.     *Authorization of the Financing, the DIP Documents and the Refinancing of the Pre-Petition Debt.*

(a)     The Debtors are hereby authorized to enter into the DIP Documents.  Each of the Borrowers is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and letters of credits and the Borrowers' joint and several obligations with respect to such borrowings and letters of credit up to an aggregate principal or face amount of $550,000,000 (plus interest, fees and other expenses and amounts provided for in the DIP Documents), in accordance with the terms of this Interim Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents, including, without limitation,  first, to refinance the Pre-Petition Debt as provided herein, to provide back-to-back letters of credit in respect of the letters of credit currently outstanding under the Pre-Petition Credit Agreement, to provide working capital for the Borrowers and the Guarantors, for other general corporate purposes and to pay interest, fees and expenses in accordance with this Interim Order and the DIP Documents.  In addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services including any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB, any DIP Lender or any of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)     In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)     the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Security Documents (as defined in the DIP Credit Agreement), all related documents and any mortgages contemplated thereby (collectively, and together with the letter agreements referred to in clause (i) below, the "**DIP Documents**"),

(ii)     the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement (and any fees paid in connection therewith) that do not increase the aggregate commitments thereunder). Notwithstanding any other provision hereof, without further approval of this Court, amendments to the DIP Documents may be made at any time prior to the earlier of (A) the date that JPMCB and its affiliates shall (i) no longer hold commitments with respect to, or loans under the Term Loan Facility and (ii) hold commitments with respect to or

13

loans under the Revolving Facility of not more than $100,000,0000 (collectively, a

"**Successful Syndication**") and (B) the date that is 60 days following the date of entry of

this Interim Order, if and to the extent the Agent and the Lead Arranger reasonably

determine that any such change is necessary to ensure a Successful Syndication or as

otherwise contemplated by any separate letter agreement entered into in connection with

the Financing,

     (iii) the non-refundable payment to the Agent, the Lead

Arranger or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit

Agreement (and in the separate letter agreements between them in connection with the

Financing) and reasonable costs and expenses as may be due from time to time,

including, without limitation, fees and expenses of the professionals retained as provided

for in the DIP Documents without the necessity of filing retention motions or fee

applications, and

     (iv) the performance of all other acts required under or in

connection with the DIP Documents.

    (c) Upon execution and delivery of the DIP Documents, the DIP

Documents shall constitute valid and binding obligations of the Debtors, enforceable

against each Debtor party thereto in accordance with the terms of the DIP Documents.

No obligation, payment, transfer or grant of security under the DIP Documents or this

Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or

under any applicable law (including without limitation, under section 502(d) of the

Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or

counterclaim: *provided*, *however*, that the Court reserves the right to unwind or otherwise

modify, after notice and hearing, the repayment of the Pre-Petition Debt or a portion thereof (which might include the disgorgement or re-allocation of interest, fees, principal or other incremental consideration paid in respect of the Pre-Petition Debt and not paid on account of the borrowings thereunder or the avoidance of liens and/or guarantees with respect to one or more of the Debtors), as the Court shall determine, in the event that there is a timely successful challenge, pursuant and subject to the limitations contained in paragraph 16, to the validity, enforceability, extent, perfection or priority of the Pre-Petition Debt.

6. *Superpriority Claims.*

(a) Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations and Junior Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c) (upon entry of the Final Order, to the extent therein approved), 507(a), 507(b), 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the Carve Out to the extent specifically provided for herein.

(b)　　　For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code, (ii) all reasonable fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code not to exceed $100,000 and (iii) at any time after the first business day after the occurrence and during the continuance of a C/C Event of Default (as defined below) and delivery of notice thereof to (A) the United States Trustee for the Southern District of New York,  (B) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, (Attention: Leonard Klingbaum, Esq.) and  (C) counsel for the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") (the "**Carve Out Notice**"), to the extent allowed at any time, whether before or after delivery of a Carve Out Notice, whether by interim order, procedural order or otherwise, the payment of accrued and unpaid professional fees, costs and expenses incurred by persons or firms retained by the Debtors and the Creditors' Committee (but excluding fees and expenses of third party professionals employed by such members) and allowed by this Court (collectively, the "**Professional Fees**"), in an aggregate amount not exceeding $15,000,000 (the "**Carve Out Cap**"), which amount may be used subject to the terms of this Order (plus all unpaid Professional Fees allowed by this Court at any time that were incurred on or prior to the day immediately following the business day after delivery of the Carve Out Notice).  Immediately upon delivery of a Carve Out Notice, the Debtors shall be required to transfer from its concentration account to a segregated account (the "**Carve Out Account**") not subject to the control of the Agent an amount equal to the Carve Out Cap; *provided* that, cash or other amounts on deposit in

