UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Chapter 11 Case No. |
| THE GREAT ATLANTIC & PACIFIC TEA | ) |
| COMPANY, INC., *et al.*, | ) 10-24549 (RDD) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

Upon the motion (the "**Motion**"), dated December 12, 2010, of The Great Atlantic & Pacific Tea Company, Inc. (the "**Company**") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the "**Debtors**"),[1] in the above-captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corp. (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC, Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA, Inc. (1720); Bev, Ltd. (9046); Borman's, Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); MacDade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); S E G Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (New Jersey) (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(1)  authorization for the Company and the other borrowers under

the Pre-Petition Credit Agreement (as defined below) (collectively, the

"**Borrower**") to obtain, and be jointly and severally obligated in respect

of, post-petition financing (the "**Financing**"), and for all of the other

Debtors (the "**Guarantors**") to guaranty the Borrower's obligations in

connection with the Financing, up to the aggregate principal amount of

$800,000,000 (the actual available principal amount at any time being

subject to those conditions set forth in the DIP Documents (as defined

below)), from JPMorgan Chase Bank, N.A. ("**JPMCB**"), acting as

Administrative Agent and Collateral Agent (in such capacities, the

"**Agent**"), for itself and any future syndicate of financial institutions

(together with JPMCB and including the fronting and issuing banks for the

letters of credit, the "**DIP Lenders**") to be arranged by J.P. Morgan

Securities LLC (the "**Lead Arranger**");

(2)  authorization for the Debtors to execute and enter into the DIP

Documents and to perform such other and further acts as may be required

in connection with the DIP Documents;

(3) until the refinancing thereof as provided in the Interim Order

and the expiration of the Challenge Period (as defined below), with no

challenge having been brought, or if such a challenge is brought, until the

2

entry of a final judgment confirming the payment to the Pre-Petition

Agent (as defined below) and the Pre-Petition Secured Lenders (as defined

below) of all amounts owed by the Debtors under the Existing Agreements

(as defined below) and this Order, or other treatment of the Pre-Petition

Debt (as defined below) required by the Court in connection with any

challenge that is brought, the granting of adequate protection to the lenders

(the "**Pre-Petition Secured Lenders**") under or in connection with that

certain Amended and Restated Credit Agreement, dated as of December

27, 2007 (as heretofore amended, supplemented or otherwise modified, the

"**Pre-Petition Credit Agreement**"), among the Borrower, the lenders

listed therein, the letter of credit issuing banks named therein, and Bank of

America, N.A. ("**BofA**"), as administrative agent for the Pre-Petition

Secured Lenders (the "**Pre-Petition Agent**"), and that certain Security

Agreement, dated as of December 3, 2007, between the Borrower and

BofA as collateral agent (as heretofore amended, supplemented or

otherwise modified, the "**Security Agreement**" and, collectively with the

Pre-Petition Credit Agreement, and the mortgages and all other

documentation executed in connection therewith (including, for the

avoidance of doubt, any Hedging Agreements as defined in the Pre-

Petition Credit Agreement), the "**Existing Agreements**"), whose liens and

security interests are being primed by the Financing;

(4) the granting of adequate protection to the Pre-Petition Trustee (as defined below), for the benefit of itself and the noteholders (the "**Pre-Petition Secured Noteholders**"), under or in connection with that certain indenture dated as of August 4, 2009 between Wilmington Trust Company or any successor trustee appointed in accordance with section 7.08 of the Pre-Petition Notes Indenture (as defined below) (the "**Pre-Petition Trustee**"), and the Company (the "**Pre-Petition Note Indenture**"), whose liens and security interests shall be junior to the DIP Liens and the Adequate Protection Liens (each as defined below);

(5) authorization for the Debtors to use Cash Collateral (as defined below) and all other collateral in which the Pre-Petition Secured Lenders and the Pre-Petition Trustee have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders and the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders, with respect to, inter alia, such use of their Cash Collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(6) authorization for the Debtors to immediately use proceeds of the Financing to, simultaneously with the initial draw under the Financing, refinance the Pre-Petition Debt in full including interest through the date of repayment at the non-default contract rate upon (a) the simultaneous release and termination of the Pre-Petition Secured Lenders' existing liens, claims and encumbrances and (b) the agreement of the Pre-Petition

4

Secured Lenders to release and terminate any remaining liens, claims and encumbrances in accordance with the Interim Order (as defined below);

(7) approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom;

(8) the granting of superpriority claims to the DIP Lenders payable from, and having recourse to, all pre-petition and post-petition property of the Debtors' estates and all proceeds thereof (including, subject only to and effective upon entry of the Final Order (as defined below), any Avoidance Proceeds (as defined below)), subject to the Carve Out (as defined below);

(9) subject only to and effective upon entry of a final order granting such relief and such other relief as provided in the Interim Order and in such final order (the "**Final Order**"), including the limitation of the Debtors' right to surcharge against collateral (other than with respect to the Pre-Petition Obligations (as defined below)) pursuant to section 506(c) of the Bankruptcy Code;

(10) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") (a) to forthwith obtain the following financing: (i) approximately $200,000,000 under the revolving facility (the "**Interim**

5

**Revolving Facility**") to backstop the outstanding letters of credit under

the Pre-Petition Credit Agreement as soon as practicable after receipt of a

properly completed backstopping letter of credit application and (ii) a term

loan borrowing (the "**Term Loan Facility**") in the amount of

$350,000,000 to, collectively, and with the proceeds made available under

the Interim Revolving Facility, (1) refinance the borrowings and other

extensions of credit under the Pre-Petition Credit Agreement in full

simultaneously with the initial borrowing under the Term Loan Facility

and (2) to provide operating cash for the Debtors, (b) authorizing the

Debtors' use of Cash Collateral and other collateral, and (c) granting the

adequate protection described herein; and

(11) that this Court schedule a final hearing (the "**Final Hearing**")

to be held within 30 days of the entry of the Interim Order to consider

entry of the Final Order.

Due and appropriate notice of the Motion, the relief requested therein and the

Interim Hearing having been served by the Debtors on the forty largest unsecured

creditors of each of the Debtors (on a consolidated basis), the Agent, the Pre-Petition

Agent and the Pre-Petition Trustee.

The Interim Hearing having been held by this Court on December 13, 2010, and

this Court having entered the Interim Order on December 13, 2010 that, among other

things, (a) authorized the Debtors to (i) enter into the DIP Credit Agreement (as defined

below) with the DIP Lenders pursuant to which the Borrower was authorized to obtain,

and the Guarantors were authorized to guarantee, up to $550,000,000 in loans and letters of credit from the DIP Lenders on a senior secured, superpriority claim basis (subject only to certain permitted liens and claims as set forth in the Interim Order); (ii) repay in full the Pre-Petition Debt; and (iii) use the Pre-Petition Secured Lenders' cash collateral (as defined in section 363(a) of the Bankruptcy Code); (b) granted to the Pre-Petition Secured Lenders as adequate protection for any diminution in the value of the Pre-Petition Secured Lenders' collateral, replacement liens and a priority claim under section 507(b) of the Bankruptcy Code in accordance with the terms and conditions contained therein; (c) granted to the Pre-Petition Secured Noteholders as adequate protection for any diminution in the value of the Pre-Petition Secured Noteholders' collateral, replacement liens in accordance with the terms and conditions contained therein; and (d) scheduled the Final Hearing to consider entry of this Final Order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents.

Due and appropriate notice of the Motion, the final relief requested therein and the Final Hearing, as well as the Interim Order, having been served by the Debtors on (a) the forty largest unsecured creditors of each of the Debtors; (b) counsel to the Agent; (c) counsel to the Pre-Petition Agent for itself and on behalf of the Pre-Petition Secured Lenders; (d) counsel to the Pre-Petition Trustee for itself and on behalf of the Pre-Petition Secured Noteholders; (e) the indenture trustees for each of the Debtors' unsecured outstanding bond issuances; (f) counsel to the Official Unsecured Creditors Committee (the "**Creditors' Committee**"); (g) the Office of the United States Trustee for the

Southern District of New York; (h) the Internal Revenue Service; (i) the Securities and

Exchange Commission; (j) parties to leases deemed Unencumbered Property (as defined

below), and (k) those parties who have requested notice pursuant to Bankruptcy Rule

2002 (collectively, the "**Notice Parties**").

The Debtors having filed a notice of filing of the proposed Final Order (the

"**Supplemental Notice**"), dated December 30, 2010.  Due and appropriate notice of the

Supplemental Notice and the relief requested therein having been served by the Debtors

on the Notice Parties.

The Court having considered all of the objections to the Motion.

Upon the record made by the Debtors at the Interim Hearing and the Final

Hearing and after due deliberation and consideration and sufficient cause appearing

therefor,

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Petition Date*.  On December 12, 2010 (the "**Petition Date**"), each of the

Debtors filed separate voluntary petitions under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the Southern District of New York commencing the

Cases.

2.      *Creditors' Committee*.  The Debtors have continued in the management

and operation of their businesses and property as debtors-in-possession pursuant to

sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been

appointed in these cases.  On December 21, 2010, the United States Trustee appointed the

Creditors' Committee in these Cases.

3.      *Disposition*.  The Motion is granted in accordance with the terms of this

Final Order.  Any objections to the Motion or the Supplemental Notice with respect to the

entry of this Final Order that have not been withdrawn, waived or settled, and all

reservations of rights included therein, are hereby denied and overruled.

