James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

     - and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | ) | Case No. 10-24549 (RDD) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN
## ORDER APPROVING BIDDING PROCEDURES IN CONNECTION WITH
## THE PROPOSED SALE OF CERTAIN SUPERFRESH BANNER STORE ASSETS

**PLEASE  TAKE  NOTICE**  that  the  undersigned[1]  will  present  the  attached  *Debtors'*

*Motion for Entry of an Order Approving Bidding Procedures in Connection With the Proposed*

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (*continued*) …

*Sale of Certain SuperFresh Banner Store Assets* (the "**Motion**") to the Honorable Judge Robert

D. Drain, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of

New York (the "***Bankruptcy Court***"), at 300 Quarropas Street, White Plains, New York 10601,

at a hearing to be held on **April 28, 2011 at 10:00 a.m. (prevailing Eastern Time)** (the

"***Hearing***").

      **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in

the Motion must comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of

the United States Bankruptcy Court for the Southern District of New York, must be set forth in a

writing describing the basis therefore and must be filed with the Bankruptcy Court electronically

in accordance with General Order M-399 by registered users of the Bankruptcy Court's

electronic case filing system (the User's Manual for the Electronic Case Filing System can be

found at http://www.nysb.uscourts.gov, the official website of the Bankruptcy Court) and, by all

other parties in interest, on a 3 ½ inch disk, preferably in Portable Document Format (PDF),

WordPerfect or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers) and served in accordance with General Order M-182 or by first-class mail

upon each of the following: (a) counsel for the Debtors, Kirkland & Ellis LLP, 600 Lexington

Avenue, New York, New York 10022, Attn.: Paul M. Basta, Attn.: Ray C. Schrock, Attn.:

---

(9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Grapefinds, Inc. (4053); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

2

James J. Mazza, Jr.; (b) counsel to the administrative agent for the Debtors' postpetition secured lenders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York, 10017, Attn.: Donald S. Bernstein, Attn.: Marshall S. Huebner; (c) the Office of the United States Trustee for the Southern District of New York at 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Susan Golden, Attn.: Richard Morrissey; (d) counsel to the official committee of unsecured creditors, Milbank, Tweed, Hadley & McCloy LLP, Attn.: Dennis F. Dunne, Attn.: Abhilash M. Raval, Attn.: Matthew S. Barr; (e) any other parties as specified in the *Order Establishing Certain Notice, Case Management and Administrative Procedures* [Docket No. 75] (the "***Case Management Procedures***") so as to be actually received **no later than April 21, 2011 at 4:00 p.m. (prevailing Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that only those responses that are timely filed, served and received will be considered at the Hearing. Failure to file a timely objection may result in entry of a final order granting the Motion as requested by the Debtors without further notice. The parties are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that, in accordance with Rule 9014-2(f) of the Local Bankruptcy Rules for the Southern District of New York and Section 1 of the Case Management Procedures, the Bankruptcy Court's Hearing shall be an evidentiary hearing to the extent necessary or appropriate with respect to the relief requested by the Motion and/or if objections to the relief requested in the Motion are filed and not withdrawn or resolved.

K&E 18695275

New York, New York          /s/ Ray C. Schrock
Dated:  April 13, 2011      James H.M. Sprayregen, P.C.
                            Paul M. Basta
                            Ray C. Schrock
                            KIRKLAND & ELLIS LLP
                            601 Lexington Avenue
                            New York, New York  10022-4611
                            Telephone:  (212) 446-4800
                            Facsimile:  (212) 446-4900

                                    - and -

                            James J. Mazza Jr.
                            KIRKLAND & ELLIS LLP
                            300 North LaSalle
                            Chicago, Illinois  60654
                            Telephone:  (312) 862-2000
                            Facsimile:  (312) 862-2200

                            Counsel to the Debtors and Debtors in Possession

K&E 18695275

James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

   - and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | Case No. 10-24549 (RDD) |
| Debtors. | Jointly Administered |
| | **Hearing Date:  April 28, 2011 at 10:00 a.m. ET** |
| | **Response Date:  April 21, 2011 at 4:00 p.m. ET** |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING BIDDING PROCEDURES IN CONNECTION WITH**
**THE PROPOSED SALE OF CERTAIN SUPERFRESH BANNER STORE ASSETS**

     The Great Atlantic & Pacific Tea Company, Inc. ("*A&P*") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "*Debtors*"),[1] file this motion (the

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, (*continued*) …

"**Motion**") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), authorizing and approving bid procedures (the "**Bidding Procedures**") for the proposed sale of certain Southern Store Assets (as defined herein). In support of the Motion, the Debtors respectfully state as follows:[2]

## Preliminary Statement

1.       As has been well-chronicled in these cases, the Debtors are in the midst of executing a multi-faceted operational restructuring plan upon which they are formulating their long-term strategic business plan and ultimately a plan of reorganization to maximize value for their stakeholders. A fundamental component of this operational restructuring plan is the rationalization of the Debtors' store footprint. To that end, the Debtors, with the assistance of their advisors, and in consultation with their key constituents, have engaged in a comprehensive review of their store portfolio with the objective of identifying and selling non-core store locations. In an effort to focus on their core markets in the northeast the Debtors intend to exit their operations in the mid-Atlantic Market and thus are currently marketing the assets associated with 25 stores operating under the SuperFresh banner located in the Baltimore-Washington D.C.

---

Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2]     To the extent evidentiary support is needed in support of the Motion, the Debtors will present direct evidence at the hearing on the Motion.

area (collectively, the "***Southern Stores***"). A list of the Southern Stores is attached to this Motion as **Exhibit B**. By filing this Motion, the Debtors seek to establish a process to elicit bids for the Southern Store Assets to attain the highest and best value for their estates.

## Jurisdiction

2.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

4.     The statutory bases for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code (the "***Bankruptcy Code***").

## Background

5.     On December 12, 2010 (the "***Commencement Date***"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code. The chapter 11 cases are being jointly administered. On December 21, 2010, the United States Trustee for the Southern District of New York appointed the official committee of unsecured creditors (the "***Creditors' Committee***").

6.     The Debtors operate conventional supermarkets, combination food and drug stores, discount food stores, and distribution centers and were party to over 765 non-residential real estate leases and owned another 22 properties. Like many retail businesses, the Debtors have recognized that their reorganization efforts in part hinge on the ability to close unprofitable store locations and reject costly, unmarketable leases and exit unprofitable markets. Accordingly, at the outset of these cases, the Debtors sought and obtained approval to reject 73

3

burdensome "dark store" leases and 25 underperforming leases and 26 related subleases.[3]  The

Debtors are also currently in the process of closing 32 additional underperforming stores and

liquidating the contents of these stores as well as rejecting or assuming and assigning any

unexpired store leases.[4]  The Debtors now intend to further maximize the value of their estates

by engaging in a marketing process for the proposed sale of the non-core Southern Stores,

pursuant to this Motion.

