James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
Andrew M. Genser
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:     (212) 446-4800
Facsimile:     (212) 446-4900

     - and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:     (312) 862-2200

Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| THE GREAT ATLANTIC & PACIFIC TEA COMPANY, INC., *et al.* | Case No. 10-24549 (RDD) |
| Debtors. | Jointly Administered |

**DEBTORS' OMNIBUS OBJECTION TO SCHMIDTS RETAIL, LP'S AND MICHAELS STORES, INC.'S MOTIONS TO COMPEL THE DEBTORS TO ASSUME OR REJECT LEASES PURSUANT TO 11 U.S.C. § 365(d)(2)**

The Great Atlantic & Pacific Tea Company, Inc. ("*A&P*") and certain of its affiliates, as

debtors and debtors in possession (collectively, the "*Debtors*"),[1] file this omnibus objection (the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  The Great Atlantic & Pacific Tea Company, Inc. (0974); 2008 Broadway, Inc. (0986); AAL Realty Corporation (3152); Adbrett Corporation (5661); Amsterdam Trucking Corporation (1165); APW Supermarket Corporation (7132); APW Supermarkets, Inc. (9509); Bergen Street Pathmark, Inc. (1604); Best Cellars DC Inc. (2895); Best Cellars Inc. (9550); Best Cellars Licensing Corp. (2896); Best Cellars Massachusetts, Inc. (8624); Best Cellars VA Inc. (1720); Bev, Ltd. (9046); Borman's Inc. (9761); Bridge Stuart, Inc. (8652); Clay-Park Realty Co., Inc. (0902); Compass Foods, Inc. (0653); East Brunswick Stuart, LLC

"*Objection*") to Schmidts Retail, LP's ("*Schmidts*") and Michaels Stores, Inc.'s ("*Michaels*," and, together with Schmidts, the "*Movants*") motions to compel the Debtors to assume or reject certain leases (the "*Leases*")[2] pursuant to 11 U.S.C. § 365(d)(2) (the "*Motions*"), and respectfully state as follows:

## Background

1.      As of December 12, 2010 (the "*Commencement Date*"), the Debtors operated approximately 395 conventional supermarkets, combination food and drug stores, and discount food stores in eight U.S. states and the District of Columbia.  As part of their operations, the Debtors currently lease approximately 768 properties.  These leasehold interests are primary assets of the Debtors' estates.  Given the significant value of their leasehold interests, it is imperative that the Debtors preserve their rights with respect to these assets to the maximum extent for the benefit of all their constituents.  To achieve this objective, the Debtors have retained Hilco Real Estate, LLC to conduct a comprehensive and time-consuming analysis of all of their leases.

---

(9149); Farmer Jack's of Ohio, Inc. (5542); Food Basics, Inc.(1210); Gramatan Foodtown Corp. (5549); Grape Finds At DuPont, Inc. (9455); Grape Finds Licensing Corp. (7091); Greenlawn Land Development Corp. (7062); Hopelawn Property I, Inc. (6590); Kohl's Food Stores, Inc. (2508); Kwik Save Inc. (8636); Lancaster Pike Stuart, LLC (9158); LBRO Realty, Inc. (1125); Lo-Lo Discount Stores, Inc. (8662); Mac Dade Boulevard Stuart, LLC (9155); McLean Avenue Plaza Corp. (5227); Milik Service Company, LLC (0668); Montvale Holdings, Inc. (6664); North Jersey Properties, Inc. VI (6586); Onpoint, Inc. (6589); Pathmark Stores, Inc. (9612); Plainbridge, LLC (5965); SEG Stores, Inc. (4940); Shopwell, Inc. (3304); Shopwell, Inc. (1281); Spring Lane Produce Corp. (5080); Super Fresh/Sav-A-Center, Inc. (0228); Super Fresh Food Markets, Inc. (2491); Super Market Service Corp. (5014); Super Plus Food Warehouse, Inc. (9532); Supermarkets Oil Company, Inc. (4367); The Food Emporium, Inc. (3242); The Old Wine Emporium of Westport, Inc. (0724); The South Dakota Great Atlantic & Pacific Tea Company, Inc (4647); Tradewell Foods of Conn., Inc. (5748); Upper Darby Stuart, LLC (9153); and Waldbaum, Inc. (8599).  The location of the Debtors' corporate headquarters is Two Paragon Drive, Montvale, New Jersey 07645.