16

any account of the Agent into which the Borrowers deposit cash for the benefit of the Agent's L/C Exposure (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out. The dollar limitation in this clause 6(b)(iii) on fees and expenses shall neither be reduced nor increased by the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the delivery of a Carve Out Notice or by any fees, expenses, indemnities or other amounts paid to the Agent or any DIP Lender or such party's respective attorneys and agents under the DIP Credit Agreement or otherwise. The proceeds on deposit in the Carve Out Account shall be available only to satisfy obligations benefitting from the Carve Out, and the DIP Lenders (1) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve Out Account and (2) shall have a security interest in any residual interest in the Carve Out Account available following satisfaction in full of all obligations benefitting from the Carve Out. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A), (B) and (C) above.

7. *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Agent of, or over, any Collateral (as defined below), the following security interests and liens are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the

"**Collateral**"),[2] subject, only in the event of the occurrence and during the continuance of

a C/C Event of Default (as defined below), to the payment of the Carve Out (all such

liens and security interests granted to the Agent, for its benefit and for the benefit of the

DIP Lenders and the Credit Parties (as defined in the DIP Credit Agreement) pursuant to

this Order and the DIP Documents, the "**DIP Liens**"):

       (a)     <u>First Lien on Cash Balances and Unencumbered Property</u>.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority senior security interest in and lien upon all pre-

and post-petition property of the Debtors, whether existing on the Petition Date or

thereafter acquired, that, on or as of the Petition Date (or as a result of the refinancing of

the Pre-Petition Debt) is not subject to valid, perfected and non-avoidable liens

(collectively, "**Unencumbered Property**"), including without limitation, all cash and

cash collateral of the Debtors (whether maintained with the Agent or otherwise) and any

investment of such cash and cash collateral, inventory, accounts receivable, other rights

to payment whether arising before or after the Petition Date, contracts, properties, plants,

equipment, general intangibles, documents, instruments, interests in leaseholds, real

properties, patents, copyrights, trademarks, trade names, other intellectual property,

capital stock of subsidiaries, and the proceeds of all the foregoing.  Unencumbered

Property shall exclude the Debtors' claims and causes of action under sections 502(d),

544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions

---

[2] Notwithstanding anything contained herein to the contrary, the Borrower and the Guarantors shall not be required to pledge to the Agent in excess of 65% of the voting capital stock of its first tier foreign subsidiaries (if, in the reasonable judgment of the Borrower, a pledge of a greater percentage could result in material adverse tax consequences to the Borrower).

under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but subject only to and effective upon entry of the Final Order, shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**").

(b)     Liens Priming Pre-Petition Secured Lenders' and Pre-Petition Secured Noteholders' Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently held by the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders.  Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders arising from current and future liens of the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders and the Pre-Petition Secured

Noteholders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     Liens Junior to Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in and lien upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Adequate Protection Liens and the Junior Adequate Protection Liens (each as defined below)), which security interests and liens in favor of the Agent are junior to such valid, perfected and unavoidable liens.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

8.    *Protection of DIP Lenders' Rights.*

(a)    So long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding) outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders shall (i) have no right to and take no action to foreclose upon or recover in connection with the liens granted thereto pursuant to the Existing Agreements or this Order, or otherwise seek or exercise any enforcement rights or remedies against any Collateral or in connection with the Contingent Pre-Petition Debt, the Adequate Protection Liens or the Junior Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Pre-Petition Credit Agreement and the Pre-Petition Note Indenture), except to the extent authorized by an order of this Court, (ii) be deemed to have consented to any release of Collateral authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the Collateral unless, solely as to this clause (iii), the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the date of filing and (iv) deliver or cause to be delivered, at the Debtors' costs and expense (for which the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders shall be reimbursed

21

upon submission to the Debtors of invoices or billing statements), any termination statements, releases and/or assignments (to the extent provided for herein) in favor of the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of the Adequate Protection Liens and the Junior Adequate Protection Liens on any portion of the Collateral subject to any sale or disposition approved or arranged for by the Agent.