4.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion

and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5.      *Notice*.  The notice given by the Debtors of the Motion, the relief

requested therein, the Interim Hearing, the Interim Order and the Final Hearing

constitutes appropriate, due and sufficient notice thereof and complies with Bankruptcy

Rule 4001(b) and (c) and the Local Bankruptcy Rules for the Southern District of New

York, and no further notice of the relief sought at the Final Hearing and the relief granted

herein is necessary or required.

6.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party

(but subject to the limitations thereon contained in paragraphs 19 and 24 below), the

Debtors, for themselves but not their estates, admit, stipulate and agree that:

(a)      (i) as of the Petition Date, the Borrowers and the Guarantors were

indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or

offset of any kind, in the aggregate principal amount of not less than $97,500,000 in

respect of term loans made, not less than $42,500,000 in respect of revolving credit loans

and not less than $196,153,000 in respect of letters of credit issued and outstanding, in

each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the

9

terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), charges and other obligations incurred in connection therewith as provided in the Existing Agreements (collectively, the "**Pre-Petition Debt**"), (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code) and (iii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law;

(b)    the liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Existing Agreements (including, without limitation, all security agreements, pledge agreements, mortgages (other than with respect to certain mortgages not recorded prior to the Petition Date), deeds of trust and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection with the Existing Agreements, (i) are valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property described in the Existing Agreements (excluding mortgages not recorded prior to the Petition Date) (the "**Pre-Petition Collateral**"); (ii) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (iii) secure, without limitation, the Debtors' indemnity obligations to the Pre-Petition Agent under the

10

Existing Agreements; and (iv) are subject and subordinate only to (A) the DIP Liens (as

defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject

and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements

to the extent such permitted liens are senior to or *pari passu* with the liens of the Pre-

Petition Agent on the Pre-Petition Collateral (and such liens are and shall be senior to the

Pre-Petition Trustee's liens on the Pre-Petition Collateral and the Junior Adequate

Protection Liens (as defined below));

        (c)     (i) as of the Petition Date, the Borrowers and the Guarantors were

indebted and liable to the Pre-Petition Trustee and the Pre-Petition Secured Noteholders,

without defense, counterclaim or offset of any kind, in the aggregate principal amount of

not less than $260,000,000 in respect of amounts advanced pursuant to and in accordance

with the Pre-Petition Note Indenture, plus interest thereon and fees, expenses (including

any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable

or reimbursable under the Existing Agreements and the documents executed in

connection with the Pre-Petition Notes Debt (as defined below)), charges and other

obligations incurred in connection therewith as provided in the Existing Agreements

(collectively, the "**Pre-Petition Notes Debt**"), (ii) the Pre-Petition Notes Debt constitutes

the legal, valid and binding obligation of the Debtors, enforceable in accordance with its

terms (other than in respect of the stay of enforcement arising from section 362 of the

Bankruptcy Code) and (iii) no portion of the Pre-Petition Notes Debt is subject to

avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy

Code or applicable nonbankruptcy law;

11

(d)      the liens and security interests granted to the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders, pursuant to and in connection with the Pre-Petition Note Indenture (including, without limitation, all security agreements, pledge agreements, mortgages (other than with respect to certain mortgages not recorded prior to the Petition Date), deeds of trust and other security documents executed by any of the Debtors in favor of and for the benefit of the Pre-Petition Trustee and/or the Pre-Petition Secured Noteholders) (i) are valid, binding, perfected, enforceable liens and security interests in the personal and real property described in the Existing Agreements and the documents executed in connection with the Pre-Petition Notes Debt; (ii) are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law; (iii) shall be subject and subordinate only to (A) the DIP Liens and the Adequate Protection Liens (each as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Pre-Petition Note Indenture to the extent such permitted liens are senior to or *pari passu* with the liens of the Agent on the Collateral;

(e)      a portion of the Debtors' borrowings from the DIP Lenders under the DIP Credit Agreement (as defined below), and in accordance with the terms of the Interim Order, has been used to refinance the Pre-Petition Debt owing to the Pre-Petition Secured Lenders and to provide back-to-back letters of credit in respect of the letters of credit currently outstanding under the Pre-Petition Credit Agreement, each in accordance with the terms and conditions set forth in the Interim Order; and

12

(f)      the Pre-Petition Secured Lenders have agreed that any and all pre-petition or post-petition liens and security interests (including, without limitation, any adequate protection replacement liens at any time granted to the Pre-Petition Secured Lenders by this Court) that the Pre-Petition Secured Lenders have or may have in the Pre-Petition Collateral or any other assets and properties of the Debtors and their estates shall (i) unless otherwise ordered by the Court and until the payment, termination or expiration of all letters of credit, indemnity obligations (to the extent that said indemnity obligations survive termination of the Pre-Petition Credit Agreement pursuant to the terms thereof) and other bank products and cash management services provided by any of the Pre-Petition Secured Lenders (such payment, termination or expiration, the "**Pre-Petition Termination**") and the expiration of the Challenge Period (as defined below) with no challenge having been brought, or if such a challenge is brought, until the entry of a final judgment confirming the payment to the Pre-Petition Agent and the Pre-Petition Secured Lenders of all amounts owed by the Debtors under the Existing Agreements and this Order, or such other treatment of the Pre-Petition Debt required by the Court in connection with any challenge that is brought, continue to secure only any unpaid Pre-Petition Debt (including all letters of credit, indemnity obligations (to the extent that said indemnity obligations survive termination of the Pre-Petition Credit Agreement pursuant to the terms thereof) and other bank products and cash management services provided by any of the Pre-Petition Secured Lenders), and also including, without limitation, if a challenge is brought and such payment is not confirmed, including any Pre-Petition Debt subsequently reinstated after the repayment thereof because such payment (or any portion

13

thereof) is required to be returned or repaid to the Debtors or the DIP Lenders and the liens securing the Pre-Petition Debt shall have not been avoided) and (ii) be junior and subordinate in all respects to the DIP Lenders' liens on and security interests in the Collateral (including, without limitation, the DIP Liens (as defined below)) granted under the Interim Order and this Final Order and the DIP Documents (such junior liens and security interests of the Pre-Petition Secured Lenders are hereinafter referred to as the "**Contingent Adequate Protection Liens**"), and any such reinstated Pre-Petition Debt described in clause (i) of this sentence is hereinafter referred to as the "**Contingent Pre-Petition Debt**").

7.      *Findings Regarding the Financing.*

(a)      Good cause has been shown for the entry of this Final Order.

(b)      The Debtors need to obtain the full amount of the Financing and use Cash Collateral (as defined below) and all other collateral in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c)      The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable

14

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Debtors are also unable to obtain secured credit

allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code (i)

without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out

as provided for herein, the DIP Liens and the Superpriority Claims (as defined below)

under the terms and conditions set forth in the Interim Order and this Final Order and in

the DIP Documents and (ii) repaying, in full, the outstanding principal balance of the

loans under the Pre-Petition Credit Agreement, together with all accrued and unpaid

interest, relating to the Pre-Petition Debt as occurred upon the entry of the Interim Order,

such repayment being a requirement by the Agent for the Financing.

(d)     The terms of the Financing and the use of Cash Collateral are fair

and reasonable, reflect the Debtors' exercise of prudent business judgment consistent

with their fiduciary duties and constitute reasonably equivalent value and fair

consideration.

(e)     The Financing has been negotiated in good faith and at arm's

length among the Debtors, the Agent and the DIP Lenders, and all of the Debtors'

obligations and indebtedness arising under, in respect of or in connection with the

Financing and the DIP Documents and the rights granted in the Interim Order, including

without limitation, (i) all loans made to, and all letters of credit issued for the account of,

the Debtors pursuant to the Amended and Restated Superpriority Debtor-in-Possession

Credit Agreement, dated December 21, 2010 (the "**DIP Credit Agreement**") and (ii) any

Obligations (as defined in the DIP Credit Agreement), including credit extended in

respect of overdrafts and related liabilities and other depository, treasury, and cash

management services and other clearing services provided by JPMCB, any DIP Lender or

any of their respective affiliates and any hedging obligations of the Debtors permitted

under the DIP Credit Agreement in each case owing to JPMCB, any DIP Lender or any

of their respective banking affiliates (all of the foregoing in clauses (i) and (ii)

collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the

Agent and the DIP Lenders and their affiliates in good faith, as that term is used in

section 364(e) of the Bankruptcy Code and in express reliance upon the protections

offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full

protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or

any provision hereof is vacated, reversed or modified, on appeal or otherwise.

      (f)      The Debtors have requested entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief set forth in this

Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation

of the Financing and the use of Cash Collateral in accordance with this Order and the DIP

Documents is therefore in the best interest of the Debtors' estates.

      8.      *Authorization of the Financing, the DIP Documents and the Refinancing
of the Pre-Petition Debt.*

      (a)      Each of the Borrowers were, by the Interim Order, and hereby are,

authorized to borrow money and obtain letters of credit pursuant to the DIP Credit

Agreement, and the Guarantors were, by the Interim Order, and are hereby authorized to

guaranty such borrowings and letters of credits and the Borrowers' joint and several

obligations with respect to such borrowings and letters of credit up to an aggregate

principal or face amount of $800,000,000 (which amount is inclusive of the Term Loan

Facility and the Interim Revolving Facility authorized by the Interim Order), plus

interest, fees and other expenses and amounts provided for in the DIP Documents), in

accordance with the terms of this Final Order and the DIP Documents, which shall be

used for all purposes permitted under the DIP Documents, including, without limitation,

to provide working capital for the Borrowers and the Guarantors, for other general

corporate purposes and to pay interest, fees and expenses in accordance with this Final

Order and the DIP Documents.  The payment of the Pre-Petition Debt pursuant to the

Interim Order is hereby ratified and confirmed (subject to the provisions of Paragraph 20

hereof).  In addition to such loans and obligations, the Debtors are authorized to incur

overdrafts and related liabilities arising from treasury, depository and cash management

services including any automated clearing house fund transfers provided to or for the

benefit of the Debtors by JPMCB, any DIP Lender or any of their respective affiliates;

*provided, however*, that nothing herein shall require JPMCB or any other party to incur

overdrafts or to provide any such services or functions to the Debtors.