## Relief Requested

7.      By this Motion, the Debtors seek entry of the Order, pursuant to sections 105(a)

and 363 of the Bankruptcy Code authorizing them to implement the Bidding Procedures for the

sale of the Southern Store Assets.

## The Southern Stores

8.      The Southern Stores consist of 25 grocery stores operating under the Debtors'

SuperFresh banner located in Maryland, Delaware and Washington D.C.  Depending on the site,

these stores offer grocery, meat, fresh produce, bakeries, delicatessens, pharmacies, floral

departments, fresh seafood, cheese departments, wine, and beer, as well as DVD rental and on-

site banking.  In addition, the Southern Stores have a wide variety of premium quality private

label goods tailored to interest different segments of the market.  Through the fiscal year ending

February 2011, the Southern Stores generated gross sales of over $330 million, or approximately

$13.4 million per store.  The Southern Stores' median square footage is 46,000 square feet and

---

[3]    *See Amended Order Authorizing Rejection of Certain Unexpired Nonresidential Real Property Leases* (*First
      Omnibus Rejection Motion*) [Docket No. 508]; *Order Authorizing Rejection of Certain Unexpired
      Nonresidential Real Property Leases*  [Docket No. 81];

[4]    *See Order Pursuant to Sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 6004 and
      6006 (I) Authorizing and Approving (A) Global Store Rationalization Procedures, (B) The Sale of Assets in
      Connection Therewith Free and Clear of All Liens, Claims, and Encumbrances, (C) the Debtors' Entry Into
      A Liquidation Consulting Agreement, and (D) Global Procedures For Assumption and Assignment and
      Rejection of Unexpired Leases; and (II) Granting Related Relief* [Docket No. 1004].

the average sales per square foot is over $330. In an effort to focus on their core markets, the Debtors are seeking to exit the Baltimore-Washington area by divesting their assets related to the Southern Stores (the "***Southern Store Assets***").[5]

### Marketing Process

9. Approximately four months prior to the Commencement Date, the Debtors identified the Southern Stores as non-core assets and solicited interested parties to gauge interest in the Southern Store Assets, by distributing teaser materials to 21 interested purchasers. As part of that process, the Debtors received some initial indications of interest regarding the Southern Store Assets. Upon the Debtors' chapter 11 filing, they held the Southern Store Assets sale process in abeyance as they evaluated their store portfolio restructuring options. In recent weeks, the Debtors have restarted the Southern Store Assets sale process by re-soliciting bids and reaching out to a large swath of potentially interested parties.

10. Currently the Debtors, with the assistance of Hilco Real Estate, LLC ("***Hilco***"), the Debtors' retained real estate consultant, have entered into confidentiality agreements with 15 potential purchasers and granted them access to a data room to perform diligence on the Southern Store Assets.[6] The Debtors will continue to provide data room access to additional interested purchasers who enter into confidentiality agreements.

---

[5] The Debtors intend to continue operating their other SuperFresh grocery stores that are located outside the geographic region encompassed by the Southern Stores.

[6] Simultaneously with the filing of this Motion, the Debtors have also filed a motion to expand the scope of the Hilco's retention (the "***Supplemental Hilco Retention***") to include the marketing and sale of the Southern Store Assets. The Supplemental Hilco Retention provides that Hilco shall receive additional compensation in the form of up to 1.25% of the proceeds from the sale of the Southern Store Assets.

K&E 18695275

## Proposed Bidding Procedures

11.     The Debtors are now endeavoring to sell the entire Southern Stores portfolio to a purchaser for the highest and best offer.   Indeed, because of their strategic locations and proximity to each other, the Southern Stores already possess established distribution lines and economies of scale to allow for a purchaser to develop a significant foothold in the region.   The Debtors, however, recognize that they may receive various combinations of bids for portions of the Southern Store Assets.   Thus, the Debtors have built flexibility into the proposed Bidding Procedures so that they may consider combinations of individual bids in the event the sum of the parts turns out to actually be greater than the whole.

12.     In addition, the Debtors also have designed the procedures to encourage purchasers to provide employment opportunities to the Debtors' associates at the Southern Stores, as well to foster negotiations between potential grocery store purchasers and the United Food and Commercial Workers Union Local and its local union affiliates — Local 27, Local 400, and Local 1776 (collectively, the "***Union***"), that represent the Southern Stores' unionized employees, so that such purchasers may submit bids pursuant to which the collective bargaining agreements (each, a "***CBA***") related to the Southern Stores may be assumed under terms acceptable to both the purchaser and the Union.[7]   Through this process, the Debtors hope to

---

[7]     In recent weeks the Debtors received correspondence from the Union regarding the Southern Stores sale process.  In that correspondence, the Union alleged, among other things, that the Debtors have an obligation under their CBAs to only sell the Southern Stores to buyers that would assume the relevant CBA(s).  While the Debtors disagree with this interpretation of the CBAs, the Debtors have nevertheless informed the Union of their intention to encourage buyers to offer employment to their constituents, so that the highest number of jobs possible may be maintained through this sale process.  The Debtors also have communicated to the Union their desire for the Union's constructive input in the Southern Stores sales process.  To further evidence the Debtors' good faith in working with the Union, the Bidding Procedures already incorporate significant consultation rights for the Union with respect to the sale process.  The Debtors have informed the Union of the filing of this Motion and will seek additional input from the Union on the Bidding Procedures prior to the April 28 hearing.  The Debtors also have made clear their intent to leave no stone unturned in soliciting offers for the Southern Stores so that they will fulfill their fiduciary duty to maximize value to the estates.  The Debtors further reserve their right to seek relief from the relevant CBA, if necessary, under section 1113 of the Bankruptcy Code, in (*continued*) …

6

procure the highest and best value for the estates from the Southern Store Assets. Further, the Debtors have shared the proposed Bidding Procedures and solicited comments from the Creditors' Committee and the administrative agent for the Debtors' postpetition secured lenders (the "*DIP Lender's Agent*").[8]

13. Against this backdrop, the proposed Bidding Procedures set forth the parameters for which the Debtors will consider bids and place the Southern Store Assets into a number of categories from which a bidder may place a bid on any combination of asset categories. Additionally, the proposed Bidding Procedures: (a) provide that the Debtors will send all bidders a form asset purchase agreement (the "*APA*"), which will also be filed with the Court pursuant to a supplemental notice; (b) set a bid deadline; (c) define requirements for qualified bids; (d) set an auction date; and (e) give the Creditors' Committee, the DIP Lender's Agent and the Union certain consultation rights. The proposed Bidding Procedures also provide for, at the Debtors' discretion in consultation with the DIP Lender's Agent, the Creditors' Committee, and the Union, the selection of a stalking horse as well as the ability of the Debtors to provide for a breakup fee (the "*Breakup Fee*") of up to 2.5% of the purchase price. In the event the Debtors select a stalking horse, and as described in greater detail in the proposed Bidding Procedures, the Debtors will file a supplemental notice with the Court identifying the stalking horse and the terms of the stalking horse bid, including any Breakup Fee, and providing parties with the opportunity to object.