[2]      The Leases include:  1) the Agreement of Sublease, dated April 9, 1999, between Waldbaum, Inc. and Michaels Stores, Inc., which pertains to a property located at 79 Turnpike Square in Milford, Connecticut; 2) the lease between Waldbaum, Inc. and Milford Associates dated October 31, 1978, which pertains to a property located at 79 Turnpike Square in Milford, Connecticut; and 3) the lease between Pathmark Stores, Inc. and Northern Liberties Development, LP, dated September 8, 2008, which pertains to a property located at Second Street and Girard Avenue, Philadelphia, Pennsylvania.

2.      The Debtors are currently engaged in implementing a comprehensive restructuring plan. This multi-faceted restructuring plan, which involves a number of interdependent subject areas including implementation of operational efficiencies, rationalization of the Debtors' supply and logistics arrangements, execution of legacy cost savings initiatives, and identification of non-core assets for potential action, will take time to allow the Debtors to be in the best position to size their ultimate store operating footprint.

3.      Given the importance of maximizing the value of their leases and the broad scope of their restructuring plan, the Debtors moved on January 18, 2011 (the "***Extension Motion***") for an order extending the time within which the Debtors must assume or reject unexpired leases of nonresidential property [Docket No. 546].  Neither of the Movants objected to this motion.  On February 8, 2011, the Court entered an order (the "***Extension Order***") extending the date by which the Debtors must assume or reject unexpired, nonresidential leases until July 10, 2011 [Docket No. 742].  By its terms, the Extension Order expressly applies to the Leases, allowing the Debtors to assume them on or before July 10, 2011, absent a landlord's consent to extend the assumption deadline pursuant to section 365(d)(4)(B)(ii).[3]

4.      Despite their failure to object to the Extension Motion, the Movants now seek to shorten the Debtors' time to assume or reject the Leases, and Schmidts also seeks an order compelling the Debtors to pay all postpetition amounts due under its lease.  The Court should deny the Motions because, first, as a legal matter, the Bankruptcy Code precludes the Movants from moving to shorten the Debtors' time to assume or reject their leases, and, second, the Motions provide no grounds for such relief.  Moreover, there is no basis for the relief requested

---

[3]  *See* Extension Order at ¶ 8 ("This Order shall be deemed to be a separate order with respect to each Unexpired Lease covered hereby."); Extension Motion at Schedule C, pp. 32, 53 (identifying the Leases as Unexpired Leases for purposes of the Extension Motion and the Extension Order).

by Schmidts ordering the Debtors to pay all postpetition amounts due under its lease within ten days, and the Court should deny Schmidts's motion in its entirety.

**Objection**

A.    **The Bankruptcy Code Precludes Movants From Bringing the Motions.**

5.    Movants' effort to force the Debtors to make an early election concerning their leases is foreclosed by the Bankruptcy Code, which establishes the time for the Debtors to make such an election and only permits a lessor to move for modification of that time period when, unlike the situation here, the property involved is residential.  Because the properties at issue here are nonresidential, the Bankruptcy Code precludes Movants from bringing the Motions.

6.    Section 365(d)(4) of the Bankruptcy Code specifically defines the time by which a debtor must elect to assume or reject a lease of nonresidential real property, giving the Debtors no less than 120 days from the date their voluntary petitions were filed.  *See* 11 U.S.C. § 365(d)(4)(A)(i).  In the Extension Order, the Court granted the Debtors an additional 90 days (for a total of 210 days) to make this decision with respect to each unexpired lease of nonresidential real property.  *See* 11 U.S.C. § 365(d)(4)(B); Extension Order.  As a result, the Debtors are not obligated to make any disposition of the Leases until July 10, 2011, at the earliest.  *See* 11 U.S.C. § 365(d)(4)(A)(i); Extension Order at ¶ 2.

7.    The 120/210 day timeline set forth in section 365(d)(4) provides the Debtors with a defined period in which to exercise their business judgment regarding the disposition of their leases of nonresidential real property.  *See In re Rebel Rents, Inc.*, 291 B.R. 520, 529 (Bankr. C.D. Cal. 2003) ("It is the policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of the petition . . . in which to assume or reject an unexpired lease.").  During this period, the Debtors have the exclusive right to decide when to assume or reject a lease of nonresidential real property.  Notwithstanding the timeline established by section

4

365(d)(4) and the Extension Order, the Movants seek to compel, under section 365(d)(2), an immediate decision on three leases.