(b)      The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to exercise, (i) upon the occurrence of an Event of Default (as defined in the DIP Credit Agreement) and seven days' prior written notice (which shall run concurrently with any notice provided under the DIP Documents) to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee), all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of such an Event of Default and seven days' prior written notice (which shall run concurrently with any notice provided under the DIP Documents) to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee), all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender) and this Order.

(c)      In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Pre-Petition

Secured Lenders and the Pre-Petition Secured Noteholders shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP Documents. In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9. *Limitation on Charging Expenses Against Collateral*. Subject only to and effective upon entry of the Final Order and to the extent provided for therein, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders or the Pre-Petition Secured Noteholders.

10. *The Cash Collateral*. To the extent any funds were on deposit with any Pre-Petition Secured Lender as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Pre-Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy petitions (the "**Petition Time**") (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "**Deposited Funds**")

are subject to rights of setoff. By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code. The Pre-Petition Secured Lenders are obligated, to the extent provided in the Existing Agreements, to share the benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to such Existing Agreements. Any proceeds of the Pre-Petition Collateral (including the Deposited Funds or any other funds on deposit at the Pre-Petition Secured Lenders or at any other institution as of the Petition Date) are cash collateral of the Pre-Petition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code. The Deposited Funds and all such proceeds of Pre-Petition Collateral are referred to herein as "**Cash Collateral**."

11. *Use of Cash Collateral*. The Debtors are hereby authorized, subject to the terms and conditions of the DIP Documents and this Order, to use all Cash Collateral of the Pre-Petition Secured Lenders, and the Pre-Petition Secured Lenders are directed promptly to turn over to the Debtors all Cash Collateral received or held by them; *provided* that the Pre-Petition Secured Lenders are granted adequate protection as provided herein. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date (as defined in the DIP Credit Agreement) upon the giving of five days' prior written notice (which shall run concurrently with any notice provided under the DIP Documents) to the Debtors (with a copy to counsel to the Creditors' Committee and to the U.S. Trustee).

12. *Pre-Petition Secured Lenders' and Pre-Petition Secured Noteholders' Adequate Protection*. The Pre-Petition Secured Lenders are entitled, until the indefeasible repayment of the Pre-Petition Debt pursuant to sections 361, 363(e) and

24

364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Pre-Petition Secured Lenders' interest in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, in each case to the extent required by the Bankruptcy Code (collectively, the "**Adequate Protection Obligations**"). As adequate protection for such Adequate Protection Obligations, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the following:

(a) <u>Adequate Protection Liens</u>. The Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Secured Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) (i) a security interest in and lien upon all the Collateral (limited to replacement security interests on prepetition collateral), subject and subordinate only to (1) the DIP Liens  and any liens on the Collateral to which such liens so granted to the Agent are junior and (2) the Carve Out (such liens securing the Adequate Protection Obligations, together with the Contingent Adequate Protection Liens, the "**Adequate Protection Liens**") and (ii) the Contingent Adequate Protection Liens to secure any Contingent Pre-Petition Debt. Without limiting the generality of the foregoing, (A) the

Adequate Protection Liens granted to the Pre-Petition Secured Lenders hereunder (including the Contingent Adequate Protection Liens in respect of the Contingent Pre-Petition Debt) shall be senior to all Junior Adequate Protection Liens and be junior and subordinate in all respects to the DIP Lenders' liens and security interests (including, without limitation, the DIP Liens) upon and in the Collateral and the Carve Out; (B) the Contingent Pre-Petition Debt shall be junior and subordinate in right of payment to all DIP Obligations and the Carve Out; (C) until such time as all of the DIP Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order, the Pre-Petition Secured Lenders shall have no right to seek or exercise any enforcement rights or remedies in connection with the Contingent Pre-Petition Debt or the Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Pre-Petition Credit Agreement); (D) the Pre-Petition Agent and the Pre-Petition Secured Lenders have or shall be deemed to have consented to the Financing (which Financing shall, in part, constitute a DIP Financing as defined in the ICA (as defined below)) in accordance with the terms of the Intercreditor Agreement, dated as of August 4, 2009 by and between Bank of America, N.A. as collateral agent under the Pre-Petition Credit Agreement and Wilmington Trust Company as note collateral agent under the Pre-Petition Note Indenture (the "**ICA**"); (E) the Pre-Petition Secured Lenders shall be deemed to have consented to any sale or disposition of Collateral approved, arranged for or by the Agent, and shall terminate and release upon any such sale or disposition all of its liens on and security interests in such Collateral; (F) the Pre-Petition Secured Lenders shall deliver or cause to be delivered, at the Debtors' costs and expense (for which the Pre-Petition Secured Lenders shall be

reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of the Pre-Petition Secured Lenders' liens on or security interests in any portion of the Collateral subject to any sale or disposition approved or arranged for by the Agent; and (G) upon the Final Order becoming a final and nonappealable order, the Adequate Protection Liens shall terminate and be released (automatically and without further action of the parties), and the Pre-Petition Secured Lenders shall execute and deliver such agreements to evidence and effectuate such termination and release as Agent may request and Agent shall be authorized to file on behalf of the Pre-Petition Secured Lenders such UCC termination statements or such other filings as may be applicable to the extent such authorization is required under the Uniform Commercial Code of the applicable jurisdiction.  The existing liens held by the Pre-Petition Secured Lenders will not be assigned to the DIP Lenders except pursuant to the Final Order upon its becoming final and non-appealable.  The rights of parties in interest with respect to the propriety of any such assignment are expressly reserved.  The Adequate Protection Liens shall remain in effect solely during the interim period prior to the Final Order becoming final and non-appealable, and shall be assigned or released upon the Final Order becoming final and non-appealable; *provided, however*, that the rights of parties in interest with respect to the propriety of any such assignment are expressly reserved.

(b)     <u>Repayment of the Debt</u>.  Immediately following the entry of this Interim Order, the Debtors shall use a portion of the proceeds from the DIP Loan in accordance with the DIP Documents and this Interim Order to refinance in full the Pre-

Petition Debt then outstanding, upon which repayment, the existing liens on the Pre-Petition Collateral shall be released and terminated simultaneously with such repayment.

(c)     Section 507(b) Claim.  The Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted, subject to the Carve Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (the "**507(b) Claim**"), immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders; *provided, however*, that the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder or under the Existing Agreements unless and until the DIP Obligations have indefeasibly been paid in cash in full.

(d)     Interest, Fees and Expenses.  To the extent actually incurred, the Pre-Petition Agent shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Debt and letter of credit fees at the non-default rates provided for in the Existing Agreements, and all other accrued and unpaid fees and disbursements (including, but not limited to, fees owed to the Pre-Petition Agent) owing to the Pre-Petition Agent under the Existing Agreements and incurred prior to the Petition Date; (ii) current cash payments of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements limited to the reasonable fees and disbursements of one counsel to the Pre-Petition Agent  promptly upon receipt of invoices therefor; and (iii) on the first business day of each month, all accrued but unpaid interest on the Pre-Petition Debt and letters of credit and other fees at the non-default contract rate applicable on the Petition Date (including LIBOR pricing options available

in accordance with the Existing Agreements) under the Existing Agreements; *provided* that, without prejudice to the rights of any other party to contest such assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Existing Agreements, and for the payment of any other amounts provided for in the Existing Agreements.

(e)     *Pre-Petition Secured Noteholders Adequate Protection.*  The Pre-Petition Secured Noteholders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, for and equal in amount to the aggregate diminution in value of the Pre-Petition Secured Noteholders' interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of the Pre-Petition Collateral, the priming of the Pre-Petition Secured Noteholders' security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the "**Junior Adequate Protection Obligations**").  The Pre-Petition Secured Noteholders shall be granted valid, binding, continuing, enforceable, fully-perfected junior security interests in and liens upon all pre- and post-petition property of the Debtors that is subject to the DIP Liens and the Adequate Protection Liens (collectively, the "**Junior Adequate Protection Liens**").  Without limiting the generality of the foregoing, (i) the Junior Adequate Protection Liens granted to the Pre-Petition Secured Noteholders hereunder shall be junior and subordinate in all respects to the DIP