(b)    In furtherance of the foregoing and without further approval of this

Court, each Debtor was by the Interim Order and is hereby authorized and directed to

perform all acts, to make, execute and deliver all instruments and documents (including,

without limitation, the execution or recordation of security agreements, mortgages and

financing statements), and to pay all fees, that may be reasonably required or necessary

17

for the Debtors' performance of their obligations under the Financing, including, without

limitation:

(i)        the execution, delivery and performance of the Loan

Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto,

including, without limitation, the DIP Credit Agreement, the Security Documents (as

defined in the DIP Credit Agreement), all related documents and any mortgages

contemplated thereby (collectively, and together with the letter agreements referred to in

clause (iii) below, the "**DIP Documents**"),

(ii)       the execution, delivery and performance of one or more

amendments to the DIP Credit Agreement for, among other things, the purpose of adding

additional financial institutions as DIP Lenders and reallocating the commitments for the

Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent

and the DIP Lenders may agree (it being understood that no further approval of the Court

shall be required for amendments to the DIP Credit Agreement (and any fees paid in

connection therewith) that do not increase the aggregate commitments thereunder).

Notwithstanding any other provision hereof, without further approval of this Court,

amendments to the DIP Documents may be made at any time prior to the earlier of (A)

the date that JPMCB and its affiliates shall (i) no longer hold Term Loans (as defined in

the DIP Credit Agreement) and (ii) hold Revolving Commitments or Revolving Loans (as

each term is defined in the DIP Credit Agreement) of not more than $100,000,000

(collectively, a "**Successful Syndication**") and (B) the date that is 60 days following the

date of entry of the Interim Order, if and to the extent the Agent and the Lead Arranger

18

reasonably determine that any such change is necessary to ensure a Successful

Syndication or as otherwise contemplated by any separate letter agreement entered into in

connection with the Financing,

(iii)    the non-refundable payment to the Agent, the Lead

Arranger or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit

Agreement (and in the separate letter agreements between them in connection with the

Financing) and reasonable costs and expenses as may be due from time to time,

including, without limitation, fees and expenses of the professionals retained as provided

for in the DIP Documents without the necessity of filing retention motions or fee

applications, and

(iv)    the performance of all other acts required under or in

connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP

Documents shall constitute valid and binding obligations of the Debtors, enforceable

against each Debtor party thereto in accordance with the terms of the DIP Documents and

this Order.  No obligation, payment, transfer or grant of security under the DIP

Documents or this Order shall be stayed, restrained, voidable, or recoverable under the

Bankruptcy Code or under any applicable law (including without limitation, under

section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff,

recoupment or counterclaim; *provided*, *however*, that, in the event that there is a timely

successful challenge, pursuant and subject to the limitations contained in paragraph 19

hereof, to the validity, enforceability, extent, perfection or priority of the Pre-Petition

19

Debt that the Court shall have the power to unwind or otherwise modify, after notice and

hearing, the repayment of the Pre-Petition Debt or a portion thereof (which might include

the disgorgement or re-allocation of interest, fees, principal or other incremental

consideration paid in respect of the Pre-Petition Debt or the avoidance of liens and/or

guarantees with respect to one or more of the Debtors), as the Court shall determine.

9.      *Superpriority Claims.*

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the

DIP Obligations shall constitute allowed claims against the Debtors with priority over

any and all administrative expenses, diminution claims (including all Adequate

Protection Obligations and Junior Adequate Protection Obligations (as defined below))

and all other claims against the Debtors, now existing or hereafter arising, of any kind

whatsoever, including, without limitation, all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331,

503(b), 506(c) (upon entry of the Final Order, to the extent therein approved), 507(a),

507(b), 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or

not such expenses or claims may become secured by a judgment lien or other non-

consensual lien, levy or attachment, which allowed claims shall be payable from and

have recourse to all pre- and post-petition property of the Debtors and all proceeds

thereof, subject only to the Carve Out to the extent specifically provided for herein.

(b)      For purposes hereof, the "**Carve Out**" means ( ) all fees required

to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States

Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of

title 31 of the United States Code, ( ) all reasonable fees and expenses incurred by a

trustee under section 726(b) of the Bankruptcy Code not to exceed $100,000 and ( ) at

any time after the first business day after the occurrence and during the continuance of a

C/C Event of Default (as defined below) and delivery of notice thereof to (A) the United

States Trustee for the Southern District of New York, (B) Kirkland & Ellis LLP, 601

Lexington Avenue, New York, New York 10022 (Attention: Leonard Klingbaum, Esq.

and Ray C. Schrock, Esq.), (C) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005 (Attention: Dennis F. Dunne, Esq. and

Abhilash M. Raval, Esq.) and (D) Dechert LLP, 1095 Avenue of the Americas, New

York, New York 10036 (Attention: Glenn E. Siegel, Esq. and Craig P. Druehl, Esq.) (the

"**Carve Out Notice**"), to the extent allowed at any time, whether before or after delivery

of a Carve Out Notice, whether by interim order, procedural order or otherwise, the

payment of accrued and unpaid professional fees, costs and expenses incurred by persons

or firms retained by the Debtors and the Creditors' Committee (but excluding fees and

expenses of third party professionals employed by such Creditors' Committee's

members) and allowed by this Court (collectively, the "**Professional Fees**"), in an

aggregate amount not exceeding $15,000,000 (the "**Carve Out Cap**"), which amount

may be used subject to the terms of this Order (plus all unpaid Professional Fees allowed

by this Court at any time that were incurred on or prior to the day immediately following

the business day after delivery of the Carve Out Notice).  Immediately upon delivery of a

Carve Out Notice, the Debtors shall be required to transfer from their concentration

21

account to a segregated account (the "**Carve Out Account**") not subject to the control of

the Agent an amount equal to the Carve Out Cap; *provided* that cash or other amounts on

deposit in any account of the Agent into which the Borrowers deposit cash for the benefit

of the Agent's L/C Exposure (as defined in the DIP Credit Agreement), shall not be

subject to the Carve Out.  The dollar limitation in this clause 9(b)(iii) on fees and

expenses shall neither be reduced nor increased by the amount of any compensation or

reimbursement of expenses incurred, awarded or paid prior to the delivery of a Carve Out

Notice or by any fees, expenses, indemnities or other amounts paid to the Agent or any

DIP Lender or such party's respective attorneys and agents under the DIP Credit

Agreement or otherwise.  The proceeds on deposit in the Carve Out Account shall be

available only to satisfy obligations benefitting from the Carve Out, and the DIP Lenders

(1) shall not sweep or foreclose on cash of the Debtors necessary to fund the Carve Out

Account and (2) shall have a security interest in any residual interest in the Carve Out

Account available following satisfaction in full of all obligations benefitting from the

Carve Out.  Nothing herein shall be construed to impair the ability of any party to object

to any of the fees, expenses, reimbursement or compensation described in clauses (i), (ii)

and (iii) above.  Notwithstanding anything to the contrary in this Final Order, all liens

and claims granted pursuant to this Final Order shall be subject to the Carve Out as

provided for in paragraph 9(b) (other than the Bank Products Cash Collateral and the

Escrow Amount, except to the extent such cash collateral is returned to, or becomes

required to be returned to, the Debtors, in which case such exception shall not apply).

     10.    *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the Agent of, or over, any Collateral (as defined below), the following security interests and liens were by the Interim Order and hereby are granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"),[2] subject, only in the event of the occurrence and during the continuance of a C/C Event of Default (as defined below), to the payment of the Carve Out (all such liens and security interests granted to the Agent, for its benefit and for the benefit of the DIP Lenders and the Credit Parties (as defined in the DIP Credit Agreement) pursuant to this Order and the DIP Documents, the "**DIP Liens**"):

(a)    First Lien on Cash Balances and Unencumbered Property. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date (or as a result of the refinancing of the Pre-Petition Debt) is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including, without limitation, all cash and

---

[2] Notwithstanding anything contained herein to the contrary, the Borrower and the Guarantors shall not be required to pledge to the Agent in excess of 65% of the voting capital stock of its first tier foreign subsidiaries (if, in the reasonable judgment of the Borrower, a pledge of a greater percentage could result in material adverse tax consequences to the Borrower).

cash collateral of the Debtors (whether maintained with the Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds (*provided*, *however*, that, solely with respect to the nonresidential real property leaseholds and/or subleaseholds listed on Schedule A hereto, Unencumbered Property shall not include the Debtors' interests in such leaseholds and subleaseholds, but shall include any proceeds thereof), real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing.  The terms "Unencumbered Property" and "Collateral" shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**").