---

conjunction with the sale of the Southern Stores or later, as necessary. To the extent any objections to the Motion are received from the Union, the Debtors will address any such objections in a formal reply and at the April 28 hearing.

[8] The Creditors' Committee and the DIP Lender's Agent have provided the Debtors with comments to the proposed Bidding Procedures, many of which the Debtors have accepted. The Debtors will file a blackline of any changes to the Bidding Procedures upon acceptance of such comments.

14.     Upon the selection of a successful bidder, the Debtors will file a motion to approve the sale (the "*Sale Motion*") and seek to have the Sale Motion heard by this Court on the June 14, 2011 omnibus hearing at 10:00 a.m. prevailing Eastern Time (the "*Sale Hearing*"). At the Sale Hearing, the Debtors will request that the Court enter an order: (a) approving (i) the successful bid(s), (ii) the applicable APA(s), and (iii) the proposed assumption and assignment of any assumed contract; and (b) authorizing the Debtors to consummate the proposed transaction(s).

15.     Following entry of an order approving the Bidding Procedures (the "*Bidding Procedures Order*"), the Debtors with the assistance of Hilco, intend to prepare and circulate additional updated information regarding the Southern Store Assets and the Bidding Procedures to potential buyers. The Debtors believe that continuing the marketing process and entry of the Bidding Procedures Order will help ensure that the Debtors maximize the value of the Southern Store Assets through their disposition.

16.     To optimally and expeditiously solicit, receive and evaluate bids in a fair and accessible manner, the Debtors have developed and proposed the Bidding Procedures, annexed as **Exhibit 1** to **Exhibit A**, to govern the sale. The Bidding Procedures are designed to encourage all entities to put their best bids forward and enhance the value to the Debtors' estates. The salient points of the Bidding Procedures are as follows:[9]

    (a)     Assets to Be Sold:  The assets (the "*Assets*") to be offered for sale consist of all or substantially all the Southern Stores, including, without limitation, all inventory, certain equipment, interests in contracts or leases, accounts receivable, and payment intangibles associated with any of the Assets as described in the Asset Categories below, but excluding all Excluded Assets.  Bidders must offer to

---

[9]     This summary is qualified in its entirety by the Bidding Procedures annexed to **Exhibit A** as **Exhibit 1**. All capitalized terms that are used in this summary but not otherwise defined herein shall have the meanings in the Bidding Procedures. To the extent there are any conflicts between this summary and the Bidding Procedures, the terms of the Bidding Procedures shall govern.

purchase some or all of the Assets in one or more of the following asset categories (the "**Asset Categories**"):

| Category | Asset Description |
|----------|-------------------|
| 1. | All of the Assets and assumption of certain liabilities, including the assumption of collective bargaining agreements related to the Southern Stores. |
| 2. | All of the Assets located in one or more of the Southern Stores, together with the assumption of the store lease for each such Southern Store, including the assumption of certain liabilities, including the relevant collective bargaining agreement. |
| 3. | All of the Assets located in one or more Southern Stores, but excluding the assumption of any store lease. |
| 4. | All or any part of the Assets consisting of inventory, including, without limitation, pharmaceutical inventory and prescription lists. |
| 5. | All or any part of the Assets consisting of inventory, but excluding pharmaceutical inventory and prescription lists. |
| 6. | All or any part of the Assets consisting of pharmaceutical inventory and prescription lists. |
| 7. | All or any part of the equipment at any Southern Stores. |
| 8. | Unexpired leases or executory contracts relating to any of the Southern Stores. |

(b)     Consideration of Bids:  The Assets will be offered for sale in separate Asset Categories, in one or more combinations and as a whole.  The Debtors may consider bids (each, a "**Bid**") for all of the Assets in a single bid from a single bidder or multiple bids from multiple bidders for Assets in any combination of the Asset Categories listed above.  The Debtors shall determine, in consultation with the DIP Lender's Agent, the Creditors' Committee, and the Union, the Successful Bidder (as defined below) based on, among other things, but not limited to, the number of Assets purchased, the assumption of certain liabilities, the purchase price for the Assets, and the value to the estates.

The Debtors will provide all bidders with a form APA (the "**APA**"), which the Debtors shall file with the Court pursuant to a supplemental notice and will make the APA available at a data site maintained by Hilco, specifically for the sale of the Assets.

(c)     Bid Deadline:  All Bids must be served upon and actually received by the Debtors, counsel to the Debtors, Hilco, the DIP Lenders' Agent, and the Creditors' Committee, on or before 4:00 p.m., prevailing Eastern Time, on May 13, 2011 (the "**Bid Deadline**").

(d)     Qualified Bid Requirements:  The Debtors will determine, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union and subject to

9

the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid and, ultimately a Successful Bid (as these terms are defined below). Any entity that desires to submit a Bid to purchase the Assets may do so in writing as follows:

(i)     a Bid must include an executed APA, blacklined to show changes from the APA that the Debtors have submitted pursuant to a supplemental filing, clearly setting forth any conditions for closing and stating that the Bid is irrevocable as set forth below;

(ii)    the Bid must identify with particularity each and every unexpired lease or executory contract (each, an "***Assumed Contract***") sought to be assumed and assigned, the assumption and assignment of which is a condition precedent to closing, and include an executed assumption and assignment agreement;

(iii)   a Bid must clearly set forth the purchase price to be paid;

(iv)    a Bid shall not be contingent upon any due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(v)     a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtors upon consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union) sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "***Sponsor***"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(vi)    a Bid must contain such financial and/or other information that will allow the Debtors, following consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the APA, including such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(vii)    a Bid must not include a credit bid by the holder of a lien on equipment and related property of any Debtor such that the offer would make the sale of the remainder of property reasonably impractical at what would otherwise be the highest or best terms, as the case may be, available to the Debtors' estates;

(viii)    a Bid must disclose the identity of the bidder's organization, including confirmation that the competing Bid is made as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any);

(ix)    a Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the APA;

(x)    a Bid must include a cashier's check or be accompanied by a wire transfer (or, if by a landlord for its own lease, value) payable or delivered to the Debtors, their counsel or other agreed upon escrow agent, in an amount equal to 10 percent (10%) of the total purchase price in the APA (the "***Deposit***");

(xi)    a Bid must state that the bidder is willing to consummate and fund the proposed transaction by no later than five (5) business days after the Sale Hearing, however, such requirement may be waived by the Debtors; and

(xii)    a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the subject Assets or with respect to any possible transaction involving the Debtors.