8.      Section 365(d)(2) of the Bankruptcy Code authorizes the counterparty to "an executory contract or unexpired lease of **residential** real property or of personal property" to compel assumption or rejection within "a specified period of time."   11 U.S.C. § 365(d)(2) (emphasis added).   The Leases are clearly for **nonresidential** property -- *i.e.*, they are for commercial space.  And by its terms, section 365(d)(2) does not apply to an unexpired lease of nonresidential real property.

9.      Congress's omission of any reference to nonresidential leases in section 365(d)(2) was intentional.  Congress specifically removed a landlord's authority to compel the assumption or rejection of a lease of nonresidential real property through the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. 98-353, § 362, 98 Stat. 333 (July 10, 1984) ("**BAFJA**"). Prior to BAFJA, section 365(d)(2) provided that:

> [T]he trustee may assume or reject an executory contract or **unexpired lease** of the debtor at any time before confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

11 U.S.C. § 365(d)(2) (1982) (amended 1984) (emphasis added).   Hence, the lessor of nonresidential real property was formerly authorized to seek to shorten the time in which a debtor must assume or reject a lease.  *See, e.g., Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 104–05 (2d Cir. 1982).  "Until BAFJA, leases of both residential and nonresidential real property were governed by [section 365(d)(2)], which . . . envisioned assumption or rejection at any point prior to confirmation of a plan unless a party to the lease convinced the court to compel assumption or rejection within a certain time."  *In re Lippman*, 122 B.R. 206, 209 (Bankr. S.D.N.Y. 1990).

10.     BAFJA changed the open-ended timeline formerly at work in section 365(d)(2) by enacting section 365(d)(4).  *See* Pub. L. 98-353, § 362 (amending 11 U.S.C. § 365).  At the time, section 365(d)(4) fixed a 60-day period, subject to extension, by which a debtor was required to assume or reject a lease of nonresidential real property.[4]  BAFJA also enacted section 365(d)(3).  *See* Pub. L. 98-353, § 362 (amending 11 U.S.C. § 365).  As noted above, section 365(d)(3) requires timely performance of obligations arising under a lease of **nonresidential** real property prior to assumption or rejection by a debtor-lessee.

11.     BAFJA also eliminated a lessor's authority to seek to compel the assumption or rejection of a lease of nonresidential real property outside this timeline by deleting any reference to nonresidential leases from section 365(d)(2).  *See* Pub. L. 98-353, § 362 (amending 11 U.S.C. § 365(d)(2)); 11 U.S.C. § 365(d)(2).   Hence, a counterparty's former ability to compel the assumption or rejection of a lease of nonresidential real property has been "legislatively overturned by the passage of § 365(d)(4)."  *In re Adelphia Commc'ns Corp.*, 291 B.R. 283, 292 n.27 (Bankr. S.D.N.Y. 2003); *see also* Allan N. Resnick & Henry J. Sommer, 3 Collier on Bankruptcy ¶ 365.05[4] (["Section 365(d)(2)] excludes leases of nonresidential real property. The exclusion recognizes that leases of nonresidential real property in which the debtor is lessee are dealt with by section 365(d)(4).").

12.     Nor can the Movants evade section 365(d) by recourse to the Court's equitable powers under section 105.  Section 105 does not provide independent authority to compel assumption or rejection absent authority under section 365(d).  *See Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 ("[W]hatever equitable powers remain in the bankruptcy courts must

---

[4]     The 60-day period, with potentially unlimited extensions originally provided by section 365(d)(4), has been extended to 120 days with up to 90 days additional time and further additional time under certain circumstances. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, § 404, 119 Stat. 23, 104–05 (April 20, 2005) (amending 11 U.S.C. § 365(d)) ("**BAPCPA**"); *see* 11 U.S.C. § 365(d)(4).

and can only be exercised within the confines of the Bankruptcy Code.").  Though the Movants may prefer that the Debtors analyze their 768 leases more quickly, their preference does not override the Bankruptcy Code.  The Movants, as counterparties to nonresidential leases, simply cannot compel the Debtors to assume or reject these leases under 365(d)(2).

13.    While this Court stated at the February 3, 2011 hearing on the Extension Motion that the Extension Order did not need to specifically preserve "a landlord's right to seek to shorten an extension for cause shown," this statement was not part of the Court's ruling and it was not addressed to the Movants, who have failed to show cause for shortening the time for the Debtors to assume.  *See* February 3, 2011 Hr'g Tr. at 57.

B.    **The Motions Fail on the Merits.**

14.    In addition to the fact that the Bankruptcy Code precludes Movants from bringing the Motions and forecloses the relief request, the Motions would fail and should be denied even if the Court were to consider them on the merits.