Lenders' liens and security interests (including, without limitation, the DIP Liens) upon and in the Collateral and the Adequate Protection Liens and the Carve Out; (ii) the Junior Adequate Protection Liens shall be junior and subordinate in right of payment to all DIP Obligations and Adequate Protection Obligations and the Carve Out; (iii) the 507(b) Claim granted to the Pre-Petition Secured Noteholders shall be junior to the 507(b) Claim granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders and the Carve Out, (iv) until such time as all of the DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash in accordance with the Loan Documents and this Interim Order, the Pre-Petition Secured Noteholders shall have no right to seek or exercise any enforcement rights or remedies in connection with the Junior Adequate Protection Liens, including, without limitation, in respect of the occurrence or continuance of any Event of Default (as defined in the Pre-Petition Credit Agreement); (v) the Pre-Petition Secured Noteholders shall be deemed to have consented to any sale or disposition of Collateral approved, arranged for or by the Agent, and shall terminate and release upon any such sale or disposition all of its liens on and security interests in such Collateral; and (vi) the Pre-Petition Secured Noteholders shall deliver or cause to be delivered, at the Debtors' costs and expense (for which the Pre-Petition Secured Noteholders shall be reimbursed upon submission to the Debtors of invoices or billing statements), any termination statements, releases or other documents necessary to effectuate and/or evidence the release and termination of the Pre-Petition Secured Noteholders' liens on or security interests in any portion of the Collateral subject to any sale or disposition approved or arranged for by the Agent.

(f)     Notwithstanding anything in this paragraph 12 to the contrary, following delivery of a Carve Out Notice and prior to the payment to any Pre-Petition Agent, Pre-Petition Secured Lender, Pre-Petition Trustee or Pre-Petition Secured Noteholder on account of any adequate protection or otherwise, the Carve Out Reserve Account shall have been fully funded.

13.     *Reservation of Rights of Pre-Petition Secured Lenders and Pre-Petition Secured Noteholders*.  Under the circumstances, including the provisions under the ICA, and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders.

14.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     Subject to the provisions of paragraph 8(a) above, the Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the Agent on behalf of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed

31

valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge dispute or subordination, at the time and on the date of entry of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent and Pre-Petition Secured Lenders, without any further consent of any party, is authorized to take, execute, deliver and file such instruments (in each case without representation or warranty of any kind) to enable the Agent to further validate, perfect, preserve and enforce DIP Liens.

(b)     A certified copy of this Order may, in the discretion of the Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     Any provision of any lease or other license, contract or other agreement that requires (i) the consent or approval of one or more landlords or other parties or (ii) the payment of any fees or obligations to any governmental entity, in order for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such provision shall have no force and effect with respect to the transactions granting post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP Documents or this Order.

15.     *Preservation of Rights Granted Under the Order.*

(a)     No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders, respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations, the Adequate Protection Obligations or the Junior Adequate Protection Obligations remain outstanding, and the DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, in each case other than the Carve Out.

(b)     Unless all DIP Obligations shall have been indefeasibly paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement) and the Adequate Protection Obligations and the Junior Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute a "**C/C Event of Default**" and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Agent, (ii) an order converting or dismissing any of the Cases or (iii) an order under section 365 of the Bankruptcy Code rejecting a Lease (as defined in the DIP Credit Agreement) that is part

of the Collateral or otherwise terminating a Lease that is part of the Collateral without first providing 75-days' prior written notice to the Agent (unless such notice provision is waived by the Agent) during which time the Agent shall be permitted to find a reasonably acceptable (in the Agent's Permitted Discretion (as defined in the DIP Credit Agreement)) replacement lessee to whom such Lease may be assigned (and, if such a prospective assignee is timely found, the Debtors shall seek approval of the assumption and assignment of such Lease); *provided* that this clause (iii) shall not apply to Leases that are rejected (A) pursuant to a filing on the Petition Date or (B) on the Effective Date of a Reorganization Plan (as defined in the DIP Credit Agreement) that indefeasibly repays the DIP Obligations in full as required by the DIP Documents. If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Agent and the DIP Lenders and, as applicable, the Pre-Petition Agent and the Pre-Petition Secured Lenders pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations, Adequate Protection Obligations and Junior Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations, Adequate Protection Obligations or Junior Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations, Adequate Protection Obligations or Junior Adequate Protection Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations, Adequate Protection Obligations or Junior Adequate Protection Obligations incurred by the Debtors to the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders or the Pre-Petition Secured Noteholders prior to the actual receipt of written notice by the Agent and Pre-Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agent, DIP Lenders, Pre-Petition Agent, Pre-Petition Secured Lenders and Pre-Petition Secured Noteholders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations, Adequate Protection Obligations and Junior Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP

Documents shall survive, and shall not be modified, impaired or discharged by (i)the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the Loan Documents) or (iii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

16. *Effect of Stipulations on Third Parties*. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 3 of this Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances. The stipulations and admissions contained in this Order, including, without limitation, in paragraph 3 of this Order, shall be binding upon all other parties in interest, including, without limitation, any statutory committee appointed in these Cases, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 17) by no

later than the date that is 60 days after entry of the Final Order (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole discretion or (y) as has been ordered by the Court) (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and Defenses**") against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders or their affiliates, representatives, attorneys or advisors in connection with matters related to the Existing Agreements, the Pre-Petition Debt, the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter; *provided* that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or contested matter is timely filed, (x) to the extent not theretofore repaid, the Pre-Petition Debt and all related obligations of the Debtors (the "**Pre-Petition Obligations**") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agent's liens, the Pre-Petition Secured Lenders' liens, the DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance, and such liens shall not be subject to any other or further challenge by any party in interest seeking to exercise the

rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors) and (z) the repayment of the Pre-Petition Debt shall be irrevocable and shall not be subject to restitution, disgorgement or any other challenge under any circumstances, including, without limitation, pursuant to any Claims and Defenses (as defined below). If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 3 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Existing Agreements or the Pre-Petition Obligations.

17. *Limitation on Use of Financing Proceeds and Collateral.*

(a) Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Collateral or the Carve Out may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Existing Agreements, or the liens or claims granted under this Order, the DIP Documents or the Existing Agreements, (ii) assert any Claims and Defenses or causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition

Secured Lenders or the Pre-Petition Secured Noteholders or their respective agents, affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay the Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Order, (iv) seek to modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders or the Pre-Petition Secured Noteholders hereunder or under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent or (v) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (1) approved by an Order of this Court and (2) in accordance with the DIP Credit Agreement and any relevant budgets; *provided* that, advisors to the Creditors' Committee may investigate the liens granted pursuant to the Existing Agreements and, subject to any applicable law with respect to standing, commence and prosecute any related proceedings as a representative of the Debtors' estates at an aggregate expense for such investigation and prosecution not to exceed $100,000.

18.     *Priorities Among Pre-Petition Secured Lenders*.  Notwithstanding anything to the contrary herein or in any other order of this Court, in determining the relative priorities and rights of the Pre-Petition Secured Lenders (including, without limitation, the relative priorities and rights of the Pre-Petition Secured Lenders with respect to the Adequate Protection Obligations granted hereunder), such priorities and rights shall continue to be governed by the Existing Agreements.

19.     *BofA as Collateral Agent*.  To the extent BofA, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements

(as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance policies as required under the Security Agreement or is the secured party under any other Existing Agreement, it shall turn over and distribute any proceeds recovered or received <u>first</u>, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and <u>second</u>, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

20.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

21.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Secured Noteholders, any committee appointed in these Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Secured Noteholders and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent and the DIP Lenders shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent and the DIP Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or

operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

22. *Final Hearing*.  The Final Hearing is scheduled for _____, 200__ at _____ __.m. before this Court.

The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, (Attention: Paul Basta, Esq. (paul.basta@kirkland.com), Ray Schrock, Esq. (ray.schrock@kirkland.com) and Leonard Klingbaum, Esq. (leonard.klingbaum@kirkland.com)), attorneys for the Debtors; (b) _____ attorneys for BofA, as Pre-Petition Agent, (c) _____ attorneys for Wilmington Trust Company, as trustee under the Pre-Petition Note Indenture, (d) Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, (Attention: Marshall S. Huebner, Esq. (marshall.huebner@davispolk.com)), attorneys for JPMCB, as Agent and Lead Arranger; and (e) the Office of the United States Trustee for the Southern District of New York, and

shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of

New York, in each case to allow actual receipt by the foregoing no later than

_____, 2011 at __:00 p.m., prevailing Eastern time.




Dated:   _____, 2010
           White Plains, New York

                                             _____
                                             UNITED STATES BANKRUPTCY JUDGE