(b)    Liens Priming Pre-Petition Secured Lenders' and Pre-Petition Trustee's Liens.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties,

24

patents, copyrights, trademarks, trade names, other intellectual property, capital stock of

subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter

acquired, that is subject to the existing liens presently held by the Pre-Petition Secured

Lenders and the Pre-Petition Trustee.  Such security interests and liens shall be senior in

all respects to the interests in such property of the Pre-Petition Secured Lenders and the

Pre-Petition Trustee arising from current and future liens of the Pre-Petition Secured

Lenders and the Pre-Petition Trustee (including, without limitation, adequate protection

liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable

interests of other parties arising out of liens, if any, on such property existing

immediately prior to the Petition Date (for the avoidance of doubt, this does not relate to

any liens that arise after, or were not perfected prior to, the Petition Date, or to liens that

arise after the Petition Date but purport to relate back to periods prior to the Petition

Date), or to any valid, perfected and unavoidable interests in such property arising out of

liens to which the liens of the Pre-Petition Secured Lenders and the Pre-Petition Trustee

become subject subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code.

    (c) <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3)

of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected

security interest in and lien upon all pre- and post-petition property of the Debtors (other

than the property described in clauses (a) or (b) of this paragraph 10, as to which the liens

and security interests in favor of the Agent will be as described in such clauses), whether

now existing or hereafter acquired, that is subject to valid, perfected and unavoidable

25

liens in existence immediately prior to the Petition Date (for the avoidance of doubt, this does not relate to any liens that arise after, or were not perfected prior to, the Petition Date, or to liens that arise after the Petition Date but purport to relate back to periods prior to the Petition Date) or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code (in each case, other than the Adequate Protection Liens and the Junior Adequate Protection Liens (each as defined below)), which security interests and liens in favor of the Agent are junior to such valid, perfected and unavoidable liens.

(d)     Liens Senior to Certain Other Liens.  The DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

11.    *Protection of DIP Lenders' Rights.*

(a)     Other than with respect to the Bank Products Cash Collateral (as defined below) and the Escrow Amount (as defined below), so long as there are any borrowings or letters of credit or other amounts (other than contingent indemnity obligations as to which no claim has been asserted when all other amounts have been paid and no letters of credit are outstanding) outstanding, or the DIP Lenders have any

26

Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement,

the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Trustee and the

Pre-Petition Secured Noteholders shall (i) have no right to and take no action to foreclose

upon or recover in connection with the liens granted thereto pursuant to the Existing

Agreements, the Pre-Petition Note Indenture, the ICA (as defined below), the Interim

Order or this Final Order, or otherwise seek or exercise any enforcement rights or

remedies against any Collateral or in connection with the Contingent Pre-Petition Debt,

the Adequate Protection Liens or the Junior Adequate Protection Liens, including,

without limitation, in respect of the occurrence or continuance of any Event of Default

(as defined in the Pre-Petition Credit Agreement and the Pre-Petition Note Indenture), (ii)

be deemed to have consented to any release of Collateral authorized under the DIP

Documents, (iii) not file any further financing statements, trademark filings, copyright

filings, mortgages, notices of lien or similar instruments, or otherwise take any action to

perfect their security interests in the Collateral unless, solely as to this clause (iii), the

DIP Lenders file financing statements or other documents to perfect the liens granted

pursuant to the Interim Order or this Final Order, or as may be required by applicable

state law to continue the perfection of valid and unavoidable liens or security interests as

of the date of filing and (iv) deliver or cause to be delivered, at the Debtors' costs and

expense (for which the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-

Petition Trustee and the Pre-Petition Secured Noteholders shall be reimbursed upon

submission to the Debtors of invoices or billing statements), any termination statements,

releases and/or assignments (to the extent provided for herein) in favor of the DIP

Lenders or other documents necessary to effectuate and/or evidence the release,

termination and/or assignment of the Adequate Protection Liens and the Junior Adequate

Protection Liens on any portion of the Collateral subject to any sale or disposition

approved or arranged for by the Agent.

(b)     The automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Agent and the DIP

Lenders to exercise, (i) upon the occurrence of an Event of Default (as defined in the DIP

Credit Agreement) and seven days' prior written notice (which shall run concurrently

with any notice provided under the DIP Documents) to the Debtors (with a concurrent

copy to counsel to the Creditors' Committee, counsel to the Pre-Petition Trustee and the

U.S. Trustee), all rights and remedies under the DIP Documents other than those rights

and remedies against the Collateral as provided in clause (ii) below, and (ii) upon the

occurrence and during the continuance of such an Event of Default and seven days' prior

written notice (which shall run concurrently with any notice provided under the DIP

Documents) to the Debtors (with a concurrent copy to counsel to the Creditors'

Committee, counsel to the Pre-Petition Trustee, the U.S. Trustee and the applicable

landlord), all rights and remedies against the Collateral provided for in the DIP

Documents (including, without limitation, the right to setoff monies of the Debtors in

accounts maintained with the Agent or any DIP Lender) and this Order.

(c)     In any hearing regarding any exercise of rights or remedies, the

only issue that may be raised by any party in opposition thereto shall be whether, in fact,

an Event of Default has occurred and is continuing, and no party shall be entitled to seek

28

relief, including, without limitation, under section 105 of the Bankruptcy Code, to the

extent such relief would in any way impair or restrict the rights and remedies of the

Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall

the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the

Pre-Petition Trustee and the Pre-Petition Secured Noteholders be subject to the equitable

doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

(d)    The automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Pre-Petition Agent,

the Pre-Petition Secured Lenders, the Pre-Petition Trustee and the Pre-Petition Secured

Noteholders to receive adequate protection payments and other payments pursuant to the

Interim Order and this Final Order as and when the same become due, in each case

without further order of this Court.

12.    *Limitation on Charging Expenses Against Collateral*.  Except to the extent

of the Carve Out, no expenses of administration of the Cases or any future proceeding

that may result therefrom, including liquidation in bankruptcy or other proceedings under

the Bankruptcy Code, shall be charged against or recovered from the Collateral (other

than with respect to the Pre-Petition Obligations (as defined below)) pursuant to section

506(c) of the Bankruptcy Code or any similar principle of law, without the prior written

consent of the Agent, and no such consent shall be implied from any other action,

inaction, or acquiescence by the Agent or the DIP Lenders.

13.    *The Cash Collateral*.  To the extent any funds were on deposit with any

Pre-Petition Secured Lender, the Pre-Petition Trustee or any Pre-Petition Secured

29

Noteholder as of the Petition Date, including, without limitation, all funds deposited in, or credited to, an account of any Debtor with any Pre-Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy petitions (the "**Petition Time**") (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), and such funds (the "**Deposited Funds**") are subject to rights of setoff, by virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders and the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders, pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured Lenders are obligated, to the extent provided in the Existing Agreements, to share the benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to such Existing Agreements and the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders.  Any proceeds of the Pre-Petition Collateral (including the Deposited Funds or any other funds on deposit at the Pre-Petition Secured Lenders or at any other institution as of the Petition Date) are cash collateral of the Pre-Petition Secured Lenders and the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders, within the meaning of section 363(a) of the Bankruptcy Code.  The Deposited Funds (other than the Bank Products Cash Collateral (as defined below) and the Escrow Amount (as defined below), except to the extent such cash collateral is returned to, or becomes required to be returned to, the Debtors, in which case such exception shall not apply) and all such proceeds of the Pre-Petition Collateral are referred to herein as "**Cash Collateral**."

30

14.     *Use of Cash Collateral*.  The Debtors are hereby authorized, subject to the

terms and conditions of the DIP Documents and this Order, to use all Cash Collateral of

the Pre-Petition Secured Lenders (other than (i) the Bank Products Cash Collateral and

(ii) the Escrow Amount held by the Pre-Petition Agent as adequate protection pursuant to

the Interim Order and this Final Order, except to the extent that such Bank Products Cash

Collateral or Escrow Amount is returned to, or becomes required to be returned to, the

Debtors, in which case such exception shall not apply), the Pre-Petition Trustee and the

Pre-Petition Secured Noteholders, and the Pre-Petition Secured Lenders, the Pre-Petition

Trustee and the Pre-Petition Secured Noteholders are directed promptly to turn over to

the Debtors all Cash Collateral received or held by them; *provided* that the Pre-Petition

Secured Lenders, the Pre-Petition Trustee and the Pre-Petition Secured Noteholders are

granted adequate protection for the Cash Collateral so used or turned over as provided

herein.  The Debtors' right to use Cash Collateral shall terminate automatically on the

Termination Date (as defined in the DIP Credit Agreement) upon the giving of five days'

prior written notice (which shall run concurrently with any notice provided under the DIP

Documents) to the Debtors (with a concurrent copy to counsel to the Creditors'

Committee, counsel to the Pre-Petition Trustee and the U.S. Trustee).