(e)    <u>Evaluation of Qualified Bids</u>:  The sufficiency of any submitted Bid will be at the discretion of the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee and the Union.  The Debtors shall promptly as practicable notify potential bidders who have (a) returned a signed confidentiality agreement, (b) timely submitted the information and documentation listed above in ¶16(d)(i) - (xii), and (c) who have financial qualifications satisfactory to the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, that they have been selected as a qualified bidder (each a "***Qualified Bidder***") and that their Bid is a "Qualified Bid."

(f)    <u>Stalking Horse Bids</u>:  The Debtors reserve the right in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to enter into one or more APAs with any entity for all or any portion of the Assets, and designate that entity or entities as a stalking horse (the "***Stalking Horse***") subject to the terms herein.  The Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union may offer a breakup fee to the Stalking Horse.  The

Debtors are under no obligation to choose a Stalking Horse or offer a breakup fee for any of the Assets.

In the event the Debtors select a Stalking Horse, the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, may offer bid protections, including a breakup fee of up to 2.5% of the cash portion of the purchase price of the Stalking Horse Bid. If the Debtors identify a Stalking Horse, the Debtors will file a supplemental notice (the "***Stalking Horse Notice***") with the Court identifying the Stalking Horse and the terms of the Stalking Horse Bid, including the terms and conditions for payment of any breakup fee. Any entity wishing to object to the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice to file an objection (the "***Objection***") with the Court and serve it on the Notice Parties. In the event an Objection is filed and such Objection cannot be resolved consensually, the Debtors will seek to schedule a hearing with the Court for approval of the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee. If no Objections to the Stalking Horse Notice are received, the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee, shall be deemed approved by the Court, without the need for further Court order. In the event the Debtors choose a Stalking Horse, the Stalking Horse Bid will be a Qualified Bid.

(g) <u>The Auction</u>: The auction (the "***Auction***") will be conducted for the Assets on May 17, 2011 at 10:00 a.m. prevailing Eastern Time (the "***Auction Date***") at the offices of Kirkland & Ellis LLP located at 601 Lexington Avenue, New York, New York 10022. The Assets shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code; <u>provided</u> that the DIP Lenders' Agent's liens shall attach to the proceeds of the Assets with the same validity, force, and effect.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union (the "***Successful Bid*** or ***Bids***"), and the backup Bid or Bids shall be selected and announced by the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union (the "***Backup Bid*** or ***Bids***").

Within 24 hours of completion of the Auction, the entity or entities that made the Successful Bid or Bids (the "***Successful Bidder***") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

The Auction may be adjourned or cancelled as the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, deem appropriate. Reasonable notice of such adjournment and the time and place for

the resumption of the Auction or cancellation shall be given to all participants and to the DIP Lenders' Agent, the Creditors' Committee, and the Union.

(h) <u>Selection of Successful Bid or Bids</u>:  If the Successful Bidder is unable to consummate the sale, upon consultation with the DIP Lenders' Agent, the Creditors' Committee and the Union, the Debtors may consummate the proposed sale with the next highest or best bidder at the Auction (the "***Backup Bidder***", which hereafter shall be included in the definition of "Successful Bidder") without the need for further Court approval.

(i) <u>Backup Bids</u>:  If the Successful Bidder fails to consummate the sale, breaches the APA, or otherwise fails to perform, upon consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, the Debtors may consummate the proposed sale with the next highest or best bidder at the Auction — the Backup Bidder, which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval.

(j) <u>Sale Motion and Hearing</u>:  Upon the selection of a Successful Bidder, the Debtors will file the Sale Motion.  The Sale Hearing will be conducted by this Court on June 14, 2011 at 10:00 a.m. prevailing Eastern Time.  At the Sale Hearing, the Debtors will request that the Court enter an order (the "***Sale Order***"):  (a) approving (i) the Successful Bid(s), (ii) the applicable APA(s), and (iii) the proposed assumption and assignment of any Assumed Contract, and (b) authorizing the Debtors to consummate the proposed transaction.  At the Sale Hearing, the Court shall also determine:  (a) any cure required under 11 U.S.C. §365(b) if the affected landlord timely filed an objection to the Debtors' proposed cure of any unexpired lease to be assumed and assigned, and (b) if applicable, whether the Debtors have demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

(k) <u>"As Is, Where Is"</u>:  The proposed transfer of any of the Debtors' Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents, or estates, except to the extent set forth in the applicable APA of each Successful Bidder as accepted by the Debtors and approved by the Court.  Except as otherwise provided in an APA, all of the Debtors' right, title, and interest in and to the respective Asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, and interests in accordance with section 363 of the Bankruptcy Code.  Any other claim, lien, or encumbrance, as set forth in the APA, will attach to the net proceeds of the sale of the particular Asset.

K&E 18695275

**Basis for Relief**

I.    **The Relief Sought in the Bidding Procedures Order Is in the Bests Interests of the Debtors' Estates and Should be Approved.**

17.    Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling assets from the estate. *See, e.g., In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (Bankr. S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a debtor are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs.*, L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

18.    The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources, 147 B.R. at 659* ("It is a well-established principle of bankruptcy law that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Packaging Products, Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

19.    To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (such procedures "encourage bidding and to maximize the value of the debtor's assets"); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991), ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis

for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates").

20.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will elicit the best and highest offers available for the Southern Store Assets.  The proposed Bidding Procedures will allow the Debtors to conduct the sale in a controlled, fair, and open fashion that will encourage meaningful input from key constituents and participation by financially capable bidders who will offer the best package for the Southern Store Assets and who can demonstrate the ability to close a transaction.  The Debtors believe that the Bidding Procedures will encourage competitive bidding, that they are consistent with other procedures previously approved by this District, and are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings.  *See Integrated Resources*, 147 B.R. at 659; *995 Fifth Avenue Assocs.*, 96 B.R. at 28; *see e.g., In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving similar bidding procedures); *In re Silicon Graphics, Inc.*, No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (same); *In re Steve & Barry's Manhattan LLC*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (same); *In re Fortunoff Fine Jewelry and Silverware, LLC*, No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (same).