15.    The crux of Michaels's argument is that it will be "irreparably harmed" if the Debtors reject the head lease for the property that they are subleasing to Michaels, and that assuming this lease will "have no financial or other impact on the Debtors' estates."[5]  Both of these assertions are unwarranted and unsupported by the record.

16.    As an initial matter, Michaels has no authority to compel the Debtors to assume or reject a lease to which it is not even a party.  The head lease was entered into between Waldbaum, Inc., as tenant, and Cavil Properties, Inc., as landlord.  Even in cases where a motion to shorten is permitted, which is not true here, only a "party to such contract or lease" may make

---

[5]    *Motion of Michaels Stores, Inc. to Compel the Debtors to Assume or Reject Lease Pursuant to 11 U.S.C. § 365(d)(2)* ("**Michaels's Motion**"), dated April 6, 2011, at ¶ 19 [Docket No. 1218].

such a request.  *See* 11 U.S.C. § 365(d)(2).  Michaels is not a party to the head lease, so it cannot

move to shorten the time for the Debtors to assume or reject this lease.

17.    Moreover, Michaels has put forth no evidence that it will be harmed if the

Debtors reject the head lease.  To the contrary, the reality is that in that event, Michaels would be

left to negotiate with the property owner for continued occupancy, which might be on terms

more or less favorable than it presently has.  Nor is it accurate for Michaels to assert that

assumption of the head lease would have no financial impact on the Debtors' estates.  So long as

the Debtors remain a party to the head lease, they are potentially liable for rent if Michaels

defaults.  While the Debtors might deny any such liability, the fact remains that assumption of

the head lease would expose the Debtors to litigation risk — and the possible payment of

administrative rents — in the event that Michaels defaults.

18.    Michaels asserts that the relevant test looks for proof of damage "beyond the

compensation available under the Bankruptcy Code."  (Michaels's Motion at ¶ 15 (citing *In re

Teligent, Inc.*, 268 B.R. 723, 738 (Bankr. S.D.N.Y. 2001)).)  This is incorrect, since Michaels has

no right to bring this motion under section 365(d)(2) — unlike the movant in *Teligent*, which did

not involve a lease of nonresidential real estate.  *See Teligent*, 268 B.R. at 726-27 (describing

merger agreement).  Nonetheless, Michaels fails to satisfy the factor that it identifies as pertinent

— it has shown no harm from waiting an additional three months for the Debtors to reach a

decision, and it has admitted that any damages it might suffer from rejection would be

compensable under the Bankruptcy Code.  *See* Michaels's Motion at ¶ 20 ("any harm to

Michaels resulting from a rejection of the Overlease would give rise to a substantial damage

claim against the Debtors").  Thus, Michaels is in the same position as any other counterparty to

a nonresidential lease with the Debtors and has no grounds on which to compel an accelerated decision.

19.    Indeed, Michaels's Motion presents an even weaker case for harm than N. Providence, LLC's objection to the Extension Motion, which implicated the same inquiry that Michaels alleges applies here and which the Court rejected.   In ruling on N. Providence's objection, the Court held that "the debtor needs more time to develop its business plan and to vet it with its constituents" and that any harm to N. Providence did not outweigh this need.   March 18, 2011 Hr'g Tr. at 20.   There is no evidence in the record to contradict the Court's recent finding that the Debtors need more time to develop and vet a business plan.   And Michaels has only asserted that a prompt decision "is necessary so that Michaels can make plans for continued operations at the Premises, including continued investments in the Premises," an inconvenience shared by all counterparties to leases with A&P.   *See* Michaels's Motion at ¶ 8.

20.    Michaels is also incorrect in arguing that the Debtors should be required to make a hasty decision since they are no longer operating at the leased premises.   As with all of the Debtors' subleases, analysis of the Michaels sublease and the head lease requires a complex balancing of financial exposure from default risk, potential administrative claims, and possible damage claims, plus consideration of any possible benefits to the estate from assumption.   If the Debtors can monetize the head lease and sublease, they should have the opportunity to do so. The Debtors' analysis of these assets will require significant time and effort, and Michaels has given no reason why it should be able to jump the line and force the Debtors to make an accelerated decision regarding its sublease.