15.     *Pre-Petition Secured Lenders' and Pre-Petition Trustee's Adequate

Protection*.  The Pre-Petition Secured Lenders are entitled, until the indefeasible

repayment of the Pre-Petition Debt pursuant to sections 361, 363(e) and 364(d)(1) of the

Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral,

including the Cash Collateral, for and equal in amount to the aggregate diminution in the

31

value of the Pre-Petition Secured Lenders' interest in the Pre-Petition Collateral,

including, without limitation, any such diminution resulting from the sale, lease or use by

the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition

Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-

Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents, the

Interim Order and this Final Order, and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code, in each case to the extent required by the

Bankruptcy Code (collectively, the "**Adequate Protection Obligations**," which term

shall also include any amounts repaid by the Pre-Petition Secured Lenders pursuant to an

order entered by the Court in response to a challenge, which order disallows the Pre-

Petition Secured Lenders' claims, in whole or in part, to the extent that the Pre-Petition

Secured Lenders retain a lien or a secured right to payment in accordance with such

order).  For the avoidance of doubt, nothing herein shall be read to expand what is Pre-

Petition Collateral, or to narrow or alter the scope or effectiveness of section 552 of the

Bankruptcy Code (including the "equities of the case" exception contained therein) with

respect to which assets of the Debtors constitute Pre-Petition Collateral.  As adequate

protection for such Adequate Protection Obligations, the Pre-Petition Agent and the Pre-

Petition Secured Lenders are hereby granted the following as set forth in Paragraphs

15(a)-(d) and 15(f) and the Pre-Petition Trustee is hereby granted the following as set

forth in Paragraphs 15(e) and (f):

        (a)     <u>Adequate Protection Liens</u>.  The Pre-Petition Agent (for itself and

for the benefit of the Pre-Petition Secured Lenders) was by the Interim Order and hereby

is granted (effective and perfected upon the date of entry of the Interim Order and

without the necessity of the execution by the Debtors of mortgages, security agreements,

pledge agreements, financing statements or other agreements), pursuant to sections 361,

363(e) and 364(d)(1) of the Bankruptcy Code, in the amount of such diminution of the

Pre-Petition Collateral, (i) a security interest in and lien upon all the Collateral (other than

Avoidance Proceeds), which security interest is subject and subordinate only to (1) the

DIP Liens and any liens on the Collateral to which such liens so granted to the Agent are

junior and (2) the Carve Out (such liens securing the Adequate Protection Obligations,

together with the Contingent Adequate Protection Liens, the "**Adequate Protection**

**Liens**") and (ii) the Contingent Adequate Protection Liens to secure any Contingent Pre-

Petition Debt.  Without limiting the generality of the foregoing, (A) the Adequate

Protection Liens granted to the Pre-Petition Secured Lenders hereunder (including the

Contingent Adequate Protection Liens in respect of the Contingent Pre-Petition Debt)

shall be senior to all Junior Adequate Protection Liens and be junior and subordinate in

all respects to the DIP Lenders' liens and security interests (including, without limitation,

the DIP Liens) upon and in the Collateral and the Carve Out; (B) the Contingent Pre-

Petition Debt shall be junior and subordinate in right of payment to all DIP Obligations

and the Carve Out; (C) until such time as all of the DIP Obligations are indefeasibly paid

in full in cash in accordance with the DIP Documents and this Final Order, the Pre-

Petition Secured Lenders shall have no right to seek or exercise any enforcement rights or

remedies in connection with the Contingent Pre-Petition Debt or the Adequate Protection

Liens, including, without limitation, in respect of the occurrence or continuance of any

33

Event of Default (as defined in the Pre-Petition Credit Agreement); (D) the Pre-Petition

Agent and the Pre-Petition Secured Lenders have or shall be deemed to have consented to

the Financing (which Financing shall, in part, constitute a DIP Financing as defined in the

ICA (as defined below)) in accordance with the terms of the Intercreditor Agreement,

dated as of August 4, 2009 by and between Bank of America, N.A. as collateral agent

under the Pre-Petition Credit Agreement and Wilmington Trust Company as note

collateral agent under the Pre-Petition Note Indenture (the "**ICA**"), attached to the

Motion as **Exhibit C**; (E) the Pre-Petition Secured Lenders shall be deemed to have

consented to any sale or disposition of Collateral approved, arranged for or by the Agent,

and shall terminate and release upon any such sale or disposition all of its liens on and

security interests in such Collateral (where the Agent also releases any DIP Liens as

necessary); (F) the Pre-Petition Secured Lenders shall deliver or cause to be delivered, at

the Debtors' costs and expense (for which the Pre-Petition Secured Lenders shall be

reimbursed upon submission to the Debtors of invoices or billing statements), any

termination statements, releases or other documents necessary to effectuate and/or

evidence the release and termination of the Pre-Petition Secured Lenders' liens on or

security interests in any portion of the Collateral subject to any sale or disposition

approved or arranged for by the Agent (where the Agent also releases any DIP Liens as

necessary); and (G) upon the Pre-Petition Termination and the expiration of the

Challenge Period (as defined below) with no challenge having been brought, or if such a

challenge is brought, until the entry of a final judgment confirming the payment to the

Pre-Petition Agent and the Pre-Petition Secured Lenders of all amounts owed by the

34

Debtors under the Existing Agreements and this Order, (including the payment, termination or expiration of all letters of credit, indemnity obligations (to the extent that said indemnity obligations survive termination of the Pre-Petition Credit Agreement pursuant to the terms thereof) and other bank products and cash management services provided by any of the Pre-Petition Secured Lenders) or other treatment required by the Court thereof, the Adequate Protection Liens shall terminate and be released (automatically and without further action of the parties), and the Pre-Petition Secured Lenders shall execute and deliver such agreements to evidence and effectuate such termination and release as Agent may request and Agent shall be authorized to file on behalf of the Pre-Petition Secured Lenders such UCC termination statements or such other filings as may be applicable to the extent such authorization is required under the Uniform Commercial Code of the applicable jurisdiction.

(b)    Release of Existing Liens on the Pre-Petition Collateral.  The existing liens of the Pre-Petition Agent and the Pre-Petition Secured Lenders on the Pre-Petition Collateral shall be released and terminated (which may be done by the Debtors without any further acts to be taken by the holders of any liens on the Pre-Petition Collateral) upon the Pre-Petition Termination and the expiration of the Challenge Period (as defined below) with no challenge having been brought, or if such a challenge is brought, until the entry of a final judgment confirming the payment to the Pre-Petition Agent and the Pre-Petition Secured Lenders of all amounts owed by the Debtors under the Existing Agreements and this Order (and upon the Pre-Petition Termination) or other treatment required by the Court thereof, subject to paragraph 19 hereof.

35

(c)     Section 507(b) Claim.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders were by the Interim Order and hereby are granted, subject to the Carve

Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code (a

"**507(b) Claim**"), immediately junior to the claims under section 364(c)(1) of the

Bankruptcy Code held by the Agent and the DIP Lenders, to the extent of any diminution

in value of the Pre-Petition Collateral; *provided, however*, that the Pre-Petition Agent and

the Pre-Petition Secured Lenders shall not receive or retain any payments, property or

other amounts or consideration in respect of the superpriority claims under section 507(b)

of the Bankruptcy Code granted hereunder or under the Existing Agreements unless and

until the DIP Obligations have indefeasibly been paid in cash in full.

(d)     Interest, Fees and Expenses.  To the extent actually incurred, and

subject to paragraph 19 hereof, the Pre-Petition Agent shall receive from the Debtors ( )

immediate cash payment of all accrued and unpaid interest on the Pre-Petition Debt and

letter of credit fees at the non-default rates provided for in the Existing Agreements, and

all other accrued and unpaid fees and disbursements (including, but not limited to, fees

owed to the Pre-Petition Agent) owing to the Pre-Petition Agent under the Existing

Agreements and incurred prior to the Petition Date; ( ) current cash payments of all fees

and expenses payable to the Pre-Petition Agent under the Existing Agreements limited to

the reasonable fees and disbursements of one counsel to the Pre-Petition Agent promptly

upon receipt of invoices therefor (it being agreed that the Pre-Petition Agent may offset

such fees against the Bank Products Cash Collateral (as defined below) and the Escrow

Amount (as defined below), except to the extent that such cash collateral is returned to, or

36

becomes required to be returned to, the Debtors, in which case this exception shall not

apply; ( ) on the first business day of each month, all accrued but unpaid interest (if any)

on the Pre-Petition Debt and letters of credit fees and other fees at the non-default

contract rate applicable on the Petition Date (including LIBOR pricing options available

in accordance with the Existing Agreements) under the Existing Agreements; *provided*

that, without prejudice to the rights of any other party to contest such assertion, the Pre-

Petition Secured Lenders reserve their rights to assert claims for the payment of

additional interest calculated at any other applicable rate of interest (including, without

limitation, default rates), or on any other basis, provided for in the Existing Agreements,

and for the payment of any other amounts provided for in the Existing Agreements; (iv)

the deposit, prior to the Petition Date, with the Pre-Petition Agent of the sum of

$2,040,000 (the "**Bank Products Cash Collateral**") to secure all obligations due to the

Pre-Petition Agent or its affiliates on account of bank products and cash management

services furnished to the Debtors, which obligations the Debtors are authorized to

continue to incur in accordance with agreements with such Pre-Petition Secured Lenders;

(v) the payment of all accrued but unpaid fees, reimbursements and other charges on

account of bank products and cash management services due to any Pre-Petition Secured

Lender on the first business day of each month (or when due if the underlying agreements

evidencing such bank products and cash management services provide for other times for

payment) and if the Debtors fail to make such payments when due, upon five business

days' notice to the Debtors and thereafter with no further order of this Court required, the

Pre-Petition Agent may apply such Bank Products Cash Collateral in reduction of the

amounts owed and may terminate the provision of such bank products or cash

management services; and (vi) the deposit, prior to the Petition Date, with the Pre-

Petition Agent pursuant to the Interim Order and this Final Order, of $5,000,000 (the

"**Escrow Amount**") of which $1,100,000 (the balance having been distributed to the

Debtors and counsel for certain lenders) continues to be held in escrow by the Pre-

Petition Agent (which payments shall not be subject to the DIP Liens, the Adequate

Protection Liens and the Junior Adequate Protection Liens) and used solely to reimburse

the Pre-Petition Agent, upon two business days' notice to the Debtors and thereafter with

no further order of this Court required, to the extent required by the Debtors to be paid by

them to the Pre-Petition Agent and the Pre-Petition Secured Lenders in accordance with

the terms of the Existing Agreements or by further order of the Court (any such payment,

a "**Payment Obligation**") (with any unused amounts subject to the liens hereunder in

their order of priority) and without regard to the provisions of paragraph 11(a) or

paragraph 15(a) hereof.  To the extent the Escrow Amount is not sufficient to cover the

Payment Obligations, or the Bank Products Cash Collateral is insufficient to pay the

obligations for bank products and cash management services, the Debtors shall remain

liable for the Payment Obligations and such bank products and cash management

services, which are and shall remain junior to the DIP Liens.  Notwithstanding any

provision herein or in the Interim Order to the contrary, the DIP Liens and the Junior

Adequate Protection Liens shall not extend to the Bank Products Cash Collateral or the

Escrow Amount (which Bank Products Cash Collateral or Escrow Amount (1) shall not

be subject to the Carve Out and (2) shall be retained even after the Challenge Period

38

expires for so long as such services are being provided and, with respect to any

contingent indemnity claims, until the effective date of a plan of reorganization), except

to the extent that such cash collateral is returned to, or becomes required to be returned

to, the Debtors, in which case this exception shall not apply.