## II.     The Proposed Process for the Debtors to Designate a Stalking Horse and Provide a Breakup Fee Should Be Approved.

21.     The Debtors seek authority to designate a stalking horse and offer customary bid protections including a break-up fee as part of the Bidding Procedures.  In the event the Debtors designate a stalking horse, that party will subject their bid to higher and better offers, and likely will request the enticement of a break-up fee if the Stalking Horse loses at auction to another bidder.  The use of a stalking horse in a public auction process for sales pursuant to section 363

15

of the Bankruptcy Code is a customary practice in chapter 11 cases, as the use of a stalking horse bid is, in many circumstances, the best way to maximize value in an auction process by locking in a purchase price "floor" before exposing an asset to auction. As a result, stalking horse bidders virtually always require breakup fees and other forms of bidding protections as an inducement for holding their purchase offer open while it is exposed to overbids in an auction process. Thus, the use of bidding protections, including breakup fees, has become an established practice in chapter 11 cases.

22.     Bankruptcy courts have approved bidding incentives, similar to the Breakup Fee, under the business judgment rule, which proscribes judicial second-guessing of the actions of a corporation's board of directors taken in good faith and in the exercise of honest judgment. *See e.g., In re BearingPoint, Inc.*, No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) (approving a breakup fee of approximately 3% of the purchase price); *In re Silicon Graphics, Inc.*, No. 09-11701 (MG) (Bankr. S.D.N.Y. Apr. 3, 2009) (approving breakup fee of approximately 2.8% of the purchase price); *In re Steve & Barry's Manhattan LLC*, No. 08-12579 (ALG) (Bankr. S.D.N.Y. Aug. 5, 2008) (approving break-up fee of 2% of the purchase price); *In re Fortunoff Fine Jewelry and Silverware, LLC*, No. 08-10353 (JMP) (Bankr. S.D.N.Y. Feb. 22, 2008) (approving break-up fee of approximately 2.8% of the purchase price); *In re Bally Total Fitness of Greater New York, Inc.*, No. 07-12395 (BRL) (Bankr. S.D.N.Y. Aug. 21, 2007) (approving break-up fee of 4.3% of the purchase price).

23.     With respect to breakup fees in bankruptcy cases, courts have generally considered three factors when assessing proposals for such fees: (a) whether the relationship of the parties who negotiated the breakup fee is tainted by self-dealing or manipulation; (b) whether the fee hampers, rather than encourages, bidding; and (c) whether the amount of the fee is

unreasonable relative to the proposed purchase price. *See In re Integrated Res., Inc.*, 147 B.R., at 657.

24.     The Debtors believe that the ability to select a Stalking Horse and allowance of a Breakup Fee is beneficial to their estates and their creditors, as a Stalking Horse Bid would establish a floor for further bidding and potentially increase the value of the Southern Store Assets for the benefit of the estates.   As set forth in the proposed Bidding Procedures, the Debtors intend to consult with the Creditors' Committee, the DIP Lender's Agent, and the Union regarding selection of a Stalking Horse and will solicit their input in the hopes of attracting a Stalking Horse beneficial to all parties.   Moreover, the proposed Bidding Procedures provide that parties will receive the Stalking Horse Notice which will state the Debtors' designation of a stalking horse, including terms for payment of any Breakup Fee.   Parties will have an opportunity to object to the Debtors' designation of a Stalking Horse and payment of a Breakup Fee.   If a party chooses to object within five days from the filing of the Stalking Horse Notice and such Objection cannot be resolved consensually, the Debtors will seek approval of the Stalking Horse and Breakup Fee by scheduling a hearing with the Court based on its availability. If no objections to the Stalking Horse Notice are received, the Stalking Horse and Breakup Fee, shall be deemed approved by the Court, without the need for further Court order.   Further, if the Breakup Fee were to be paid, it will be because the Debtors have received a higher or otherwise superior offer.   Additionally, the proposed Breakup Fee is well within the range of such fees approved by this and other courts, as noted above.

25.     Thus, the proposed Bidding Procedures are reasonable, appropriate, and within the Debtors' sound business judgment under the circumstances because the Bidding Procedures are designed to maximize the value to be received by the Debtors' estates.

## Motion Practice

26.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated, and a discussion of their application to this Motion.  Accordingly, the Debtors submit that this Motion satisfies Rule 9013-1(a) of the Local Bankruptcy Rules.

## Notice

27.     Notice of this Motion to be provided by electronic mail, facsimile, and/or by overnight mail to:  (a) the U.S. Trustee; (b) counsel to the Creditors' Committee; (c) counsel to the agent for the Debtors' postpetition secured lenders; (d) counsel to the agent for the Debtors' prepetition secured lenders; (e) the indenture trustees for each of the Debtors' secured and unsecured outstanding bond issuances; (f) the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) all parties the Debtors know that hold liens or assert liens against the Debtors; (i) the State Attorney General's offices (upon the Chief or Director of the Consumer Protection Division or Bureau and Chief or Director of the Bankruptcy Division or Bureau); (j) all the of the Debtors' taxing authorities; (k) counsel to the Union; (l) the landlords to the Southern Stores; and (m) any other parties as specified in the *Order Establishing Certain Notice, Case Management and Administrative Procedures* [Docket No. 75].  The Debtors respectfully submit that further notice of this Motion is neither required nor necessary.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

28.     No prior request for the relief sought in this Motion has been made to this or any other court.

K&E 18695275

WHEREFORE, the Debtors respectfully request that the Court enter the Order granting the relief requested herein and such other or further relief as is just.

New York, New York
Dated: April 13, 2011

/s/ Ray C. Schrock

James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

- and -

James J. Mazza, Jr.
**KIRKLAND & ELLIS LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

K&E 18695275

**<u>Exhibit A</u>**

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | ) | Case No. 10-24549 (RDD) |
|  | ) |  |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## ORDER APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE PROPOSED SALE OF CERTAIN SUPERFRESH BANNER STORE ASSETS

Upon the motion (the "***Motion***")[1] of The Great Atlantic & Pacific Tea Company, Inc. ("***A&P***") and certain of its affiliates, as debtors and debtors in possession (collectively, the "***Debtors***") for the entry of an order (this "***Order***") authorizing the Bidding Procedures for the sale of the Southern Store Assets, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and venue being proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and the Debtors having provided adequate and appropriate notice of the Motion under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.     The Motion is granted to the extent provided herein.