21.    Finally, section 6(G) of the Michaels sublease, which purports to require A&P to "use its best efforts to assign its interest as lessee under the Overlease to [Michaels] free of any

right of recapture of the Overlandlord pursuant to the Overlease," says nothing that requires the Debtors to make an accelerated decision regarding whether to assume or reject the head lease or sublease. Michaels also ignores the fact that the Debtors are free to reject the sublease in its entirety, including any obligation under section 6(G). Thus, Michaels's Motion is entirely without merit.

22.    Schmidts's argument for shortening the time to assume or reject is likewise meritless. The harms that Schmidts identifies — reduced rent and higher vacancies due to the Debtors' bankruptcy — are likely to be suffered by any landlord whose tenant files for chapter 11 relief. *See In re the Penn Traffic Co.*, 524 F.3d 373, 382 (2d Cir. 2008) ("The Code does not condition the right to assume or reject on lack of prejudice to the non-debtor party, and the satisfaction of claims at less than their full non-bankruptcy value is common in bankruptcy proceedings, as is the disruption of non-debtors' expectations of profitable business arrangements."); *In re Service Merchandise Co., Inc.*, 256 B.R. 744, 747, 749 (Bankr. M.D. Tenn. 2000) (holding that "the resulting prejudice to the landlords does not outweigh the debtors' need for additional time" where "the debtors' indecision could make it difficult for the landlord to interest tenants in committing to leases or renewing leases for fear of losing Service Merchandise as an anchor tenant"). Shortening the Debtors' time to assume or reject on this basis would allow virtually any creditor to prevail on a similar motion, rendering the time limits in section 365(d)(4) meaningless.

23.    Nor can Schmidts prevail based on vague allegations that the Debtors have expressed their intent to reject the lease. While the affidavit of Adam Liausky makes the vague claim that certain of the Debtors' "high-level employees" have expressed "intent and desire to

reject the lease," even if taken as true for purposes of this motion,[6] such statements would not provide a basis for compelling Debtors to make an early election. The fact is, Debtors have not reached a decision regarding whether to assume or reject the lease, and any preliminary indications of desire or intent to go one way or another are irrelevant.

24.    In its motion, Schmidts did not request payment of any claim as an administrative expense. Thus, as a procedural matter, Schmidts's motion is only a motion to compel assumption or rejection as Schmidts has not pleaded any basis for the Court to order immediate payment of any expense. But even if the Court considers this request under section 356(d)(3), Schmidts has failed to carry its burden of proving that it is entitled to such relief.

25.    With respect to its purported right to a $750,000 payment for "delivery of possession" of the property described in its lease, Schmidts has fallen far short of meeting its burden of proving that it is entitled to this payment. The lease defines "Delivery of Possession" as requiring the landlord to meet a lengthy list of requirements, including but not limited to completion of construction, signage, parking areas, paving and striping, connection of utilities, and delivery of non-disturbance agreements from each mortgagee of the shopping center. *See Schmidts Retail, LP's Motion to Compel Debtors to Assume or Reject Lease*, dated March 21, 2011 ("**Schmidts's Motion**") at Ex. A, § 8(A) [Docket No. 1043]. While Schmidts's Motion states in conclusory fashion that on February 7, 2011, "Schmidts delivered possession of the premises to the Debtors," this statement is entirely devoid of evidentiary support. Indeed, no facts supporting this assertion are even mentioned in Mr. Liausky's affidavit. It should also be noted that the Debtors have evidence that Schmidts made a prepetition attempt to deliver possession under its lease. Schmidts has failed to prove either that the $750,000 payment it

---

[6]    The Debtors do not concede the veracity of these vague allegations, which fail even to identify who allegedly told Mr. Liausky that the Debtors intended to reject the lease and provide no detail concerning what was said.

seeks is an "obligation[] of the debtor" or that this purported obligation arose "after the order for relief," and thus there is no basis for its request for immediate payment of this amount.  *See* 11 U.S.C. § 365(d)(3).[7]

### Conclusion

26.    For the reasons set forth herein, the Debtors respectfully request that the Court deny the Motions.

New York, New York
Dated:  April 21, 2011

/s/ *Andrew M. Genser*
James H.M. Sprayregen, P.C.
Paul M. Basta
Ray C. Schrock
Andrew M. Genser
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

- and -

James J. Mazza, Jr.
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

Counsel to the Debtors
and Debtors in Possession

---

[7]    Schmidts also makes reference in its motion to claims filed by Accelerated Construction Company, but it makes no argument that these claims are "post-petition sums currently due under the Lease."  *See* Schmidts's Motion at ¶ 16.  Thus, there is no motion before the Court to compel payment of these claims.