   (e)  *Pre-Petition Secured Noteholders' Adequate Protection.*

    (i)  The Pre-Petition Trustee, for the benefit of itself and the

Pre-Petition Secured Noteholders, is entitled to and is hereby granted (effective and

perfected upon the date of entry of the Interim Order and without the necessity of the

execution by the Debtors of mortgages, security agreements, pledge agreements,

financing statements or other agreements), pursuant to sections 361, 363(e) and 364(d)(1)

of the Bankruptcy Code, adequate protection of their interest in the Pre-Petition

Collateral, for and equal in amount to the aggregate diminution in value of the Pre-

Petition Trustee's interests in the Pre-Petition Collateral, including, without limitation,

any such diminution resulting from the sale, lease or use by the Debtors (or other decline

in value) of the Pre-Petition Collateral, the priming of the Pre-Petition Trustee's security

interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders

pursuant to the DIP Documents and this Final Order, the grant of adequate protection to

the Pre-Petition Secured Lenders, the imposition of the Carve Out and the imposition of

the automatic stay pursuant to section 362 of the Bankruptcy Code (collectively, the

"Junior Adequate Protection Obligations").  The Pre-Petition Trustee, for the benefit of

itself and the Pre-Petition Secured Noteholders, is hereby granted valid, binding,

continuing, enforceable, fully-perfected junior security interests in and liens upon all pre-

and post-petition property of the Debtors that is subject to the DIP Liens and the

Adequate Protection Liens (collectively, the "Junior Adequate Protection Liens") in the

amount of such diminution.  In addition, the Pre-Petition Trustee, for the benefit of itself

and the Pre-Petition Secured Noteholders, is hereby granted, subject to the Carve Out, a

507(b) Claim, to the extent of any diminution in value of the Pre-Petition Collateral,

immediately junior to the 507(b) Claim granted to the Pre-Petition Agent and the Pre-

Petition Secured Lenders; provided, however, that the Pre-Petition Trustee and the Pre-

Petition Secured Noteholders shall not receive or retain any payments, property or other

amounts or consideration in respect of the superpriority claims under section 507(b) of

the Bankruptcy Code granted hereunder or under the Pre-Petition Note Indenture unless

and until the DIP Obligations have indefeasibly been paid in cash in full.  Without

limiting the generality of the foregoing, (i) the Junior Adequate Protection Liens granted

to the Pre-Petition Trustee hereunder shall be junior and subordinate in all respects to the

DIP Lenders' liens and security interests (including, without limitation, the DIP Liens)

upon and in the Collateral, the Adequate Protection Liens and the Carve Out; (ii) the

Junior Adequate Protection Liens shall be junior and subordinate in right of payment to

the Pre-Petition Debt, all DIP Obligations and Adequate Protection Obligations and the

Carve Out; (iii) the 507(b) Claim granted to the Pre-Petition Trustee shall be junior to the

507(b) Claim granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders and

the Carve Out, (iv) until such time as all of the Pre-Petition Debt, the DIP Obligations

and the Adequate Protection Obligations are indefeasibly paid in full in cash in

accordance with the DIP Documents and this Final Order, the Pre-Petition Trustee and

40

the Pre-Petition Secured Noteholders shall have no right to seek or exercise any

enforcement rights or remedies in connection with the Junior Adequate Protection Liens,

including, without limitation, in respect of the occurrence or continuance of any Event of

Default (as defined in the Pre-Petition Note Indenture); (v) the Pre-Petition Trustee and

the Pre-Petition Secured Noteholders shall be deemed to have consented to any sale or

disposition of Collateral approved, arranged for or by the Agent, and shall terminate and

release upon any such sale or disposition all of its liens on and security interests in such

Collateral; and (vi) the Pre-Petition Trustee shall deliver or cause to be delivered, at the

Debtors' costs and expense (for which the Pre-Petition Trustee shall be reimbursed upon

submission to the Debtors of invoices or billing statements), any termination statements,

releases or other documents necessary to effectuate and/or evidence the release and

termination of the Pre-Petition Trustee's liens on or security interests in any portion of

the Collateral subject to any sale or disposition approved or arranged for by the Agent

(where the Agent also releases any DIP Liens as necessary).

        (ii)    As further adequate protection, the Pre-Petition Trustee

shall be entitled to the reimbursement of up to $175,000 of reasonable fees and expenses

(the "**Fee and Expense Adequate Protection**") for each month during the Cases;

*provided* that, if any of the $175,000 of the monthly Fee and Expense Adequate

Protection is not used in a particular month, such unused amount may not be used in any

subsequent month, the sole exception being that a total of $612,500 can be applied to any

reasonable fees and expenses accrued from December 12, 2010 through and including

March 31, 2011.  All parties reserve their rights to argue that the Fee and Expense

41

Adequate Protection may be charged against the principal amount of the Pre-Petition

Notes Debt.  Counsel to the Ad Hoc Consortium of Certain Holders of A&P 11 3/8%

Senior Secured Notes (the "**Consortium**") shall be entitled to Fee and Expense Adequate

Protection only if it is retained as counsel (including nunc pro tunc to December 12,

2010) to the Pre-Petition Trustee.

        (iii)    The Debtors may move in the Bankruptcy Court to

terminate the Fee and Expense Adequate Protection if (i) counsel to the Consortium fails

to certify to the Debtors monthly that it represents holders holding in excess of 50% in

principal amount of the Prepetition Notes or (ii) they determine in their reasonable

judgment that there are not one or more Pre-Petition Secured Noteholders willing to

participate in restructuring negotiations, including by agreeing to receive material non-

public information.

        (iv)    Subject to the Pre-Petition Trustee executing an appropriate

confidentiality agreement, the Debtors shall prepare and furnish to the Pre-Petition

Trustee all information and reports in the same frequency and nature as required

hereunder to be delivered to the Creditors' Committee.

        (f)    Notwithstanding anything in this paragraph 15 to the contrary,

following delivery of a Carve Out Notice and prior to the payment to any Pre-Petition

Agent, Pre-Petition Secured Lender, Pre-Petition Trustee or Pre-Petition Secured

Noteholder on account of any adequate protection or otherwise, the Carve Out Reserve

Account shall have been fully funded.

16.     *Interests of Pre-Petition Secured Lenders and Pre-Petition Trustee;*
*Preservation of Rights.*

(a)     Under the circumstances, including in the light of the provisions
the ICA, and given that the above-described adequate protection is consistent with the
Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate
protection provided herein is reasonable and sufficient to protect the interests of the Pre-
Petition Secured Lenders and the Pre-Petition Trustee.  None of the Pre-Petition Trustee,
the Consortium, nor any of its members, shall directly or indirectly seek, or support any
other party in seeking, any further adequate protection during any time in the Cases,
beyond the Junior Adequate Protection and Fee and Expense Adequate Protection
provided for in this Final Order.

(b)     Except as expressly limited herein, the Pre-Petition Trustee's right,
if any, to object to any plan of reorganization is reserved consistent with the terms of the
ICA and this Final Order.  Moreover, except as otherwise provided under the ICA or this
Final Order, the Pre-Petition Trustee's rights, on behalf of the Pre-Petition Secured
Noteholders in their capacity as unsecured creditors, are not affected hereby.

17.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     Subject to the provisions of paragraph 11(a) above, the Agent and
the DIP Lenders are hereby authorized, but not required, to file or record financing
statements, trademark filings, copyright filings, mortgages, notices of lien or similar
instruments in any jurisdiction, or take possession of or control over, or take any other
action in order to validate and perfect the liens and security interests granted to them

43

hereunder.  Whether or not the Agent on behalf of the DIP Lenders shall, in its sole

discretion, choose to file such financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments, or take possession of or control over, or

otherwise confirm perfection of the liens and security interests granted to them

hereunder, such liens and security interests shall be deemed valid, perfected, allowed,

enforceable, non-avoidable and not subject to challenge dispute or subordination, at the

time and on the date of entry of the Interim Order.  Upon the request of the Agent, each

of the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Trustee and

the Pre-Petition Secured Noteholders, is without any further consent of any party,

authorized to take, execute, deliver and file such instruments (in each case without

representation or warranty of any kind) to enable the Agent to further validate, perfect,

preserve and enforce the DIP Liens, *provided* that copies of such instruments shall be

concurrently provided to the Debtors and the Debtors shall provide copies of such

instruments to the Creditors' Committee.