---

[1]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

2. All objections to the Motion that have not been withdrawn, waived, settled, or specifically addressed in this Order, and all reservations of rights included in such objections, are overruled in all respects on the merits and denied.

3. The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved.

4. If no objections to the Stalking Horse Notice are received, the Stalking Horse and Stalking Horse Bid, including payment of the Breakup Fee, shall be deemed approved by the Court, without the need for further Court order.

5. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

6. Notwithstanding Bankruptcy Rule 6004 or otherwise, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

7. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

White Plains, New York
Date: _____, 2011

_____
United States Bankruptcy Judge

K&E 18695275

<u>**Exhibit 1**</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | ) | Case No. 10-24549 (RDD) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

## BIDDING PROCEDURES FOR SOUTHERN STORE ASSETS

Set forth below are the bidding procedures (the "***Bidding Procedures***") that shall govern the sale of the assets of 25 SuperFresh grocery stores (the "***Southern Stores***") owned and operated by the debtors and debtors in possession (collectively, the "***Debtors***")[1] in the above captioned chapter 11 cases.

## I.     Assets to Be Sold

The assets (the "***Assets***") to be offered for sale consist of all or substantially all the Southern Stores, including, without limitation, all inventory, certain equipment, interests in contracts or leases, accounts receivable, and payment intangibles associated with any of the Assets as described in the Asset Categories below, but excluding all Excluded Assets (as may be defined in the APA (defined below)).

Bidders must offer to purchase some or all of the Assets in one or more of the following asset categories (the "***Asset Categories***"):

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC (9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599). The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

| Category | Asset Description |
|---|---|
| 1. | All of the Assets and assumption of certain liabilities, including the assumption of collective bargaining agreements related to the Southern Stores. |
| 2. | All of the Assets located in one or more of the Southern Stores, together with the assumption of the store lease for each such Southern Store, including the assumption of certain liabilities, including the relevant collective bargaining agreement. |
| 3. | All of the Assets located in one or more Southern Stores, but excluding the assumption of any store lease. |
| 4. | All or any part of the Assets consisting of inventory, including, without limitation, pharmaceutical inventory and prescription lists. |
| 5. | All or any part of the Assets consisting of inventory, but excluding pharmaceutical inventory and prescription lists. |
| 6. | All or any part of the Assets consisting of pharmaceutical inventory and prescription lists. |
| 7. | All or any part of the equipment at any Southern Stores. |
| 8. | Unexpired leases or executory contracts relating to any of the Southern Stores. |

## II.    Consideration of Bids

Without limiting the foregoing, the Assets will be offered for sale in separate Asset Categories, in one or more combinations and as a whole.  The Debtors may consider bids (each, a "***Bid***") for all of the Assets in a single bid from a single bidder or multiple bids from multiple bidders for Assets in any combination of the Asset Categories listed above.  The Debtors shall determine, in consultation with the administrative agent for the Debtors' postpetition secured lenders (the "***DIP Lenders' Agent***"), the official committee of unsecured creditors (the "***Creditors' Committee***") and the United Food and Commercial Workers Union Local and its local union affiliates — Local 27, Local 400, and Local 1776 (collectively, the "***Union***"), the Successful Bidder (as defined below) based on, among other things, but not limited to, the number of Assets purchased, the assumption of certain liabilities, the purchase price for the Assets, and the value to the estates.

The Assets that are offered for sale shall be sold pursuant to section 363 of the Bankruptcy Code free and clear of all liens and other interests in such Assets with certain

K&E 18695554

exceptions which exceptions are to be assumed under the APA or satisfied at closing from the cash proceeds received in connection with the purchase of such Assets; <u>provided</u> that the DIP Lenders' Agent's liens shall attach to the proceeds of the Assets with the same validity, force, and effect.

The Debtors will provide all bidders with a form asset purchase agreement (the "***APA***"), which the Debtors shall file with the United States Bankruptcy Court for the Southern District of New York (the "***Court***") pursuant to a supplemental notice and will make the APA available at a data site maintained by Hilco Real Estate, LLC ("***Hilco***"), specifically for the sale of the Assets.[2]

## III. Marketing Process and Due Diligence

The Debtors have and will continue to provide confidential information regarding the Assets to potential purchasers (the "***Initial Information***"). Before receiving Initial Information, each potential purchaser must execute a confidentiality agreement, in a form satisfactory to the Debtors. The Debtors will make the Initial Information and other information available electronically through a data room. The Debtors may, but are not obligated to, furnish any due diligence information after the Bid Deadline (as defined below) for Qualified Bids (as defined below) or to any entity that the Debtors determine.

## IV. Bid Deadline

All Bids must be served upon and actually received by the Debtors, counsel to the Debtors, Hilco, the DIP Lenders' Agent, and the Creditors' Committee, on or before 4:00 p.m., prevailing Eastern Time, on May 13, 2011 (the "***Bid Deadline***"). Bids must be sent to: (a) the Debtors, The Great Atlantic & Pacific Tea Company, Inc., Attn: Christopher W. McGarry, Craig Feldman and David Kelly, 2 Paragon Road, Montvale, New Jersey 07645; (b) counsel to the Debtors, Kirkland & Ellis LLP, Attn: Ray Schrock, 601 Lexington Avenue, New York, New York 10022, and Attn: James J. Mazza, Jr., 300 North LaSalle, Chicago, Illinois 60654; (c) Hilco Real Estate, LLC, Attn: Zvi Rhine, 5 Revere Drive, Suite 320, Northbrook, Illinois 60062; (d) counsel to the DIP Lenders' Agent, Davis Polk & Wardwell LLP, Attn: Donald S. Bernstein and Marshall S. Huebner, 450 Lexington Avenue, New York, New York 10017; and (e) counsel to the Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, attn: Dennis F. Dunne, Abhilash M. Raval and Matthew S. Barr, One Chase Manhattan Plaza, New York, New York 10005 (collectively, the "***Notice Parties***"). The Debtors may extend (after consultation with the DIP Lenders' Agent, and the Creditors' Committee) the Bid Deadline for the delivery of Bids once or successively, without further notice and for one or more bidders.

## V. Qualified Bid Requirements

The Debtors will determine, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union and subject to the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid and, ultimately a Successful Bid (as these terms are defined below).

---

[2]  To the extent there are any conflicts between these Bidding Procedures and the APA, the terms of the APA shall govern.