(b)      A certified copy of this Order may, in the discretion of the Agent

be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)      Any provision of any Lease (as defined in the DIP Credit

Agreement) or other license, contract or other agreement that requires (i) the consent or

approval of one or more landlords or other parties or (ii) the payment of any fees or

44

obligations to any governmental entity, in order for any Debtor to pledge, grant, sell,

assign, or otherwise transfer any such leasehold interest, or the proceeds thereof, or other

post-petition collateral related thereto, is hereby deemed to be inconsistent with the

applicable provisions of the Bankruptcy Code, and shall have no force and effect, with

respect to the transactions granting post-petition liens in such leasehold interest, or the

proceeds of any assignment and/or sale thereof, by any Debtor in favor of the DIP

Lenders, the Pre-Petition Secured Lenders and the Pre-Petition Trustee in accordance

with the terms of the DIP Documents or this Order.  Notwithstanding anything to the

contrary in the foregoing, the provisions of this paragraph 17(c) shall not (1) render any

contract or Lease unable to be assumed and/or assigned by any Debtor (or by the Agent,

as the Debtors' true and lawful agent and attorney-in-fact pursuant to the DIP

Documents) or (2) impair or limit the ability or right of (A) any Debtor (or the Agent, as

the Debtors' true and lawful agent and attorney-in-fact pursuant to the DIP Documents)

to assume and/or assign any contract or Lease or (B) any lessor to object to such relief on

any other grounds, including, but not limited to, sections 365(b)(3) or 1123 of the

Bankruptcy Code.

18.    *Preservation of Rights Granted Under the Order.*

(a)    Except as otherwise provided for herein, no claim or lien having a

priority superior to or *pari passu* with those granted by the Interim Order or this Final

Order to the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Trustee and

the Pre-Petition Secured Noteholders, respectively, shall be granted or allowed while any

portion of the Financing (or any refinancing thereof) or the Commitments thereunder or

45

the DIP Obligations, the Pre-Petition Obligations (as defined below), any Contingent Pre-Petition Debt, the Adequate Protection Obligations or the Junior Adequate Protection Obligations remain outstanding, and the DIP Liens, the Adequate Protection Liens and the Junior Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise, in each case other than the Carve Out.

(b)      Unless all DIP Obligations shall have been indefeasibly paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement) and the Pre-Petition Debt, Adequate Protection Obligations and the Junior Adequate Protection Obligations shall have been indefeasibly paid in full, the Debtors shall not seek, and it shall constitute a "**C/C Event of Default**" and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Agent and, only with respect to any matter relating to the Pre-Petition Debt, the Pre-Petition Collateral or the Adequate Protection Obligations, the Pre-Petition Agent, and no such consent shall be implied by any other action, inaction or acquiescence, in each case, by the Agent or the Pre-Petition Agent; *provided, further*, *however*, that the Debtors shall not seek to modify the Junior Adequate Protection Obligations and/or the Fee and expense Adequate Protection without notice and a hearing, (ii) an order converting or

46

dismissing any of the Cases or (iii) an order under section 365 of the Bankruptcy Code rejecting a Lease that is part of, or whose premises contain any, Collateral or otherwise terminating any such Lease without first providing 75-days' prior written notice to the Agent (unless such notice provision is waived by the Agent) during which time the Agent shall be permitted to find a reasonably acceptable (in the Agent's Permitted Discretion (as defined in the DIP Credit Agreement)) replacement lessee to whom such Lease may be assigned (and, if such a prospective assignee is timely found by the Agent, the Debtors shall withdraw any pending rejection motion or termination notice and instead promptly seek approval of the assumption and assignment of such Lease to such identified designated assignee (it being understood that the rights of the lessor under such Lease under section 365 of the Bankruptcy Code with respect to such assignment are preserved)); *provided* that this clause (iii) shall not apply to Leases that are rejected (A) pursuant to a filing on the Petition Date or (B) on the Effective Date of a Reorganization Plan (as defined in the DIP Credit Agreement) that indefeasibly repays the DIP Obligations in full as required by the DIP Documents.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Agent and the DIP Lenders and, as applicable, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Trustee and the Pre-Petition Secured Noteholders pursuant to the Interim Order and this Final Order shall continue in full force and effect and shall maintain their priorities as provided in the

47

Interim Order and this Final Order until all DIP Obligations, Pre-Petition Debt, Adequate

Protection Obligations and Junior Adequate Protection Obligations shall have been paid

and satisfied in full (and that such Superpriority Claims, priming liens and replacement

security interests, shall, notwithstanding such dismissal, remain binding on all parties in

interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for

the purposes of enforcing the claims, liens and security interests referred to in (i) above.

           (c)      Without limiting any of the rights or remedies of the Agent or the

DIP Lenders (including, without limitation, all rights afforded under applicable state law)

provided in paragraph 18 or otherwise herein or in any of the DIP Documents, upon or

after the acceleration of the DIP Obligations, the Agent shall have the right, in its sole

discretion, to demand that any Debtor immediately file and diligently pursue, and

prosecute any motion or other appropriate pleading with this Court seeking the

assumption and assignment of a Lease to the Agent or its designee.  If such demand is

made by the Agent, the Debtors shall (i) not seek to reject or otherwise terminate such

Lease, (ii) immediately withdraw any previously filed rejection motion or termination

notice with respect to such Lease and (iii) file, within one business day (or such longer

period as may be agreed to by the Agent in its Permitted Discretion, a motion seeking

expedited relief and a court hearing within seven days (or such longer period or with any

adjournments as requested by the Agent in its Permitted Discretion) of such demand for

the purpose of assuming such Lease and assigning it to the Agent or its designee.  Such

assignment shall be on terms and conditions as are acceptable to the Agent and subject to

(i) higher and better offers to the extent required under section 363 of the Bankruptcy

48

Code and (ii) the affected lessor's rights under the applicable Lease(s) (to the extent such rights are enforceable or effective under section 365 of the Bankruptcy Code) and the Bankruptcy Code.  The Debtors (or the Agent as the Debtors' true and lawful agent and attorney-in-fact pursuant to the DIP Documents) are authorized and directed to execute and deliver such agreements, documents and instruments as the Agent may request to effectuate the foregoing.  Notwithstanding any provision herein or in the DIP Documents, the Agent and DIP Lenders shall not, prior to any assumption and assignment of a lease under section 365 of the Bankruptcy Code, use or occupy any premises then leased by the Debtors other than: (i) in a manner consistent with the existing rights of the DIP Lenders and landlords under applicable non-bankruptcy law (if any) to the extent such rights are enforceable or effective under the Bankruptcy Code; (ii) pursuant to written agreement with any applicable landlord; or (iii) as provided for in a further order of the Bankruptcy Court on motion and notice appropriate under the circumstances.

(d)    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations, Pre-Petition Debt, Pre-Petition Notes Debt (collectively with all obligations of the Debtors with respect to the Pre-Petition Debt, the "**Pre-Petition Obligations**"), Adequate Protection Obligations or Junior Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent, the Pre-Petition Agent or the Pre-Petition Trustee, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement

with respect to any DIP Obligations, Pre-Petition Obligations, Adequate Protection

Obligations or Junior Adequate Protection Obligations.  Notwithstanding any such

reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations,

Pre-Petition Obligations, Adequate Protection Obligations or Junior Adequate Protection

Obligations incurred by the Debtors to the Agent, the DIP Lenders, the Pre-Petition

Agent, the Pre-Petition Trustee, the Pre-Petition Secured Lenders or the Pre-Petition

Secured Noteholders prior to the actual receipt of written notice by the Agent, the Pre-

Petition Agent or the Pre-Petition Trustee of the effective date of such reversal, stay,

modification or vacation shall be governed in all respects by the original provisions of

this Order, and the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition

Trustee, the Pre-Petition Secured Lenders and the Pre-Petition Secured Noteholders shall

be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of

the Bankruptcy Code (including, without limitation, in respect of any payments received

in connection with the refinancing of the Pre-Petition Debt), this Order and pursuant to

the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations, Pre-

Petition Notes Debt, Adequate Protection Obligations and Junior Adequate Protection

Obligations.

   (e) Except as expressly provided in this Order or in the DIP

Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of

the Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Secured Lenders

granted by the provisions of this Order and the DIP Documents, as applicable, shall

survive, and the 507(b) Claim granted to the Pre-Petition Trustee and all other rights and

remedies of the Pre-Petition Trustee and the Pre-Petition Secured Noteholders granted by

the provisions of this Order shall survive, and shall not be modified, impaired or

discharged by (i) the entry of an order converting any of the Cases to a case under chapter

7, dismissing any of the Cases, terminating the joint administration of these Cases or by

any other act or omission, (ii) the entry of an order approving the sale of any Collateral

pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the

DIP Documents) or (iii) the entry of an order confirming a plan of reorganization in any

of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors

have waived any discharge as to any remaining DIP Obligations.  The terms and

provisions of this Order and the DIP Documents shall continue in these Cases, in any

successor cases if these Cases cease to be jointly administered, or in any superseding

chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims

and all other rights and remedies of the Agent and the DIP Lenders granted by the

provisions of this Order and the DIP Documents (including to act as any Debtor's true

and lawful agent and attorney-in-fact pursuant to the DIP Documents), as well as the

Adequate Protection Obligations and all other rights and remedies of the Pre-Petition

Agent and the Pre-Petition Secured Lenders, granted by the provisions of this Order and

DIP Documents, as applicable, shall continue in full force and effect until the DIP

Obligations are indefeasibly paid in full, and the 507(b) Claim granted to the Pre-Petition

Trustee and all other rights and remedies of the Pre-Petition Trustee and the Pre-Petition

Secured Noteholders granted by the provisions of this Order shall continue in full force

and effect until the Junior Adequate Protection Obligations are paid in full.