Any entity that desires to submit a Bid to purchase the Assets may do so in writing as follows:

(i)     a Bid must include an executed APA, blacklined to show changes from the APA that the Debtors have submitted pursuant to a supplemental filing, clearly setting forth any conditions for closing and stating that the Bid is irrevocable as set forth below;

(ii)    the Bid must identify with particularity each and every unexpired lease or executory contract (each, an "***Assumed Contract***") sought to be assumed and assigned, the assumption and assignment of which is a condition precedent to closing, and include an executed assumption and assignment agreement;

(iii)   a Bid must clearly set forth the purchase price to be paid;

(iv)    a Bid shall not be contingent upon any due diligence investigation, any material adverse change, the receipt of financing, or approval by any board of directors, shareholders, or other entity;

(v)     a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtors upon consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union) sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "***Sponsor***"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(vi)    a Bid must contain such financial and/or other information that will allow the Debtors, following consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the APA, including such financial and other information setting forth adequate assurance of future performance under section 365 of the Bankruptcy Code in a form requested by the Debtors to allow the Debtors to serve on counterparties to any contracts or leases being assigned in connection with the proposed sale that have requested, in writing, such information;

(vii)   a Bid must not include a credit bid by the holder of a lien on equipment and related property of any Debtor such that the offer would make the sale of the remainder of property reasonably impractical at what would otherwise be the highest or best terms, as the case may be, available to the Debtors' estates;

(viii)  a Bid must disclose the identity of the bidder's organization, including confirmation that the competing Bid is made as principal for the bidder's account

4

and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any);

(ix)     a Bid must include evidence of authorization and approval from the Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the APA;

(x)      a Bid must state that the bidder is willing to consummate and fund the proposed transaction by no later than five (5) business days after the Sale Hearing (as defined below), however such requirement may be waived by the Debtors;

(xi)     a Bid must include a cashier's check or be accompanied by a wire transfer (or, if by a landlord for its own lease, value) payable or delivered to the Debtors, their counsel or other agreed upon escrow agent, in an amount equal to 10 percent (10%) of the total purchase price in the APA (the "**_Deposit_**"); and

(xii)    a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the subject Assets or with respect to any possible transaction involving the Debtors.

Notwithstanding anything to the contrary, the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union shall have the right to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids Qualified Bids (as defined below).

Notwithstanding anything to the contrary in these procedures, the Bid of the Successful Bidder (as defined below) must remain irrevocable in accordance with the terms of the APA executed by the Successful Bidder.  All other Bids must be irrevocable until the earlier to occur of (a) 25 days after entry of a Sale Order (as defined below) approving the sale of the Assets and (b) closing of the sale of Assets in accordance with the Successful Bid (as defined below).

Notwithstanding anything to the contrary in these procedures, the Debtors also reserve the right, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to reject any and all Bids, including Qualified Bids, for any Asset in any particular Asset Category.

## VI.    Evaluation of Qualified Bids

The DIP Lenders' Agent, the Creditors' Committee, and the Union shall be given a reasonable opportunity to review any information and documentation, financial or otherwise, required of potential bidders by the Debtors prior to the Debtors' selection of Qualified Bidders (as defined below).  The Debtors may request additional information from a potential bidder to better evaluate the bidder's ability to consummate a transaction and to fulfill its obligations in connection therewith, and such bidder shall be obligated to provide such information as a pre-condition to participating further in the Auction (as defined below).

The sufficiency of any submitted Bid will be at the discretion of the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union. The Debtors shall promptly as practicable notify potential bidders who have (a) returned a signed confidentiality agreement, (b) timely submitted the information and documentation listed above in Section V(i) - (xii), and (c) who have financial qualifications satisfactory to the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, that they have been selected as a qualified bidder (each a "*Qualified Bidder*") and that their Bid is a "Qualified Bid."

The submission of the information and documentation listed above in Section V(i) - (xii) will be deemed to be the bidder's consent for the Debtors and their advisors to share any information submitted by the bidder to the DIP Lenders' Agent, the Creditors' Committee, the Union, any landlord with respect to a nonresidential real property lease and any non-debtor party to an executory contract to be assigned to such bidder. Any bidders submitting Bids will bear their own expenses in connection with the sale, regardless of whether the sale is approved, in accordance with the terms of the APA, subject to the Debtors' right to designate a Stalking Horse (defined below).

## VII. Stalking Horse Bids

The Debtors reserve the right in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to enter into one or more APAs with any entity for all or any portion of the Assets, and designate that entity or entities as a stalking horse (the "*Stalking Horse*") subject to the terms herein. The Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union may offer a breakup fee to the Stalking Horse. The Debtors are under no obligation to choose a Stalking Horse or offer a breakup fee for any of the Assets.

In the event the Debtors select a Stalking Horse, the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, may offer bid protections, including a breakup fee of up to 2.5% of the cash portion of the purchase price of the Stalking Horse Bid. If the Debtors identify a Stalking Horse, the Debtors will file a supplemental notice (the "*Stalking Horse Notice*") with the Court identifying the Stalking Horse and the terms of the Stalking Horse Bid, including the terms and conditions for payment of any breakup fee. Any entity wishing to object to the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice to file an objection (the "*Objection*") with the Court and serve it on the Notice Parties. In the event an Objection is filed and such Objection cannot be resolved consensually, the Debtors will seek to schedule a hearing with the Court for approval of the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee. If no Objections to the Stalking Horse Notice are received, the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee, shall be deemed approved by the Court, without the need for further Court order.

In the event the Debtors choose a Stalking Horse, the Stalking Horse Bid will be a Qualified Bid.

## VIII. The Auction

The auction (the "**Auction**") will be conducted for the Assets on May 17, 2011 at 10:00 a.m. prevailing Eastern Time (the "**Auction Date**") at the offices of Kirkland & Ellis LLP located at 601 Lexington Avenue, New York, New York 10022. The Assets shall be sold free and clear of all liens, claims, and encumbrances to the fullest extent allowed under section 363(f) of the Bankruptcy Code; <u>provided</u> that the DIP Lenders' Agent's liens shall attach to the proceeds of the Assets with the same validity, force and effect.

The Debtors may conduct the Auction in any manner and upon any terms and conditions the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, believe will achieve the maximum value for the Assets. If an auction is held, the Debtors will, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, submit rules and procedures for the auction. The Debtors shall, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, promulgate rules regarding any auction as they deem appropriate, including, but not limited to, rules governing minimum starting bids, minimum overbids, and subsequent bids.

Only Qualified Bidders may bid at the Auction. If multiple Qualified Bids are received, each Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Auction.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid or Bids shall be selected and announced by the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union (the "**Successful Bid** or **Bids**"), and the backup Bid or Bids shall be selected and announced by the Debtors, in consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union (the "**Backup Bid** or **Bids**").