19.    *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 6 of this Order, shall be binding upon the Debtors (but not their estates) and any successor thereto (including, without limitation, any chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors) in all circumstances.  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 6 of this Order, shall be binding upon all other parties in interest, including, without limitation, any statutory committee appointed in these Cases or any other person or entity acting on behalf of the Debtors' estates, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in paragraph 20), or motion seeking standing to bring a complaint or objection, by no later than the date that is 90 days after entry of the Final Order or such other date or if such a challenge or claim is brought, the entry of a final judgment in favor of the Pre-Petition Agent and the Pre-Petition Secured Lenders or the Pre-Petition Trustee, as the case may be, (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole discretion or (y) as has been ordered by the Court (the "**Challenge Period**") (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or of the Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral or the validity, enforceability, priority or extent of the Pre-Petition Notes Debt or of the Pre-Petition Trustee's liens on the Pre-Petition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance power claims or any other any claims, counterclaims or causes of action, objections, contests or defenses

52

(collectively, "**Claims and Defenses**") against the Pre-Petition Agent or any of the Pre-
Petition Secured Lenders or their affiliates, representatives, attorneys or advisors in
connection with matters related to the Existing Agreements, the Pre-Petition Debt, the
Pre-Petition Collateral or against the Pre-Petition Trustee or any of the Pre-Petition
Secured Noteholders or their affiliates, representatives, attorneys or advisors in
connection with matters related to the Pre-Petition Note Indenture or the Pre-Petition
Notes Debt, and (b) there is a final order in favor of the plaintiff sustaining any such
challenge or claim in any such timely filed adversary proceeding or contested matter;
*provided* that, (i) as to the Debtors (but not their estates), all such Claims and Defenses
are hereby irrevocably waived and relinquished as of the Petition Date and (ii) any
challenge or claim shall set forth with specificity the basis for such challenge or claim
and any challenges or claims not so specified prior to the expiration of the Challenge
Period shall be forever deemed waived, released and barred.  If no such adversary
proceeding or contested matter is timely filed, (x) to the extent not theretofore repaid, the
Pre-Petition Obligations shall constitute allowed claims, not subject to counterclaim,
setoff, subordination, recharacterization, defense or avoidance, for all purposes in the
Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agent's liens, the Pre-
Petition Secured Lenders' liens, the Pre-Petition Trustee's liens, the DIP Liens, the
Adequate Protection Liens and the Junior Adequate Protection Liens on the Pre-Petition
Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and
perfected, not subject to recharacterization, subordination or avoidance, and such liens
shall not be subject to any other or further challenge by any party in interest seeking to

53

exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors) and (z) the repayment of the Pre-Petition Debt shall be irrevocable and shall not be subject to restitution, disgorgement or any other challenge under any circumstances, including, without limitation, pursuant to any Claims and Defenses (as defined below).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 6 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter.  Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Existing Agreements, the Pre-Petition Note Indenture or any documents related thereto or the Pre-Petition Obligations.

20.    *Limitation on Use of Financing Proceeds and Collateral*.

(a)    Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Collateral or the Carve Out may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Existing Agreements, or the liens or claims granted under the Interim Order or this

54

Final Order, the DIP Documents or the Existing Agreements, (ii) assert any Claims and

Defenses or causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent,

the Pre-Petition Secured Lenders, the Pre-Petition Trustee or the Pre-Petition Secured

Noteholders or their respective agents, affiliates, representatives, attorneys or advisors,

(iii) prevent, hinder or otherwise delay the Agent's assertion, enforcement or realization

on the Cash Collateral or the Collateral in accordance with the DIP Documents, the

Existing Agreements, the Interim Order or this Final Order, (iv) seek to modify any of the

rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, the Pre-Petition Trustee or the Pre-Petition Secured Noteholders

hereunder or under the DIP Documents, the Existing Agreements or the Pre-Petition Note

Indenture, in each of the foregoing cases without such parties' prior written consent or (v)

pay any amount on account of any claims arising prior to the Petition Date unless such

payments are (1) approved by an order of this Court (including hereunder) and (2) in

accordance with the DIP Credit Agreement and any relevant budgets; *provided* that,

advisors to the Creditors' Committee may investigate the liens granted pursuant to the

Existing Agreements and, subject to any applicable law with respect to standing,

commence and prosecute any related proceedings as a representative of the Debtors'

estates at an aggregate expense for such investigation and prosecution not to exceed

$250,000.

21.     *Priorities Among the Pre-Petition Secured Lenders.*  Notwithstanding

anything to the contrary herein or in any other order of this Court, in determining the

relative priorities and rights of the Pre-Petition Secured Lenders (including, without

55

limitation, the relative priorities and rights of the Pre-Petition Secured Lenders with respect to the Adequate Protection Obligations granted hereunder), such priorities and rights shall continue to be governed by the Existing Agreements, including the ICA.

22.     *BofA as Collateral Agent*.  To the extent BofA, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements (as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance policies as required under the Security Agreement or is the secured party under any other Existing Agreement, it shall turn over and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement, second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements and third, subsequent to the indefeasible payment in full of all DIP Obligations and all obligations owing to the Pre-Petition Secured Lenders under the Existing Agreements, to the Pre-Petition Trustee, for the benefit of itself and the Pre-Petition Secured Noteholders.

23.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

24.     *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition Trustee, the Pre-Petition Secured Noteholders, any committee appointed in these Cases and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee

56

hereinafter appointed or elected for the estate of any of the Debtors) and shall inure to the

benefit of the Agent, the DIP Lenders and the Debtors and their respective successors and

assigns and, solely with respect to the provisions of this Order specifically referencing

such parties, the Pre-Petition Agent, the Pre-Petition Secured Lenders, the Pre-Petition

Trustee, the Pre-Petition Secured Noteholders and the Creditors' Committee and their

respective successors and assigns; *provided*, *however*, that the Agent and the DIP Lenders

shall have no obligation to extend any financing to any chapter 7 trustee or similar

responsible person appointed for the estates of the Debtors.  In determining to make any

loan under the DIP Credit Agreement or in exercising any rights or remedies as and when

permitted pursuant to the Interim Order, this Final Order or the DIP Documents, the

Agent and the DIP Lenders shall not be deemed to be in control of the operations of the

Debtors or to be acting as a "responsible person" or "owner or operator" with respect to

the operation or management of the Debtors (as such terms, or any similar terms, are used

in the United States Comprehensive Environmental Response, Compensation and

Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state

statute).

        25.    *Notice*.  Subject to appropriate confidentiality and recusal, the Debtors

shall provide to the Creditors' Committee the same financial statements, reports and other

information that the Debtors are required to provide to the Agent and the DIP Lenders

pursuant to the DIP Credit Agreement as and when the Debtors provide such information

to the Agent and/or the DIP Lenders.  Upon the receipt of any notice or information

provided by the Agent or the DIP Lenders to the Debtors under this Final Order or the

DIP Documents, the Debtors shall immediately provide a copy of such notice or information to the Creditors' Committee.

26.     *Effectiveness.*  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

Dated:    January 11, 2011
          White Plains, New York

                                        /s/Robert D. Drain
                                        HONORABLE ROBERT D. DRAIN
                                        UNITED STATES BANKRUPTCY JUDGE

### Schedule A

### Negative Pledge Leases

| Key # | Brand | Property Address | Landlord/Objector | Docket No. |
|---|---|---|---|---|
| 072-6294 | Pathmark | 371 Central Avenue, Hartsdale, NY | Centro Properties Group | 310 |
| 070-3620 | A&P | 136 Lake Avenue, Midland Park, NJ | GVD Commercial Properties, Inc. | 332 |
| 070-7651 | Waldbaums | 15601 Crossbay Boulevard, Howard Beach, NY | Benenson Howard Beach, LLC | 346 |
| 070-7616 | Waldbaums | 112-15 Beach Channel Drive, Belle Harbor, NY | Benenson Belle Harbor, LLC | 346 |
| 070-7236 | Waldbaums | 60 Wall Street, Huntington, NY | CWCapital Asset Management LLC | 315 |
| 036-3732 | Food Emporium | 250 West 50th Street, New York, NY | ASN 50th Street LLC | 342 |
| 027-7278 | Waldbaums | 124 East Main Street, Smithtown, NY | RD Branch Associates, L.P. | 355 |
| 027-3572 | Waldbaums | N. Main St. & Jagger Ave., Southampton, NY | Southhampton Grocery Owners, LLC | 332 |
| 036(021)-3725 | Food Emporium | 288 Elm Street, New Canaan, CT | New Canaan-Grocery, LLC | 332 |
| 036(070)-3740 | A&P | 161 W. Putnam Avenue, Greenwich, CT | Greenwich Grocery Owners, LLC | 332 |
| 070-3695 | A&P | 397 Demarest Ave., Closter, NJ | Closter-Grocery, LLC | 332 |
| 070-3867 | A&P | 802 Kenilworth Blvd., Kenilworth, NJ | Kenilworth-Grocery, LLC | 332 |
| 070-7639 | Waldbaums | 1531 Front St., East Meadow, NY | GVD Commercial Properties, Inc. | 332 |
| 070-5476 | Superfresh | 21 Court House & S. Dennis Rd., Cape May Court House, NJ | CWCapital Asset Management LLC | 315 |
| 070-7639 | A&P | 125 18th Street, Jersey City, NJ | Simon Property Group | 327 |