Within 24 hours of completion of the Auction, the entity or entities that made the Successful Bid or Bids (the "**Successful Bidder**") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

If a Stalking Horse is selected and no Qualified Bids are received for the Assets (or no Stalking Horse is selected and only one Qualified Bid is received for the Assets), the Debtors may determine, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, that the Stalking Horse Bid or the Qualified Bid, as applicable, is the Successful Bid and seek Court approval of the relevant APA without offering the subject Assets for sale at the Auction. If the Debtors determine that there is no Successful Bid for a particular Asset, the Debtors may decide, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to not sell that Asset at the Auction.

The Auction may be adjourned or cancelled as the Debtors, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or

cancellation shall be given to all participants and to the DIP Lenders' Agent, the Creditors' Committee, and the Union.

## IX. Selection of Successful Bid or Bids

The Debtors reserve the right, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to base the selection of the Successful Bid and Backup Bid (as defined below) on the following factors, among others: the Asset Categories included in the Bid; liabilities assumed in the Bid; purchase price; and the APA markup submitted with the Bid.

The Debtors may, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, (a) reject any Bid (including a Stalking Horse Bid) that, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the Bidding Procedures, or the terms and conditions of sale, or (iii) contrary to the best interests of the Debtors, their estates and creditors and/or (b) refuse to consider any Bid that fails to comply with the Bidding Procedures or any other procedures established by the Debtors.

## X. Backup Bids

If the Successful Bidder fails to consummate the sale, breaches the APA or otherwise fails to perform, upon consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, the Debtors may consummate the proposed sale with the next highest or best bidder at the Auction — the Backup Bidder, which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval.

## XI. Damages for Failure to Close

If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtors will retain the Deposit of such bidder, to the extent provided by the APA, and (b) the Debtors will maintain the right to pursue all available remedies against such bidder.

Notwithstanding anything to the contrary in these procedures, the Deposit of the Successful Bidder will be retained by the Debtors in accordance with the terms of the APA executed by the Successful Bidder. Deposits of all other bidders will be retained by the Debtors until the earlier to occur of (i) twenty-five days after entry of a Sale Order approving the sale of the Assets or (ii) closing of the sale of Assets in accordance with the Successful Bid.

## XII. Sale Motion and Hearing

Upon the selection of a Successful Bidder, the Debtors will file a motion to approve the sale (the "***Sale Motion***"). A hearing will be conducted on the Sale Motion by the Court on June 14, 2011 at 10:00 a.m. prevailing Eastern Time (the "***Sale Hearing***"). At the Sale Hearing, the Debtors will request that the Court enter an order (the "***Sale Order***"): (a) approving (i) the Successful Bid(s), (ii) the applicable APA(s), and (iii) the proposed assumption and assignment of any Assumed Contract, and (b) authorizing the Debtors to consummate the proposed

transaction.  At the Sale Hearing, the Court shall also determine:  (a) any cure required under 11 U.S.C. §365(b) if the affected landlord timely filed an objection to the Debtors' proposed cure of any unexpired lease to be assumed and assigned, and (b) if applicable, whether the Debtors have demonstrated adequate assurance of future performance under 11 U.S.C. § 365.

## XIII.   "As Is, Where Is"

The proposed transfer of any of the Debtors' Assets will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or estates, except to the extent set forth in the applicable APA of each Successful Bidder as accepted by the Debtors and approved by the Court.  Except as otherwise provided in an APA, all of the Debtors' right, title and interest in and to the respective Asset will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with section 363 of the Bankruptcy Code.  Any other claim, lien or encumbrance, as set forth in the APA, will attach to the net proceeds of the sale of the particular Asset.

Each bidder for any of the Debtors' Assets will be deemed to acknowledge and represent that it (a) has had an opportunity to conduct such due diligence regarding the Asset prior to making its offer as provided in the APA, (b) has relied solely upon its own independent review, investigation and/or inspection of any document including, without limitation, executory contracts and unexpired leases in making its Bid, and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied by operation of law, or otherwise, with respect to the Asset, or the completeness of any information provided in connection with the Asset sale or the Auction, except as expressly stated in the particular APA.

## XIV.   Reservation of Rights

Notwithstanding the Debtors' determination of a Stalking Horse and/or receipt of any Qualified Bids for any particular Asset, the Debtors may continue to negotiate and solicit Bids. The Debtors reserve the right, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to enter into agreements for the sale of any of their Assets, either individually or as part of a package prior to an Auction, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis).  The Debtors retain the right, after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, to withdraw one or more Assets from the sale, including in connection with a package offer, up to the date of the Auction or Sale Hearing.  Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtors to consummate the transaction.

The Debtors reserve the right to implement additional procedural rules after consultation with the DIP Lenders' Agent, the Creditors' Committee, and the Union, provided such additional rules are not inconsistent with these Bidding Procedures.

*  *  *

## **Exhibit B**

## **List of Southern Stores**

| Store # | Address | City | State |
|---|---|---|---|
| 979 | 4330 48th St | Washington | DC |
| 590 | 25 Greentree Dr | Dover | DE |
| 561 | Rt 14 & 113 | Milford | DE |
| 520 | 5101 East Drive | Arbutus | MD |
| 812 | 41st & Hickory | Baltimore | MD |
| 101 | Charles Plaza | Baltimore | MD |
| 891 | 1238 Bay Dale Dr | Bay Hills | MD |
| 961 | 40 Souder Rd | Brunswick | MD |
| 870 | 780 Cambridge | Cambridge | MD |
| 852 | Rt 213 Washington Sq | Chestertown | MD |
| 860 | 7280 Montgomery | Elkridge | MD |
| 855 | 3301 N. Ridge Rd | Ellicott City | MD |
| 950 | Ballenger Creek | Frederick | MD |
| 881 | 7440 Ritchie Hwy | Glen Burnie | MD |
| 825 | 504 Ridgeville | Mt Airy | MD |
| 877 | 1155 Annapolis | Odentown | MD |
| 897 | 7709 Harford Rd | Parkville | MD |
| 839 | 8905 Belair Rd | Perry Hall | MD |
| 817 | 1763 Chesaco Ave | Rosedale | MD |
| 872 | 125 W. College | Salisbury | MD |
| 876 | 37 W. Ayelesbury | Timonium | MD |
| 829 | 1238 Putty Hill | Towson | MD |
| 912 | Rt 140 Englar Rd | Westminister | MD |
| 985 | 12028 Cherry Hill | White Oak | MD |
| 521 | 7005 Security Blvd | Woodlawn | MD |